1  Joseph G. Dicks, SBN 127362
   Linda G. Workman, SBN 128621
2  DICKS & WORKMAN ATTORNEYS AT LAW, APC
   750 B Street, Suite 2720
3  San Diego, California 92101
   Telephone: (619) 685-6800
4  Facsimile: (619) 557-2735
   Email: jdicks@dicks-workmanlaw.com
5         lworkman@dicks-workmanlaw.com

6  Attorneys for MICKAIL MYLES, Plaintiff

7

8               **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | MICKAIL MYLES, an individual, | Case No. 15-cv-1985-BEN (BLM) |
   |---|---|
   | Plaintiff, | |
   | v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF POLICE RECORDS HELD BY DEFENDANT COUNTY OF SAN DIEGO** |
   | COUNTY OF SAN DIEGO, by and through the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, a public entity; and DEPUTY J. BANKS, an individual, | |
   | Defendants. | Judge: Hon. Roger T. Benitez<br>Magistrate: Hon. Barbara Lynn Major |
   | | Complaint Filed: September 4, 2015 |

# TABLE OF CONTENTS

I. INTRODUCTION……………………………………………………………..1

II. FACTS………………………………………………………………………….2

III. ANALYSIS……………………………………………………………………9

     A. Relevance……………………………………………………………10

     B. State Law Privileges……………………………………………….....13

     C. Attorney-Client Privilege/Work Product Doctrine/Self Critical Analysis………………………………………………………………..14

     D. Additional Argument re Certain Categories of Documents Withheld………………………………………………………………..15

          1. The Internal Affairs Investigations/Personnel Files……15

          2. Performance Evaluations and Training Records……....16

IV. CONCLUSION……………………………………………………………16

# **TABLE OF AUTHORITIES**

Cases

*Campbell v. Gerrans*, 592 F.2d 1054 (9th Cir. 1979) ......................................... 14

*Cloud v. Superior Court*, 50 Cal. App. 4th 1552 (1996) .......................................... 15

*Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613 (5th Cir.1977) ............................... 12

*Dowling v. American Hawaii Cruises*, 971 F.2d 423 (9th Cir. 1992) .................... 15

*Fisher v. Houser*, 2010 WL 491066 at *4 (S.D. Cal. 2010) ............................... 15

*Gill v. Manuel*, 488 F.2d 799 (9th Cir.1973) ....................................................... 14

*Griffin v. Davis*, 161 F.R.D. 687 (C.D.Cal. 1995) ....................................................... 15

*Hall v. Litton,* 150 F.R.D. 525 (1993) .................................................................... 3

*Hamilton v. City of San Diego,* 147 F.R.D. 227 ..................................................... 10

*Hampton v. City of San Diego,* 147 F.R.D. 227 (1993) ...................................... 16

*Heathman v. United States District Court,* 503 F.2d 1032 (9th Cir. 1974) ......... 14

*Hickman v. Taylor,* 329 U.S. 495 (1974) ........................................................ 11, 12

*Kelly v. City of San Jose,* 114 F.R.D. 653 (N.D. Cal. 1987) .................... 10, 12, 15

*Kerr v. U.S. Dist. Court*, 511 F.2d 192 (9th Cir.1975) .................................. 12, 14

*Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D.Cal. 1990) ........................... 12

*Miller v. Panucci*, 141 F.R.D. 292 (C.D.Cal. 1992) ......................................... 12, 14

*Pagano v. Oroville Hospital,* 145 F.R.D. 683 (E.D.Cal. 1993) ............................. 15

*Renshaw v. Ravert*, 82 F.R.D. 361 (E.D.Pa., 1979) ............................................ 11

*Soto v. City of Concord,* 162 F.R.D. 603 (1995) .................................................. 15, 16

*Spell v. McDaniel*, 591 F.Supp. 1090 (E.D.N.C., 1984) ................................. 11, 13

*T.W.A.R., Inc. v. Pacific Bell,* 145 F.R.D. 105 (N.D. Cal. 1992) ......................... 15

*Tyler v. City of Jackson, Miss.*, 105 F.R.D. 564 (S.D. Miss. 1985) .................... 11

*Union Pacific R. Co. v. Mower*, 219 F.3d 1069 (9th Cir. 2000) ............................. 15

*United States v. American Optical Co.*, 39 F.R.D. 580 (N.D.Cal. 1966) .............. 10

*United States v. I.B.M.,* 66 F.R.D. 215 (S.D.N.Y. 1974) ....................................... 11

Case 3:15-cv-01985-JAH-BLM   Document 15-1   Filed 03/14/16   PageID.98   Page 4 of 20

*United States v. Meyer*, 398 F.2d 66 (9th Cir. 1968) ............................................. 11

*Vestin v. Klass*, 2010 DIST. LEXIS 113666 (2010) ................................................. 3

*Youngblood v. Gates,* 112 F.R.D. 342 (C.D.Cal. 1985) ........................................ 14

## Statutes

42 U.S.C. Section 1983 .............................................................................................. 11

California Evidence Code Section 1040 ............................................................... 14

California Evidence Code Section 832.7 .............................................................. 14

## Rules

Federal Rules of Civil Procedure 26(b)(1) ............................................................ 10

## I.    **INTRODUCTION**

Plaintiff is prosecuting a civil rights action which includes claims of excessive force and racial discrimination by the officers involved, and negligent hiring, negligent supervision, knowledge, ratification, cover up and failure to investigate or reprimand for the same and similar conduct by the department and its supervisors. Plaintiff has sought documents which:

1. only the Defendants would have access to;
2. that Plaintiff would have no other way of obtaining;
3. that contain information that would not be available from any other source; and,
4. that contain information critical to the proof of Plaintiff's claims and without which Plaintiff may be unable to pursue.

Defendants' position in this litigation is, predictably, that:

1. the officers in question are not guilty of the allegations made against them; and
2. the Sheriff's Department does not condone or approve of excessive force or racial discrimination and punishes those officers who transgress those precepts.

Defendants' response to Plaintiff's request for the documents is:

1. We have responsive documents containing the information you seek;
2. We understand that you might not get to prove all or some of your claims without them;
3. You do not get to see documents which would reveal what the Sheriff's Department thinks of their officers' behavior with respect to the incident in question;
4. You do not get to see documents which would reveal what

the Sheriff's Department thinks of their officers' behavior with respect to similar instances of conduct; and

5. You do not get to see documents which would reveal what the Sheriff's Department knows about other citizen complaints against its officers for the same or similar conduct.

The Defendants' position is untenable and contrary to law.

## II.   FACTS

Plaintiff in this case, a young African-American male, was struck twice in the back of the head by a Sheriff's deputy and bitten by a K-9 being "controlled" by the same Sheriff's deputy, all after being handcuffed[1] and restrained by two other Sheriff's deputies. All of this occurred after Plaintiff and his brother were pulled over in his vehicle, in their own neighborhood, only blocks from their home. The traffic stop involved at least four deputies, all of whom were white, in a predominantly white neighborhood. Each of the deputies' depositions has been taken. Their testimonies are inconsistent, contradictory and, on the whole, paint a clear picture of unbridled police abuse, failure to follow proper procedure and an attempt to cover for the main perpetrator of the abuse, Defendant Deputy Sheriff Jeremy Banks.

At least one deputy testified that both of Plaintiff's hands were behind his back and that two deputies had Plaintiff's arms restrained while Plaintiff was bent over a police vehicle when Plaintiff was punched and bitten. (Excerpts of deposition of Deputy Shane Allison, Exhibit B, at 158-162.) The Deputy who initiated the traffic stop testified that when Plaintiff was struck and bitten, they had Plaintiff under control. (Allison depo, Exhibit B, at 166-168.) That same deputy was the one that handcuffed Plaintiff, and he could not say if Plaintiff was bitten and beaten before or after the handcuffs went on. (Allison depo,

---

[1] Plaintiff's deposition, Exhibit F, at 104-105, 108.

Exhibit B, at 162.) All of the deputies testified that the K-9 barked continuously[2] until after Plaintiff was bitten and beaten, making it difficult to hear commands being given to Plaintiff (excerpts of deposition of Deputy Andrew Brumfield, Exhibit C, at 66-67; excerpts of deposition of Deputy Jeremy Banks, Exhibit D, at 198, 211, 226, 233-234; excerpts of deposition of Deputy Ronald Bushnell, Exhibit E, at 64-65, 67-68, 84; excerpts of deposition of Deputy Shane Allison, Exhibit B, at 128, 132-134); that conflicting/contradictory commands were being given to Plaintiff (Allison depo, Exhibit B, at 138-139); that more than one deputy was giving Plaintiff commands at the same time (Brumfield depo, Exhibit C, at 67-68; Banks depo, Exhibit D, at 224, 226; Allison depo, Exhibit B, at 137-139); that Plaintiff was yelling that he could not hear the commands being given (Brumfield depo, Exhibit C, at 57; Banks depo, Exhibit D, at 217-219; Allison depo, Exhibit B, at 129); that Plaintiff never made any threatening gestures toward the deputies (Banks depo, Exhibit D, at 225, 231, 238-239; Bushnell depo, Exhibit E, at 72-73, 79; Allison depo, Exhibit B, at 150-152); and at least two of the three deputies never heard the "K-9 warnings" that Deputy Banks claimed to have given to Plaintiff (Brumfield depo, Exhibit C, at 64, 69, 82; Allison depo, Exhibit B, at 160, 166). Finally, two of the deputies who participated in the traffic stop could not identify any non-compliance by Plaintiff with any of the officers' commands. (Brumfield depo, Exhibit C, at 59-60, 62-66, 81-82, 94; Bushnell depo, Exhibit E, at 72, 113-117.)[3]

On October 23, 2015, Plaintiff MICKAIL MYLES served Defendant COUNTY OF SAN DIEGO (the "COUNTY") his First Set of Requests for

---

[2] Plaintiff will lodge a short audio-video which demonstrates this. (Exhibit G.)
[3] These critical discrepancies in the deputies' testimony were extracted despite the off-the-record coaching of County Counsel who insisted on attempting to "refresh the recollection" of his clients on deposition breaks, even after Plaintiff's counsel made it clear that he was attempting to get the witnesses' recollection of the events prior to showing the deputies their reports. (Brumfield depo, Exhibit C, at 68-75.) *See, Hall v. Litton,* 150 F.R.D. 525 (1993) and *Vestin v. Klass*, 2010 DIST. LEXIS 113666 (2010), prohibiting such conduct.

1  Production of Documents.  A true and correct copy of Plaintiff's Request for
2  Production of Documents is attached to this motion as <u>Exhibit A.</u> Only the
3  requests that are highlighted on <u>Exhibit A</u> are at issue.

4      On November 20, 2015, the COUNTY served its Responses, a privilege
5  log and declarations of Jeffrey Duckworth and Marco Garmo attempting to
6  justify their refusal to produce the documents listed on the privilege log.  Those
7  documents constitute the personnel, investigative and disciplinary records of
8  deputy sheriffs responding to the scene of the incidents leading up to, and
9  including, the abuses against Plaintiff.  Thereafter, Plaintiff and the COUNTY's
10 counsel met and conferred in writing and in person in an attempt to resolve the
11 issues.  While meet and confer efforts have resulted in an updated privilege log
12 and declarations being served on February 12, 2016 and February 19, 2016,
13 respectively, the parties remain deadlocked on the central issue of the production
14 of the personnel and disciplinary records identified in the privilege log.  The
15 February 19, 2016 Declarations of Anthony Ray and Jeffrey Duckworth in
16 support of the claimed privileged documents are attached hereto as <u>Exhibits H</u>
17 and <u>I</u>, respectively.

18     Without a Court order, the COUNTY has refused to produce ***any***
19 personnel materials including, but not limited to, any documents related to
20 hiring, screening, evaluations, complaints, citations, commendations,
21 promotions, investigations, discipline, and terminations.  The COUNTY has also
22 refused to produce the Internal Affairs investigation files relating to this incident
23 or any incidents involving other victims of deputies responding to the scene of
24 the incidents leading up to and including the abuses against Plaintiff.  Plaintiff is
25 entitled to these documents and will be severely hampered in his ability to prove
26 his civil rights claims without their production.  There is simply no other means
27 of discovering information both relevant and critical to proving the allegations
28 set forth in the operative complaint, including the following allegations:

1. <u>Negligent Hiring/Screening</u>:

>Plaintiff is informed and believes and thereon alleges that the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, and other Defendants, individuals, and entities, failed to properly test, screen, examine or evaluate said officers prior to their hiring or during the course of their employment. As a consequence of that failure, the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, and other Defendants, individuals, and entities, failed to properly identify said officers for what they were – dangerous, racist, bigoted, abusive and violent predators. Plaintiff is informed and believes, and thereon alleges that had the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, and other Defendants, individuals, and entities, properly tested, screened, examined and evaluated said officers prior to their hiring or during the course of their employment, they never would have been hired or have been able to continue their employment, and therefore could not have committed the acts alleged herein.

Complaint, ¶12.

2. <u>Failure to Supervise</u>:

>Furthermore, throughout the course of their employment, Plaintiff is informed and believes, and thereon alleges that the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, and other Defendants, individuals, and entities, failed to properly train, monitor, control, report, discipline, or otherwise supervise said officers, so as to prevent the illegal and unconstitutional law enforcement practices that resulted in injury to Plaintiff.

*Id.*

///

3. <u>Failure to Investigate or Discipline for Wrongdoing</u>:

> Plaintiff is informed and believes, and thereon alleges that there exists an additional series of significant transactions and events that form the basis of Plaintiff's claims as alleged herein, which was the establishment, usage, implementation, application, enforcement and promulgation, through cover-up, conspiracy, approval, encouragement, ratification, and other related conduct, of unwritten official policies, customs and practices by said officers, their peers, supervisors and superiors, and by the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, and other Defendants, individuals, and entities, which provided said officers with the feeling and belief that their conduct, as illegal as it was, was not going to be punished and would instead be protected as a privilege of their position as law enforcement officers. While "Keeping the Peace" may have been the motto affixed to the COUNTY OF SAN DIEGO's patrol cars, Plaintiff is informed and believes and thereon alleges that unwritten official policies, customs, and practices existed, and continue to exist within the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, which allowed said officers to abuse, both physically and verbally, vulnerable minority members of the public, including Plaintiff, if they so desired, as long as they took steps to avoid getting caught. These unwritten official policies, customs, and practices allowed said officers to feel entitled to repeatedly target, profile, stop, detain, harass, falsely arrest, falsely imprison, assault, batter, abuse, defame and otherwise violate the civil rights of minority citizens in the County of San Diego without fear of reprisal by law enforcement peers, supervisors, and superiors, and by the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, and other Defendants, individuals, and entities.

*Id.* at ¶13.

4. <u>Cover-up and "Code of Silence"</u>:

> If faced with a report of police misconduct, said officers felt immune from professional or legal consequences, believing they could fall back on the racism of fellow abusers, as well as the cover-up practices of law enforcement colleagues, supervisors, the SAN DIEGO SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, and other Defendants, individuals, and entities, who strictly adhered to a "Code of Silence."

*Id.*

> Plaintiff is informed and believes, and thereon alleges that additional significant transactions and events that form the basis of Plaintiff's claims as alleged herein were Defendants' actions and inactions that constitute the illegal cover-up of police misconduct by said officers. Knowing said officers' violent and abusive propensities and predatory habits while on duty with regard to vulnerable minority members of the public, not only did Defendants fail to control, report, punish or terminate said officers, but Plaintiff is informed and believes, and thereon alleges, that Defendants conspired to and did, in fact, purposefully and systematically cover-up or encourage the covering-up of said misconduct. Such acts of cover-up encompass the suppression of evidence, and the use of intimidation, retaliation, coercion, undue influence, trickery, in an attempt to dissuade victims, law enforcement, and other witnesses from coming forward with their stories, observations and testimony, and to avoid the reporting of said complaints, so that proper, complete and factually based investigations, prosecutions and punishments could not be effectuated against said officers.

*Id.* at ¶15.

///

///

5. <u>Pattern and Practice/Prior Acts</u>:

> Plaintiff is informed and believes, and thereon alleges that the actions of said officers against him as described in this Complaint are not the first time that said officers engaged in this type of conduct as on-duty, uniformed law enforcement officers with the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, and elsewhere, and further believes that said officers were not the only sworn officers participating in said conduct. As set forth herein, Plaintiff is informed and believes and thereon alleges that said officers, their co-defendants and others had, on occasions prior to the attack on Plaintiff, engaged in the same or similar conduct with respect to other minority members of the general public while said officers were on-duty, uniformed law enforcement officers with the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, and elsewhere, and while under the supervision of and with the knowledge, consent, approval, encouragement, acceptance, and ratification of their superiors and supervisors and other Defendants, individuals, and entities.

*Id.* at ¶26.

The COUNTY has delayed and obfuscated the discovery process with regard to the multitude of documents in its possession, custody and control – documents which evidence that deputies responding to the scene of the incidents leading up to and including the abuses against Plaintiff had a track record of the same or similar conduct, which conduct was known and accepted within the ranks of a dysfunctional department which routinely failed to screen, investigate, terminate or discipline its officers for the same or similar misconduct.

Despite the passage of approximately one and a half years since the abuse, six months since the filing of Plaintiff's complaint, and over three months since this Court issued its Scheduling Order setting dates for discovery cutoff on April 29, 2016, the COUNTY has failed to produce any of the documents requested by

Plaintiff's discovery requests relating to the deputies involved in this matter, except for the reports of the incident authored by each deputy. Even then, none of the internal investigations of the wrong-doing are being produced – only those self-serving criminal reports of the Deputies involved in Plaintiff's abuse were produced. The COUNTY relies on legally baseless objections, citing inapplicable California state law privileges, work product and attorney-client privilege, as well as the claim of executive and official information privilege.

Most remarkably, perhaps, is the fact that Plaintiff, while not obligated to do so under federal law, offered the COUNTY an opportunity to lodge the documents they refuse to produce with the Court for an *in-camera* review and assessment as to their relevance to the issues in this case, and the COUNTY refused. As a pretext for its refusal, in a telephone conference with this Court's staff, counsel for the COUNTY cited a fear that even documents produced to the Court for *in-camera* review may somehow make themselves public.

Plaintiff hastens to point out that an *in-camera* review is not required in such cases under federal law, especially where the Court has already issued a robust and well-crafted protective order that provides all of the parties and third party witnesses full and complete protection against public disclosure of the documents claimed to be confidential. Plaintiff therefore requests that the Court order the immediate production of the documents "for attorney's eyes only" until Plaintiff can make a showing that the documents may be shown to its experts or otherwise utilized in the prosecution of this case. Such an order will protect the documents and parties to the fullest possible extent, while allowing Plaintiff's counsel access to documents critical to the prosecution of the case.

### III.   ANALYSIS

As this Court has requested briefings on the issue of the "official information" privilege separate from the several other objections relied upon by the Defendants, Plaintiff, to the extent possible, will first brief the issues of the

Defendants:

    1.    Relevance Objections (in limited fashion, not to include the balancing issues set forth in the "official information" analysis);

    2.    California State Law Privacy[4] and related Privileges; and

    3.    Attorney-Client Privileges/Work Product Doctrine/Self Critical Analysis Objections.

**A.**    **Relevance**

A vast number of the documents at issue were withheld based upon a relevancy objection. However, each of the relevancy objections relies entirely on the analysis set forth in *Hamilton v. City of San Diego,* 147 F.R.D. 227, which this Court requested the parties brief in the second of two briefings. (ECF No. 14, pp. 2-4.) Insofar as there is any relevancy objection above and beyond that which is necessarily contained in the *Kelly-Hamilton* analysis for the second brief, Plaintiff offers the following.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties may obtain discovery of any matter, not privileged, which is relevant to the subject matter of the pending action, including information reasonably calculated to lead to the discovery of admissible evidence.

In *United States v. American Optical Co.*, 39 F.R.D. 580, 583, fn. 4 (N.D.Cal. 1966), the court noted that under the standard of relevance prescribed by Rule 26(b), the court is not concerned with whether or not the documents will be admissible in evidence. The scope of discovery is much broader:

///

---

[4] Defendants also allege Federal privacy interests, citing *Kelly v. City of San Jose,* 114 F.R.D. 653 (N.D. Cal. 1987) and the balancing test, which will be briefed in the second phase per this Court's Order of March 3, 2016. (ECF No. 14.)

> Thus, Rule 26(b) has been consistently interpreted as requiring 'relevancy to the subject matter' of the action rather than relevancy to the 'precise issues presented by the pleadings.'

*Id*.

In *Renshaw v. Ravert*, 82 F.R.D. 361, 363, (E.D.Pa., 1979), where plaintiffs sought information from police files of prior suits or disciplinary proceedings, the court declined to express a view concerning the admissibility of the information but held, relying on *United States v. I.B.M.,* 66 F.R.D. 215, 218, (S.D.N.Y. 1974), that "discovery is to be considered relevant where there is ***any possibility*** that the information sought may be relevant to the subject matter of the action." [Emphasis in original.] The court further held that matters affecting the credibility of a witness or matters that might be used in impeaching or cross-examining him at trial are discoverable. *Renshaw, supra*, at 363. *Accord, United States v. Meyer*, 398 F.2d 66, 72 (9th Cir. 1968).

In *Spell v. McDaniel*, 591 F.Supp. 1090, 1114 (E.D.N.C., 1984), a civil rights plaintiff sought complaints and reports relating to the subject matter incident, complaints and internal investigations of other incidents involving the defendant police officer, and the police department's regulations concerning the use of force. Defendants objected that the information was irrelevant, imposed undue hardship, and they asserted various privileges. The court held that discovery rules are to be interpreted liberally (*citing, Hickman v. Taylor,* 329 U.S. 495 (1974)), and that the burden of showing the information sought is not relevant is on the party resisting disclosure. The court ordered disclosure because the records were ***relevant to show the officers' propensity to use excessive force*** and to show that ***supervisors had notice of the propensity but failed to take remedial steps***.

In *Tyler v. City of Jackson, Miss.*, 105 F.R.D. 564 (S.D. Miss. 1985), plaintiff sought damages under 42 U.S.C. Section 1983, alleging the use of excessive force and alleging a municipal policy condoning the excessive use of

force by its police officers. The court held, at page 566, that a plaintiff making such allegations is entitled to discover police internal affairs investigations ***regarding other similar incidents*** and found that they are highly relevant in such a case.

Courts have routinely ordered disclosure of the internal affairs investigation into the subject incident, because relevancy is the determinative factor and nothing could be more relevant than statements of those involved in the incident. (*See, e.g., Martinez v. City of Stockton*, 132 F.R.D. 677, 684 (E.D.Cal. 1990); *Kelly v. City of San Jose, supra,* at 671, [where the investigative files of the incident at issue were voluntarily produced]; *Miller v. Panucci*, 141 F.R.D. 292, 296 (C.D.Cal. 1992) [statements of officers involved disclosed.]

This is consistent with the general rule that parties are entitled to factual matter in possession of the other side.

> Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.

*Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616 (5th Cir.1977), *citing, Hickman v. Taylor*, 329 U.S. 495 (1947).

It is also consistent with the settled rule that a plaintiff is entitled to discovery of information pertaining to her case in chief and information which may be used for cross-examination.

> In addition to discovering information pertaining to a party's case in chief, it is entirely proper to obtain information for other purposes such as cross-examination of adverse witnesses.

*Kerr v. U.S. Dist. Court*, 511 F.2d 192, 196-97 (9th Cir.1975).

Thus, in *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D.Cal. 1990), the court ordered disclosure of the entire internal affairs investigation, as did the court in *Miller v. Panucci, supra,* at 303.

*In Spell v. McDaniel,* 591 F.Supp. 1090, 1115-1116 (E.D.Wis. 1984), the court summarily rejected a claim that material related to the incident at bar was not discoverable:

> First, with regard to defendants' objection to material directly related to this incident and to McDaniel, the court finds the objection of little merit. Information from investigations into the incident which forms the basis for this lawsuit and into the background of the allegedly culpable individual is by definition highly relevant to this lawsuit.

*Id.*

Thus, not only are the internal investigations into the instant incident discoverable, evidence of other instances of conduct of the kind sought herein is discoverable because it is relevant to the subject matter of the litigation (a pattern, practice, policy or custom, as alleged in the complaint) and are relevant on the issues of credibility, notice to the employer, ratification by the employer and the intent or motive of the officers engaging in the unlawful acts or the other employees engaging in the cover-up thereof.

Further, information concerning these and other instances of misconduct is discoverable because it may also lead to the discovery of additional witnesses, facts and documents and may lead to the discovery of evidence relevant on the issue of punitive damages, in that the information may lead to evidence of a continuing course of conduct reflecting malicious intent on the part of the individual defendants.

In short, Defendants are attempting to deny Plaintiff access to the very (and maybe the only) source of information which Plaintiff is required to obtain in order to prove the elements of his claims against the COUNTY.

**B.     State Law Privileges.**

It is well settled that a party claiming a privilege bears the burden of showing that a privilege, as defined by the Federal Rules of Evidence, exists and

applies. *See, Campbell v. Gerrans*, 592 F.2d 1054 (9th Cir. 1979); *Heathman v. United States District Court,* 503 F.2d 1032, 1033, 1034 (9th Cir. 1974). Where defendants fail to show what specific privilege applies, they should be compelled to produce the documents.

It should be noted the privilege afforded by California Evidence Code Sections 832.7 and 1040 have no application in federal actions. *See, e.g., Kerr v. United States District Court*, 511 F.2d 192, 197-198 (9th Cir.1975), *affirmed* 426 U.S. 394 (1976); *Gill v. Manuel*, 488 F.2d 799, 803 (9th Cir.1973); *Miller v. Panucci*, 141 F.R.D. 292, 297-299 (C.D.Cal. 1992). Notwithstanding, Defendants continue to rely on these statutes for authority in support of withholding the documents, costing Plaintiff numerous hours of attorney time, despite the above authority being supplied to Defendants in the meet and confer process. Such conduct is sanctionable.

In *Youngblood v. Gates,* 112 F.R.D. 342, 344 (C.D.Cal. 1985), the court also held that federal law controls the issue of the existence and scope of privilege in a federal question case. The *Youngblood* court found that the plaintiffs' interest in disclosure outweighed law enforcement's interest in secrecy:

> First, the public has an interest in assuring just and accurate adjudication of disputes. Overindulgence in governmental privileges might weaken public confidence in the ability of the judicial system to do justice where government is the defendant. Second, the public has an interest in preventing government malfeasance. Exposure of past wrongdoings might inhibit future abuses by government employees. [Citations omitted.]

*Youngblood*, at p. 348.

### C. Attorney-Client Privilege/Work Product Doctrine/Self Critical Analysis

Defendants rely on these privileges in one paragraph in their privilege log for virtually every document relating to a Sheriff's Department internal

investigation. Not only is it baseless to assert a privilege based upon the mere fact that a document has been reviewed or shared with an attorney, it is well settled that there is no recognized privilege of "self critical analysis" in the Ninth Circuit, rendering baseless any argument that the conclusions reached by the officers investigating misconduct are in any way privileged. *See, Dowling v. American Hawaii Cruises*, 971 F.2d 423, 425 (9th Cir. 1992); *Union Pacific R. Co. v. Mower*, 219 F.3d 1069, 1076, n. 7 (9th Cir. 2000); *Soto v. City of Concord,* 162 F.R.D. 603 (1995), at 612-613 (N.D. Cal. 1995); *Griffin v. Davis*, 161 F.R.D. 687, 701, n. 17 (C.D.Cal. 1995) (. . . there has been no case in the Ninth Circuit that has explicitly adopted the self-critical analysis privilege nor has any court in this circuit found any document protected from discovery based upon that privilege." *Citing, Pagano v. Oroville Hospital,* 145 F.R.D. 683, 692 (E.D.Cal. 1993); *T.W.A.R., Inc. v. Pacific Bell,* 145 F.R.D. 105, 107 (N.D. Cal. 1992); *Kelly v. City of San Jose*, 114 F.R.D. at 664-666; *Fisher v. Houser*, 2010 WL 491066 at *4 (S.D. Cal. 2010); *Cloud v. Superior Court*, 50 Cal. App. 4th 1552, 1557-1558 (1996).

Finally, Defendants' objections recite only that the documents **"*may contain*"** subjective opinions and conclusions without any factual evidence or assertion that they do contain such information. Thus, Defendants' joint "attorney-client/work-product/self critical analysis" claims are frivolous and should be rejected by this Court.

**D.    Additional Argument re Certain Categories of Documents Withheld**

**1. The Internal Affairs Investigations/Personnel Files.**

The above authorities make it abundantly clear that any internal investigation into the present incident is discoverable. Moreover, because Plaintiff's claims directly implicate (1) the complicity of the San Diego County Sheriff's Department's chain of command, (2) its failure and refusal to properly hire, train, screen, supervise, and discipline its deputies and supervisors, and (3) its

willingness to cover-up, excuse, ratify and approve its deputies' misconduct, therefore the files and other documents regarding the abuses of deputies other than DEPUTY BANKS (and any cover-up of those abuses) directly relate to Plaintiff's claims and directly impact his ability to fully investigate and prove the elements of his *Monel* claim. To deprive Plaintiff of his access to these documents is to deny him the right to prove his claim. The Department-wide acceptance of the acts of abuse perpetuated by DEPUTY BANKS and other deputies is the gravamen of Plaintiff's claim and he must not be impeded in his right to discovery on those issues.

### 2. Performance Evaluations and Training Records.

Performance evaluations and training records are clearly relevant in a case like this, and are routinely ordered disclosed. *See, e.g.*, *Soto v. City of Concord, supra*, at 614-615; *Hampton v. City of San Diego,* 147 F.R.D. 227 (1993), at 229. There is no legitimate reason to preclude disclosure of performance evaluations and training records in this case, particularly if the Court takes into account the protective order.

### IV.   CONCLUSION

Under the authorities discussed above, Plaintiff is entitled to discovery of the requested records, especially in light of this Court's protective order.

Dated:  March 14, 2016          DICKS & WORKMAN
                                ATTORNEYS AT LAW, APC

                                By:   /s/   Joseph G. Dicks
                                Joseph G. Dicks
                                Attorneys for Mickail Myles, Plaintiff
                                Email: jdicks@dicks-workmanlaw.com