1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11   MICKAIL MYLES,                          Case No.:  15cv1985-BEN (BLM)

12                           Plaintiff,      **ORDER GRANTING IN PART AND
                                             DENYING IN PART PLAINTIFF'S
13   v.                                      MOTION TO COMPEL PRODUCTION OF
                                             POLICE RECORDS HELD BY
14   COUNTY OF SAN DIEGO, et al.,            DEFENDANT COUNTY OF SAN DIEGO**

15                          Defendants.      **[ECF No. 15]**

16

17          Currently before the Court is Plaintiff's March 14, 2016 "Motion to Compel Production of

18   Police Records Held by Defendant County of San Diego" [ECF No. 15-1 ("Mot.")], Defendants'

19   March 28, 2016 opposition to the motion [ECF No. 17 ("Oppo.")], Plaintiff's April 4, 2016 reply

20   [ECF No. 18 ("Reply")], and the "Joint Statement re Plaintiff's Motion to Compel Production of

21   Police Records: Official Information Privilege," which the parties lodged with the Court's

22   chambers on March 25, 2016 ("Joint Stmt.").

                                             1

On February 29, 2016, counsel for both parties contacted the Court regarding a discovery dispute brought by Plaintiff concerning Defendants' production of documents over which they asserted the official information privilege, and various other objections and privileges. See ECF No. 14.  On March 3, 2016, the Court ordered a special briefing schedule for the discovery dispute and, pursuant to the Court's order, the parties timely filed their respective motions and responses. See id.; Mot.; Oppo.; Reply; Joint Stmt.  Having considered the briefing submitted by the parties and having reviewed all of the supporting exhibits, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for the reasons set forth below.

## **FACTUAL AND PROCEDURAL BACKGROUND**

On September 4, 2015, Plaintiff Mickail Myles filed a complaint against the County of San Diego and Deputy Jeremy Banks, employed by the San Diego County Sheriff's Department, alleging assault, battery, false arrest, false imprisonment, negligence, intentional infliction of emotional distress, violation of California Civil Code §§ 51.7 & 52.1, and violation of civil rights pursuant to 42 U.S.C. §§ 1983, 1985(2)-(3), 1986.  ECF No. 1.  Plaintiff alleges that he was "unlawfully profiled, stopped, detained, hand-cuffed, assaulted, battered, beaten, bitten, berated, defamed, falsely arrested, falsely imprisoned, cited and threatened to be charged with crimes he did not commit, by armed, uniformed, on-duty law enforcement officers, solely because he was a black man driving his own car to his family home in a predominately white neighborhood in Fallbrook, California." Id. at 2.   Specifically, Plaintiff alleges that on September 5, 2014, he was driving his younger brother home from a local indoor roller-rink and, about a block from his home, noticed a police car with activated emergency lights behind his car. Id. at 8-9.  Plaintiff claims that he pulled his car over to the curb, waited for an officer to

1  approach his driver's side window with instructions, and when no officer approached, rolled

2  down his driver's side window.  Id. at 9.  Plaintiff states that he then heard a "cacophony of

3  voices coming from the area behind his vehicle screaming at him and making numerous

4  confusing and inconsistent demands," as well as "barking, growling and snarling" from a police

5  dog.  Id.  Plaintiff maintains that he attempted to comply with the officers' commands by opening

6  his driver's side door, exiting the car, raising his hands above his head, facing away, and walking

7  backward toward the officers, before he was hand-cuffed.  Id.  Plaintiff asserts that although he

8  was "hand-cuffed, unarmed, passive and completely non-threatening toward the officers," the

9  officers "beat[] him about the head with a club" and commanded their dog to attack him.  Id.

10 Plaintiff asserts, *inter alia*, that Defendants were negligent in their hiring and screening practices,

11 failed to supervise, investigate or discipline for wrongdoing, engaged in "cover-up" of police

12 misconduct, and adhered to a "code of silence."  Id. at 4-8.  Plaintiff further claims that prior to

13 the incident at issue, Defendants had "engaged in the same or similar conduct [as alleged in

14 Plaintiff's complaint] with respect to other minority members of the general public."  Id. at 12.

15       On October 23, 2015, Plaintiff served on the County his First Set of Requests for

16 Production of Documents.  See Mot. at 7-8; id., Declaration of Joseph Dicks ("Dicks Decl.") at

17 2; id., Exh. A.  On November 20, 2015, the County served its Responses, a privilege log and

18 supporting declarations, and on February 19, 2016, an updated privilege log and declarations.

19 Mot. at 8.

20       In the instant Motion to Compel, Plaintiff asserts that other than the incident reports

21 authored by the deputies involved in the incident at issue, Defendants have not produced any

22 other requested documents.  Id. at 13; see also Dicks Decl. at 4.  Plaintiff asserts that Defendants

refused to produce "personnel, investigative and disciplinary records of deputy sheriffs responding to the scene of the incidents leading up to, and including, the abuses against Plaintiff," by asserting inapplicable California state law privileges, the work product doctrine, the official information and attorney-client privileges.  See Mot. at 8, 12-13; see also Amended Privilege Log.  Plaintiff thus asks the Court to order the production of the disputed documents subject to the parties' protective order "for attorney's eyes only" until he "can make a showing that the documents may be shown to its experts or otherwise utilized in the prosecution of this case."  Mot. at 13.

### LEGAL STANDARDS

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes.  See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  District courts also have broad discretion to limit discovery to prevent its abuse.  See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Id. at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirement of Rule 26. Soto, 162 F.R.D. at 610. Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of "clarifying, explaining, and supporting its objections." DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

**DISCUSSION**

Plaintiff seeks the production of various documents, which can be grouped into the following categories: (1) Personnel files for Defendant Deputy Banks and non-party Deputies Ertz, Brumfield, Bushnell, and Allison ("Personnel files"); (2) Internal Affairs investigation files ("Internal Affairs files"); and (3) Documents related to the underlying incident ("Claims Investigation files"). See Mot.; Reply. Plaintiff argues that the requested documents are

relevant to his claims of excessive force, racial discrimination by the involved officers, negligent hiring and supervision, knowledge, ratification, cover up and failure to investigate or reprimand for the same and similar conduct by the Sheriff's Department and its supervisors.  <u>See</u> Mot. at 5, 9-12.  Plaintiff also claims that he would be "severely hampered in his ability to prove his civil rights claims" if the requested information is not disclosed, because there are no alternative means of obtaining the information.  <u>See</u> <u>id.</u> at 5, 8; Reply at 2.

In further support, Plaintiff maintains that Defendants have not met the burden required to show that the requested discovery should be denied due to privileges or other objections. <u>See</u> Mot.; Reply; Joint Stmt.  Plaintiff contends that Defendants fail to make the threshold showing to establish the official information privilege because the provided declarations do not articulate why a protective order would be insufficient to protect significant governmental or privacy interest and to project how much harm would be done to the threatened interests if the disclosures were made.  Joint Stmt. at 14-15[1]; Reply at 3-4.  Plaintiff further contends that the privileges afforded by California law do not apply in federal actions, that the Ninth Circuit does not recognize the self–critical analysis privilege, and that Defendants' assertion of the attorney-client privilege and work product doctrine is misplaced.  Mot. at 17-19; Reply at 3-4.  Plaintiff also argues that Defendants' confidentiality concerns could be addressed through the parties' protective order.  Reply at 8-9.  Finally, Plaintiff asserts that the disclosure of the requested documents will not have a chilling effect on the Sheriff's Department's internal investigation

---

[1]  The parties lodged their "Joint Statement re Plaintiff's Motion to Compel Production of Police Records: Official Information Privilege" with the Court's chambers.  The Court therefore will cite the pages as they appear in the lodged document.

15cv1985-BEN (BLM)

1 process, and argues that public accountability will serve the public's best interests in "rooting

2 out the Department's misconduct and corruption." See Joint Stmt. at 13.

3 Defendants maintain that the requested documents cannot be released without a court

4 order. See Oppo. Initially, Defendants state that they have produced a significant number of

5 documents, including all police reports, witness contact information and statements, and the

6 follow-on Canine Deployment Report/investigation, and have made all requested witnesses

7 available for depositions. Id. at 1, 9. Defendants further claim that they have provided Plaintiff

8 with an appropriate privilege log and advised of the bases on which they are withholding the

9 documents at issue. See id.; Joint Stmt. Defendants argue that the withheld documents are

10 shielded by the official information privilege. Joint Stmt. at 20-24. Defendants also claim that

11 the Claims Investigation documents are protected under the attorney-client privilege and the

12 work product doctrine because they were prepared in anticipation of litigation with Plaintiff. See

13 Oppo. at 3, 5-7. Defendants further argue that Internal Affairs files from unrelated events and

14 Personnel files are irrelevant and subject to privacy protections. Id. at 3, 7-9. Finally,

15 Defendants assert that a protective order would not alleviate harm from the disclosure of the

16 withheld documents and ask the Court to deny Plaintiff's motion to compel. Id. at 9; Joint Stmt.

17 at 21, 24-25.

18 **I.    Official Information Privilege**

19 Defendants have asserted the official information privilege with respect to every

20 document subject to the instant Motion to Compel. See Joint Stmt. at 20-24. Plaintiff argues

21 that the official information privilege does not shield the withheld documents and that the

22

7

1    submitted declarations are insufficient to meet Defendants' burden to establish the privilege.

2    See id. at 10-15; Amended Privilege Log.

3        **a. Legal Standard**

4        "Assertions of privilege in federal question cases are governed by federal common law."

5    Dowell v. Griffin, 275 F.R.D. 613, 616 (S.D. Cal. 2011) (citing Fed. R. Evid. 501); see also

6    Hampton v. City of San Diego, 147 F.R.D. 227, 230 (S.D. Cal. 1993) ("In civil rights cases brought

7    under federal statutes, questions of privilege are resolved by federal law.") (citation omitted);

8    Kelly v. City of San Jose, 114 F.R.D. 653, 655-56 (N.D. Cal. 1987) ("State privilege doctrine,

9    whether derived from statutes or court decisions, is not binding on federal courts in these kinds

10   of cases.") (citation omitted).  Federal common law recognizes a "qualified privilege for official

11   information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing Kerr v.

12   U.S. Dist. Ct., 511 F.2d 192, 198 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976)).  The party asserting

13   the privilege has the burden of proving the privilege.  Kelly, 114 F.R.D. at 662; see also Hampton,

14   147 F.R.D. at 231 ("Through this opinion, this court is hereby joining the Northern District's and

15   Central District's procedures outlined in Kelly v. City of San Jose, 114 F.R.D. 653 (N.D. Cal. 1987)

16   and Miller v. Pancucci, 141 F.R.D. 292 (C.D. Cal. 1992) for invoking the official information

17   privilege."); Stewart v. City of San Diego, 2010 WL 4909630, at *1 (S.D. Cal. 2010) (applying

18   Kelly).  To determine whether the privilege applies in a particular case, "courts must weigh the

19   potential benefits of disclosure against the potential disadvantages." Sanchez, 936 F.2d at 1033-

20   34.  The Kelly court provided a non-exhaustive list of factors (taken from Frankenhauser v. Rizzo,

21   59 F.R.D. 339 (E.D. Pa. 1973)) that may be considered when engaging in this weighing process:

22   (1) the extent to which disclosure will thwart governmental processes by discouraging citizens

8

from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.  Kelly, 114 F.R.D. at 663.  In making this determination, courts must conduct "a situation specific analysis of the factors made relevant by the request in issue and the objection to it."  Id.  In civil rights cases against police departments, the balancing test should be "moderately pre-weighted in favor of disclosure."  Soto, 162 F.R.D. at 613 (quoting Kelly, 114 F.R.D. at 661).

### b.  Official Information Privilege – Threshold Showing

Before the Court undertakes an *in camera* review of any documents and conducts a balancing of interests, Defendants must make a substantial threshold showing in order to invoke the official information privilege.  See id.; Hampton 147 F.R.D. at 231; Dowell v. Griffin, 275 F.R.D. 613, 616 (S.D. Cal. 2011).  In Kelly, the court held that the party invoking the official information privilege must make a threshold showing by providing the court with "*specific information about how disclosure of the subject material, in the situation presented by the case at hand, would harm significant law enforcement or privacy interests,*" as well as "*what interests*

1    would be harmed, *how* disclosure under a protective order would cause the harm, and *how*

2    *much* harm there would be . . . ."  <u>Kelly</u>, 114 F.R.D. at 669 (emphasis in original).  To meet this

3    burden, Defendants "must submit a declaration or affidavit from a responsible official with

4    personal knowledge of the matters to be attested to in the affidavit."  <u>Dowel</u>, 275 F.R.D. at 616

5    (citation omitted).  Specifically,

6           [t]he affidavit must include: "(1) an affirmation that the agency generated or
       collected the material in issue and has maintained its confidentiality; (2) a

7           statement that the official has personally reviewed the material in question; (3) a
       specific identification of the governmental or privacy interests that would be

8           threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a
       description of how disclosure subject to a carefully crafted protective order would

9           create a substantial risk of harm to significant governmental or privacy interests,
       and (5) a projection of how much harm would be done to the threatened interests

10          if disclosure were made."

11   <u>Soto</u>, 162 F.R.D. at 613 (quoting <u>Kelly</u>, 114 F.R.D. at 670).

12        Defendants submitted declarations from Louise Edler, a Claims Representative in the

13   Claims Division for County of San Diego; Jeffrey Duckworth, a Lieutenant in the Sheriff's

14   Department assigned to the Department's Internal Affairs Unit; and Anthony Ray, a Captain in

15   the Sheriff's Department assigned to the Department's Personnel Division.  <u>See</u> Oppo., Exh. A,

16   Declaration of Louise Edler ("Edler Decl."); <u>id.</u>, Exh. B, Declaration of Jeffrey Duckworth

17   ("Duckworth Decl."); <u>id.</u>, Exh. C, Declaration of Anthony Ray ("Ray Decl.").    Lieutenant

18   Duckworth asserts that he reviewed the documents identified as CSD-000185-429, which pertain

19   to the Claims Investigation and Internal Affairs files.  <u>See</u> Duckworth Decl. at 10.  Lieutenant

20   Duckworth claims that the disclosure and dissemination of internal investigation records "is

21   likely" or "can potentially" discourage individuals from "provid[ing] information; divert

22   department personnel from their regular duties; erode the integrity and security of such records;

10

affect morale of many departmental employees; and consume inordinate time, expense, and resources," as well as undermine and impair "the ability of I[nternal Affairs] to conduct a fair and thorough administrative investigations," and "may" threaten the rights protected by the official information privilege.  See id. at 10-11.  Captain Ray declares that he reviewed the documents identified as CSD-000430-1623, containing background and Personnel files of Deputies Banks, Ertz, Broomsfield, Bushnell, and Allison, and expresses similar concerns to the ones raised by Lieutenant Duckworth.  See Ray Decl. at 16-17; see also Duckworth Decl. at 10-11.  Claims Representative Edler does not make any arguments in support of Defendants' assertion of the official information privilege.  See Edler Decl.

The Court has reviewed the submitted declarations and concludes that they do not sufficiently describe how the disclosure of the relevant documents to Plaintiff and his attorneys with appropriate redactions and pursuant to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interest.  Defendants state that disclosure of the requested documents "is likely to discourage persons with relevant information from providing the candid statements and assessments," that deputies may be "less forthcoming," and that supervisors "may begin to withhold critical feedback and frank evaluation," which would negatively affect the overall functioning of the Sheriff's Department.  See Duckworth Decl. at 10-11; see also Ray Decl. at 16-17.  However, Defendants fail to provide any support for these assertions and, in fact, courts have rejected the theory.  See Soto, 162 F.R.D. at 612 (noting that Kelly "debunks the theory that officers will be less truthful or forthright in expressing their opinions if there is a risk of future disclosure" and concurring with Kelly's

reasoning) (quoting <u>Kelly</u>, 114 F.R.D. at 665-66[2]); <u>see also</u> <u>Watson v. Albin</u>, 2008 WL 1925257 (N.D. Cal. Apr. 30, 2008) ("[Defendant's] arguments that disclosure would discourage exhaustive internal investigations are unpersuasive.  Courts in this district have previously rejected such claims, and there is no reason to depart from that reasoning here.") (citing <u>Kelly</u>, 114 F.R.D. at 672).

Additionally, although Captain Ray generally claims that the disclosure and dissemination of the withheld records, "even when made pursuant to *a protective order*," will "erode the integrity and security of such records, negatively affect morale of many Department employees, consume inordinate time, expense, and resources, and frustrate the legitimate specific proposes of compiling and maintaining such records," neither Captain Ray nor Lieutenant Duckworth specifically discuss why the disclosure of the withheld documents pursuant to the terms of the protective order entered in this case, which the parties negotiated and executed [ECF Nos. 11 & 12], would create a substantial risk of harm to significant governmental or privacy interest. <u>See</u> Ray Decl. at 17 (emphasis added); <u>see also</u> Duckworth Decl.  In fact, none of the declarants acknowledge the existence of the protective order or assert that he or she has reviewed the parties' protective order.  <u>See</u> Edler Decl.; Duckworth Decl.; Ray Decl.  Rather, the declarants

---

[2]  The quoted <u>Kelly</u> section provides that "since there is no empirical support for the contention that the possibility of disclosure would reduce the candor of officers who contribute to internal affairs investigations, and since there are solid reasons to believe that that possibility might have the opposite effect (improving accuracy and honesty), there is no justification for offering near absolute protection to the statements that go into such reports or the opinions and recommendations that conclude them.  In fact . . . such material should be presumptively discoverable when a plaintiff makes a proper showing of relevance." <u>Kelly</u>, 114 F.R.D. at 665-66.

1  ask the Court to "fashion a protective order to preclude any disclosure or dissemination of any

2  records, documents or information ordered disclosed for any purpose other than the express

3  and specific purpose for which the Court has ordered such disclosure" in case the Court orders

4  disclosure of the withheld documents.  See Duckworth Decl. at 12; Ray Decl. at 18.

5       The Court concludes that Defendants' declarations do not set forth specific information

6  adequately explaining why the protective order already entered in this case or any other

7  protective order would be insufficient to protect significant governmental or privacy interest, and

8  that therefore Defendants have not established the fourth element required to make the

9  threshold showing to invoke the official information privilege.  See Soto, 162 F.R.D. at 613;

10 Kelly, 114 F.R.D. at 670; see also Medina, 2014 WL 4793026, at *7 (citing virtually identical

11 language in supporting declaration and finding that defendant failed to make the required

12 threshold showing for the official information privilege).  Accordingly, the Court finds that

13 Defendants have not met their threshold burden to properly invoke the official information

14 privilege and that, consequently, the Court does not need to engage in the balancing test

15 articulated by the Kelly court.  See Kelly, 114 F.R.D. at 661.  The Court therefore **OVERRULES**

16 Defendants' objections based on the official information privilege with respect to all withheld

17 documents.

18 **II.    Attorney-Client Privilege and Work Product Doctrine**

19      Defendants assert that the Claims Investigation files are protected under the attorney-

20 client privilege and the work product doctrine because the documents represent communications

21 regarding a pending public liability claim, which were prepared in anticipation of litigation with

22 Plaintiff.  See Oppo. at 3, 5-7.  Defendants state that the documents at issue "result from the

13

1   claims investigation conducted in response" to Plaintiff's claim and "*may* contain" "subjective

2   opinions and conclusions, including self-critical analysis"[3] and "information pertaining to

3   recommended remedial measures, whether acted upon or not."  <u>See</u> Amended Privilege Log

4   (emphasis added).  Defendants also argue that the report prepared by the Sheriff's Department

5   is protected under the attorney-client privilege and the attorney work product doctrine because

6   it "review[s], evaluate[s], and summarize[s] facts and source reports with the ultimate propose

7   of helping develop legal strategy."  <u>See</u> Oppo. at 6-7 (citing <u>Pittman v. Cty. of San Diego</u>, 2010

8   _____

9   [3]   The Court notes that  Defendants appear to be asserting the self-critical analysis privilege in
their Amended Privilege Log.  <u>See</u> Amended Privilege Log.  However, in their opposition to

10  Plaintiff's motion to compel, Defendants do not discuss the self-critical analysis privilege as a
ground for objecting to discovery.  <u>See</u> Oppo.; <u>see also</u> Joint Stmt. at 18-25.  "When ruling upon

11  a motion to compel, the court generally considers those objections which have been timely
asserted and relied upon in response to the motion.  It generally deems objections initially raised

12  but not relied upon in response to the motion as abandoned."  <u>In re Toys R Us Del., Inc. Fair &
Accurate Credit Transactions Act (FACTA) Litig.</u>, 2010 WL 4942645, at *3 (C.D. Cal. July 29,

13  2010) (quoting <u>Cotracom  Commodity Trading Co. v. Seaboard Corp.</u>, 189 F.R.D. 655, 662 (D.
Kan. 1999)); <u>Hupp v. San Diego Cnty.</u>, 2014 WL 1404510, at *7 (S.D. Cal. Apr. 10, 2014) (citing

14  <u>Bryant v. Armstrong</u>, 285 F.R.D. 596, 604 (S.D. Cal. 2012)) (addressing only the objections
raised in a party's opposition to a motion to compel where the party raised multiple boilerplate

15  objections in its initial responses to discovery requests, but did not support or explain the
objections in its opposition to a motion to compel); <u>Dolquist v. Heartland Presbytery</u>, 221 F.R.D.

16  564, 568 n.16 (D. Kan. 2004) ("objections initially raised but not relied upon in response to a
motion to compel are deemed abandoned").  Furthermore, the self-critical analysis privilege has

17  not been recognized by the Ninth Circuit.  <u>Union Pac. R. Co. v. Mower</u>, 219 F.3d 1069, 1076 n.7
(9th Cir. 2000) (citing <u>Dowling v. Am. Hawaii Cruises, Inc.</u>, 971 F.2d 423, 425-26 (9th Cir.

18  1992)); <u>Fisher</u>, 2010 WL 4917066, at *4; <u>Medina</u>, 2014 WL 4793026, at *7.  Accordingly, to the
extent Defendants are asserting the self-critical analysis privilege, the Court overrules

19  Defendants' objections based on the privilege.

20

21

22

1    WL 4570252, at *6 (S.D. Cal. Nov. 3, 2010)).  Plaintiff challenges Defendants' assertion of the

2    attorney-client privilege and work product doctrine and argues that Defendants' objections

3    "recite only that the documents 'may contain' subjective opinions and conclusions without any

4    factual evidence or assertion that they do contain such information."  Mot. at 18-19; see also

5    Reply at 6-8.

6          Defendants withheld the following "Claims Investigation" documents, claiming attorney-

7    client privilege and work product doctrine:

- Cover sheet and table of contents to Claim No. 150097 "regarding [P]laintiff's claim against the County upon 9/5/14 incident involving Plaintiff Mickail Myles" ("Plaintiff's claim") [CSD-000186-87];

- March 3, 2015 inter-departmental correspondence from the County Counsel Claims Representative Edler to the Division of Inspectional Services regarding "receipt of claim and investigative efforts" concerning Plaintiff's claim [CSD 000189-190];

- March 4, 2015 inter-departmental correspondence from the Division of Inspectional Services Manager Kanaski to "Fallbrook Station" Commander Myers and Captain Nesbit regarding the receipt of Plaintiff's claim [CSD-000188];

- March 26, 2015 inter-departmental correspondence from the San Diego Sheriff's Department Sergeant Pucillo to the San Diego Sheriff's Department Commander Myers regarding "synopsis analysis and conclusions" concerning Plaintiff's claim [CSD-000191-94];

- March 26, 2015 County Claim Investigation Report ("the Report") from the San Diego Sheriff's Department Sergeant Pucillo regarding "synopsis, analysis and conclusions" concerning Plaintiff's claim [CSD000197-206]; and

- April 1, 2015 inter-departmental correspondence from the Division of Inspectional Services Manager Kanaski to the County Counsel Claims Reprehensive Edler, "attaching completed investigation" regarding Plaintiff's claim [CSD-000185].

///

1
### a. Attorney-Client Privilege

2      "Issues concerning application of the attorney-client privilege in the adjudication of

3   federal law are governed by federal common law."  Clarke v. Am. Commerce Nat'l Bank, 974

4   F.2d 127, 129 (9th Cir. 1992) (citing United States v. Zolin, 491 U.S. 554, 562 (1989); United

5   States v. Hodge and Zweig, 548 F.2d 1347, 1353 (9th Cir. 1977); Fed. R. Evid. 501).  "The

6   attorney-client privilege exists where: '(1) [ ] legal advice of any kind is sought (2) from a

7   professional legal adviser in his capacity as such, (3) the communications relating to that

8   purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected

9   (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'"

10  United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (quoting United States v. Graf, 610

11  F.3d 1148, 1156 (9th Cir. 2010)).  The privilege extends to agencies to the extent the agency is

12  consulting its attorney "as would any private party seeking advice to protect personal interests."

13  Ctr. for Bio. Diversity v. Office of Mgmt. & Budget, 625 F. Supp. 2d 885, 892 (N.D. Cal. 2009)

14  (quotation omitted); Our Children's Earth Found. v. Nat'l Marine Fisheries Serv., 85 F. Supp. 3d

15  1074, 1086-87 (N.D. Cal. 2015) (same).  "Because it impedes full and free discovery of the truth,

16  the attorney-client privilege is strictly construed."  United States v. Martin, 278 F.3d 988, 999

17  (9th Cir. 2002) (quotation omitted).  The privilege "protects only those disclosures necessary to

18  obtain informed legal advice which might not have been made absent the privilege," and applies

19  "only when necessary to effectuate its limited purpose of encouraging complete disclosure by

20  the client."  See Fisher v. United States, 425 U.S. 391, 403 (1976); Griffith v. Davis, 161 F.R.D.

21  687, 694 (C.D. Cal. 1995) (quoting Tornay v. United States, 840 F.2d at 1428).

22

15cv1985-BEN (BLM)

1    The party asserting the attorney-client privilege bears the burden to establish that the

2    privilege applies to the requested documents.  Griffith, 161 F.R.D. at 694 (quoting Tornay, 840

3    F.2d at 1426).  The agency fails to meet its burden if it uses boilerplate language and makes

4    "no effort . . . to tailor the explanation to the specific document withheld . . . ."  Our Children's

5    Earth Found., 85 F. Supp. 3d at 1087 (citing Wiener v. FBI, 943 F.2d 972, 978-79 (9th Cir.

6    1991)).

7    In their opposition, Defendants assert that the identified communications and documents

8    are privileged because they were "solicited by members of the County Counsel's Office from the

9    County Sheriff's Department regarding the merits of Plaintiff's pre-litigation claim."  Oppo. at 5.

10   Defendants state, without legal citation, that "[w]hen a public entity attorney consults the client

11   entity's employees to determine the facts necessary to properly represent the entity's legal

12   interests, the investigation and analysis of the facts at issue by the public entity's employees in

13   response to the entity's attorneys are confidential attorney-client communications."  Id. at 6.

14   Defendant then concludes, again without legal citation, that "[t]he Report at issue in this case

15   was prepared by the employees at the Sheriff's Department and communicated to the Claims

16   Representative at the Office of County Counsel" and therefore is privileged.  Id.

17   The facts presented by Defendants do not support Defendants' privilege assertion.  In

18   the supporting declaration, the Claims Representative Edler, merely states that County Counsel

19   received a claim from Plaintiff on February 26, 2015, and forwarded the claim to the Sheriff's

20   Department "with a request for comments."  Edler Decl. at 4.  Edler states that she marked her

21   memorandum "Attorney-Client Communication," instructed any response to also be so marked,

22   and considered all of the marked communications to be privileged.  Id. at 4-5.  Edler states that

17

on April 3, 2015, she received the Report prepared by Sergeant Pucillo in response to her request and that the Report is privileged.  Id. at 5.  Edler does not provide any additional information regarding the preparation of the Report and Defendants do not present any arguments regarding the other withheld communications which they are claiming are protected by the attorney-client privilege.  See Edler Decl.; Oppo. at 5-6.

The attorney-client privilege typically does not apply to internal police investigations. Medina, 2014 WL 4793026, at *16 (finding that the County did not establish that an internal police investigation report and records were protected by the attorney-client privilege).  Here, Defendants do not counter Plaintiff's assertion that the Report was prepared as part of a police investigation required as a response to a citizen complaint, rather than as part of a confidential legal communication, and neither Claims Representative Edler, Lieutenant Duckworth, nor Sergeant Pucillo state that the Report was prepared and transmitted as a confidential legal communication.  Defendants also do not provide facts or law establishing that the entire Report is protected by the attorney-client privilege.[4]  See Griffith, 161 F.R.D. at 694-97 (finding statements made during an internal police investigation and contained in a written report were not protected by the attorney-client privilege).  Finally, the fact that Division of Inspectional Services Manager Kanaski attached the Report to a communication sent to Edler does not transform the non-privileged Report into a privileged communication.  Our Children's Earth Found., 85 F. Supp. 3d at 1088 ("[a]ttachments which do not, by their content, fall within the

---

[4]  The Court notes that Defendants did not redact a portion of the Report, produce the rest of the Report, and argue that the redacted portion was protected by the attorney-client privilege. Rather, Defendants withheld the entire document and apparently are arguing that the entire Report is privileged.

realm of the [attorney-client] privilege cannot become privileged by merely attaching them to a communication with the attorney); Hanson v. Wells Fargo Home Mortg., Inc., 2013 WL 5674997, at *4 (W.D. Wash. Oct. 17, 2013) ("Documents attached to or included in an attorney[-]client communication are not automatically privileged, and the party asserting privilege must prove that each attachment is protected by privilege.")).    Although Defendants claim that the communications at issue are considered by the County Counsel and the Sheriff's Department to be attorney-client communications [see Oppo. at 3], such general assertions are insufficient to establish that the communications were made in confidence and for the propose of seeking legal advice.  See Anderson v. Marsh, 312 F.R.D. 584, 591 (E.D. Cal. 2015) (reasoning that because the "findings [in the report at issue] could be used to impose discipline on the employee . . . the employee would be entitled to challenge the discipline imposed due to the findings through the union grievance procedures," which "further support[s] . . . the finding that the report is not a confidential communication to the attorney as it would be considered during any challenge to discipline imposed due to findings included in the report.").

Defendants do not provide any arguments regarding the additional documents designated as attorney-client privileged.  See Oppo. at 6-7.  For example, Defendants do not explain why a cover sheet and a table of contents to Plaintiff's claim, as well as the correspondence between a manager of the Sheriff's Department's Division of Inspectional Services and a commander and a captain of the Fallbrook Station concerning the receipt of Plaintiff's claim, and communications between the Sheriff's Department's sergeant and the Department's commander regarding the "synopsis, analysis and conclusions" concerning Plaintiff's claim were confidential and generated for the purpose of obtaining legal advice.  See Our Children's Earth Found., 85 F. Supp. 3d at

1087 (citing <u>Wiener</u>, 943 F.2d at 978-79) (providing that an agency fails to meet its burden if it uses boilerplate language and makes "no effort . . . to tailor the explanation to the specific document withheld . . . .").

Accordingly, Defendants have not established that the withheld communications are protected by the attorney-client privilege.  For the reasons set forth above, the Court finds that Defendants did not carry their burden to establish that the Claims Investigation files are protected by the attorney-client privilege and therefore **OVERRULES** Defendants' objections based on the attorney-client privilege.

### b.  Work Product Doctrine

Defendants argue that the Claims Investigation files also are protected by the work product doctrine because they were "prepared as part of, and in response to, the investigation of Plaintiff's pre-litigation Claim filed with the County of San Diego," and that the Report generated by the Sheriff's Department is protected because it "review[s], evaluate[s], and summarize[s] facts and source reports with the ultimate propose of helping develop legal strategy."  Oppo. at 6-7 (citing <u>Pittman</u>, 2010 WL 4570252, at *6); Edler Decl. at 4-5.

Plaintiff maintains that the investigation of his claim "**had** to be" performed by the Sheriff's Department personnel irrespective of the County Counsel's request because every citizen complaint of excessive force must be investigated.  Reply at 8 (emphasis in original). Plaintiff further argues that even if some of the documents at issue contain the ultimate conclusions of the investigating officers, pursuant to <u>Hampton</u>, such documents may also contain information related to credibility, notice to and ratification by the agency, as well as the motive of the officers involved in the underlying incident, which may prove liability under <u>Monell</u>.  <u>Id.</u>

at 7-8 (citing <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978); <u>Hampton</u>, 147 F.R.D. at 229).

"[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Nevertheless, those materials may be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." <u>Id.</u> However, even when substantial need for work product has been shown, the court must still "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

The work product doctrine does not protect materials assembled in the ordinary course of business. Rather, the primary motivating purpose behind the creation of the materials must be as an aid in possible future litigation. <u>See</u> <u>Griffith</u>, 161 F.R.D. at 698-99 (citations omitted). That is, work product protection applies only to material "that would not have been generated but for the pendency or imminence of litigation." <u>See</u> <u>id.</u> (citing <u>Kelly</u>, 114 F.R.D. at 659). Further, "a mere allegation that the work product rule applies is insufficient to invoke its protection." <u>Medina</u>, 2014 WL 4793026, at *17 (citation omitted). A number of courts have found that documents constituting a police department's internal affairs investigations following citizen complaints were prepared in the regular course of business and, consequently, not

protected by the work product doctrine.  See Miller, 141 F.R.D. at 303; Kelly, 114 F.R.D. at 659; Anderson, 312 F.R.D. at 593.

Here, Defendants have not established that the Report was prepared in response to imminent litigation, rather than in the regular course of business investigating a citizen complaint.  Lieutenant Duckworth asserts in his declaration that the Internal Affairs Unit of the Sheriff's Department is "responsible for investigating complaints of any type of employee misconduct and managing the Sheriff's Department's disciplinary process," including "complaints pertaining to professional staff, Sheriff's deputies in any assignment (e.g. detentions, patrol, transportation, etc.) and more."  Duckworth Decl. at 7.  Duckworth further asserts that he has reviewed the investigative file created in response to Plaintiff's claim against the County and claims that the documents in the file are "collected and maintained as confidential" and that the file "*contains* documents created by the County in anticipation of litigation."  Id. at 9 (emphasis added).  Duckworth does not identify any specific documents that were allegedly created in anticipation of litigation, does not claim that the documents would not have been collected or created without a request from the County Counsel, and does not provide any explanation or substantiation to support his assertion of the work product doctrine.  See id.  Accordingly, Lieutenant Duckworth's claim that the investigative file "contains documents created by the County in anticipation of litigation" without any description or analysis of the specific documents in the Claims File is insufficient to establish the application of the work product doctrine to the documents at issue in this motion.  See id.; Medina, 2014 WL 4793026, at *17 (providing that "a mere allegation that the work product rule applies is insufficient to invoke its protection.").

1   Lieutenant Duckworth further explains that the records of administrative investigations of

2   misconduct allegations by the Sheriff's Department employees are gathered "for analysis of a

3   complaint of misconduct, and are utilized by Sheriff's Department executives for the purpose of

4   administering discipline, when discipline is determined to be appropriate."  Duckworth Decl. at

5   7-8.  As such, the Report and other documents were prepared in the regular course of business

6   and Defendants fail to establish that the documents at issue "*would not have been generated*

7   *but for the pendency or imminence of litigation.*"  Griffin, 161 F.R.D. at 698-99 (citing Kelly,

8   114 F.R.D. at 659) (emphasis added); see also Miller, 141 F.R.D. at 303 (finding that documents

9   constituting police department's internal investigations were prepared in the regular course of

10  business and thus not protected by the work product doctrine); Kelly, 114 F.R.D. at 659

11  (reasoning that "[s]ince police departments are under an affirmative **duty,** in the normal course

12  of serving their public function" to generate documents such as internal investigation reports,

13  "the policies that inspire the work product doctrine are wholly inapplicable.") (emphasis in

14  original); Anderson, 312 F.R.D. at 593 (stating that "the [memorandum of findings for the officer

15  involved shooting, and a California Highway Patrol policy and procedure evaluation report] are

16  routinely created regardless of whether there would be litigation regarding the incident," that

17  the documents' purpose was "to determine if the officer was legally justified in shooting,

18  complied with departmental policy, and if any action should be taken by the immediate

19  supervisor," and finding that the "documents would have been created in substantially similar

20  form regardless of the prospect of litigation.").

21      In support of their assertion that the Claims Investigation documents are protected by

22  the work product doctrine, Defendants rely on Pittman.  Oppo. at 7 (citing Pittman, 2010 WL

4570252, at *6) (stating that "when these [reports prepared by the Sheriff's Department at the direction of the Office of County Counsel's employee] are prepared months after the underlying incident, after a claim has been filed, and after counsel has requested them, they serve a different purpose," because "[t]hey no longer document facts for the sake of documentation but rather review, evaluate, and summarize facts and source reports with the ultimate purpose of helping develop legal strategy.").  In Pittman, the court found that the reports at issue were prepared in anticipation of litigation reasoning as follows:

> [T]he Pittmans' attorney submitted a claim notice to the County in the form of a letter. (Motion, Exhibit A.)[)] The Pittmans' notice included their detailed version of events and concluded as follows: "The amount of this claim for each of the Claimants individually exceeds ten thousand dollars ($10,000) and *when* it is filed in court it will be filed as an unlimited case seeking in excess of $1,000,000." (Exhibit A at 5 (emphasis added).  The Court finds notable the letter's use of "when," which essentially put the County on notice that the Pittmans would file a lawsuit if their claim was denied, instead of "if," which would have made the prospects of future litigation much less certain.  Thus, at the time County Counsel sought the Sheriff's investigation and evaluation of the allegations and claim, the County reasonably anticipated that the Pittmans would file a lawsuit seeking more than $1,000,000 if their claim was denied—the Pittmans warned the County as much from the beginning.
>
> In light of the Pittmans' letter, County Counsel's request to the Sheriff served a dual purpose. It simultaneously sought the Sheriff's opinion on the active claim and requested that the Sheriff "help the County Counsel assess the County's civil liability." (Motion at 11:1.)  It is not relevant that an active lawsuit was not pending when the reports were made, as it is sufficient that litigation was reasonably anticipated under the totality of the circumstances.  *In re Grand Jury Subpoena*, 357 [] F.3d 900, 908 (9th Cir.2003).  The Court finds that the reports were created in anticipation of litigation.

Pittman, 2010 WL 4570252, at *4.

In this case, Defendants have not provided the Court with any evidence establishing that they reasonably anticipated litigation when Plaintiff filed his claim.  As discussed above,

Defendants do not provide any specifics regarding the preparation or contents of the Report or the contents of Plaintiff's claim letter and merely state that the Report and other documents in the Claims Investigation files "*may* contain subjective opinions and conclusions" and "*may* contain information pertaining to recommended remedial measures, whether acted upon or not." See Amended Privilege Log (emphasis added).  In addition, none of the declarants stated that the Report was prepared in response to, or at the direction of, County Counsel and Lieutenant Duckworth stated that the Internal Affairs Unit is responsible for investigating citizen complaints. Duckworth Decl. at 7-8.  This stands in stark contrast to the Pittman evidence where the claim letter provided detailed facts and stated that plaintiff *would* be filing suit, the report at issue contained recommendations regarding the claim and settlement, and the County provided a declaration stating that it "would not initiate such an internal review and investigation without a request from County Counsel."  See Pittman, 2010 WL 4570252, at *1, 4.

As noted above, the Internal Affairs Unit is charged with "investigating complaints of any type of employee misconduct and managing the Sheriff's Department disciplinary process," including "complaints pertaining to professional staff, Sheriff's deputies in any assignment." Duckworth Decl. at 7.  Defendants' generalized assertion that the documents at issue "may" contain subjective opinions and conclusions, as well as information pertaining to recommended remedial measures, without any supportive documentation and individualized analysis of the documents in the Claims Investigation files is insufficient to establish the application of the work

25

product doctrine.[5]  See Amended Privilege Log; Oppo.; see also Fed. R. Civ. P. 26(b)(3)(B); Smith, 2013 WL 3893380, at *1 (finding that the attorney work product doctrine did not apply to a memorandum written by the Nassau Police Department's Detective Sergeant, which was addressed to the "Commanding Officer, Legal Bureau (Through Official Channels)" and provided a summary of statements given by witnesses who were interviewed with respect to plaintiff's claims); Collins, 170 F.R.D. at 136-37 (noting that "[a]ccording to the [Sheriff's Office's] own regulations and policies, investigations were conducted to ensure the safe and lawful operations of the sheriff's office.  Such inquiries are routinely undertaken by law enforcement agencies and are not conducted in anticipation of trial," and finding that the work product doctrine did not apply to the disputed documents).  Accordingly, the Court finds that Defendants have not met their burden to establish the application of the work product doctrine and **OVERRULES** their objections based on the work product doctrine.  See Griffith, 161 F.R.D. at 699; Medina, 2014 WL 4793026, at *17.

### III.   Relevance

Defendants argue that Internal Affairs files from unrelated incidents and all of the Personnel files are not relevant.  Oppo. at 8.  Plaintiff challenges Defendants' relevancy objections arguing that the requested documents are relevant to his claims.  See Mot. at 14-17; Reply at 9.

---

[5]  Again, the Court notes that Defendants did not produce a redacted Report and assert that a specific portion was attorney work product.  Rather, Defendants argue that the entire Report is protected.

### a.  Internal Affairs Files

Plaintiff's RFP No. 22 seeks "[a]ny and all DOCUMENTS describing or identifying any negligent, reckless or intentional misconduct of DEPUTY BANKS or any of the other deputies or supervisors responding to the INCIDENT, during the last five years." Mot., Exh. A at 6.  Plaintiff's RFP No. 29 requests "[a]ny and all DOCUMENTS that refer, relate to or otherwise evidence any and all investigations into alleged on the job wrongdoings by DEPUTY BANKS or any of the other deputies or supervisors responding to the INCIDENT, from the date of his initial hire to the present, including all internal e-mail, memorandum or other internal communications relating thereto." Id. at 7-8.

Defendants identified the following responsive Internal Affairs files, which they withheld: (1) documents concerning Defendant Deputy Banks: "correspondence . . . that an investigation would not be started, on an unrelated issue over one year earlier" [CSD-000208-12], an "investigation . . . on an unrelated issue one year earlier" [CSD-000213-20], and "correspondence . . . that an investigation would not be started, on an unrelated issue three months earlier" [CSD-000237-50]; (2) documents concerning Deputy Ertz: an "investigation . . . on an unrelated issue 3.5 years earlier" [CSD-000207], and "correspondence . . . that an investigation would not be started, on an unrelated issue one year earlier" [CSD-000221-34], an "investigation of Deputy David Ertz and others, all non-parties to the lawsuit, on an unrelated issue one year later" [CSD-000251-429]; and (3) documents concerning Deputy Allison: an "investigation . . . on an unrelated issue one month later" [CSD-000235-236].  Oppo. at 2; see also Duckworth Decl. at 10.

27

Defendants claim that they did not conduct an internal investigation of the subject incident, and that Internal Affairs files that do not relate to Plaintiff's incident and allegations of racial discrimination are not relevant and not likely to lead to the discovery of admissible evidence.  Oppo. at 1, 8.  Plaintiff asserts that the requested documents are relevant to his claims of excessive force, racial discrimination by the involved officers, negligent hiring and supervision, knowledge, ratification, cover up and failure to investigate or reprimand for the same and similar conduct by the Sheriff's Department and its supervisors.  Mot. at 14-17; see also id. at 8-12.  Plaintiff argues that the documents are relevant to establish the officers' propensity to use excessive force and to show that supervisors had notice of the propensity, but failed to take remedial steps.  Id. at 15.  Plaintiff also claims that the requested documents may lead to the discovery of additional witnesses, facts and documents, as well as evidence on the issue of punitive damages.  Id. at 17.

"[I]n the context of civil rights excessive force cases against police departments, plaintiffs may suffer great difficulties if courts impose demanding relevancy standards on them."  Soto, 162 F.R.D. at 610 (citing Kelly, 114 F.R.D. at 667-68).  Records of citizen complaints against law enforcement involving excessive force are relevant in civil rights cases, because such records may be "crucial to proving [a] [d]efendant's history or pattern of such behavior."  Soto, 162 F.R.D. at 620; Medina, 2014 WL 4793026, at *11 (same).  Internal affairs files of the named officer defendants may also be relevant "on the issues of credibility, notice to the employer, ratification by the employer and motive of the officers."  Hampton, 147 F.R.D. at 229.  Additionally, "information concerning other instances of misconduct may also be relevant on the issue of punitive damages, in that the information may lead to evidence of a continuing course

of conduct reflecting malicious intent." Id.  Further, "post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry." Henry v. Cnty. of Shasta, 132 F.3d 512, 519 (9th Cir. 1997), *as amended*, 137 F.3d 1372 (9th Cir. 1998); Medina, 2014 WL 4793026, at *12 (same).

The Sheriff's Department's Internal Affairs Unit investigates complaints of employee misconduct and maintains records of administrative investigations.  Duckworth Decl. at 7-8.  An Internal Affairs investigation file typically includes citizen contact information, witness statements and contact information, criminal investigation reports, background research of the citizen or individual bringing the complaint, and other information pertaining to witnesses and the complainant.  Id. at 8.

Initially, the Court notes that Defendants have not provided any evidence regarding the allegations or claims asserted in each file so the Court is unable to evaluate the relevance of the specific claim or file.  The Court finds that any Internal Affairs files regarding any complaints of or investigations into incidents of excessive force, racial discrimination, false arrest and false imprisonment by Defendant Banks are relevant to show a purported pattern of misconduct by Defendant Banks and the failure of his supervisors to hold him accountable for such misconduct. Plaintiff's claims directly implicate the complicity of the San Diego County Sheriff's Department's chain of command and its failure to properly hire, train, screen, supervise and discipline its deputies and supervisors, as well as its willingness to cover up, excuse and ratify its deputies' misconduct.  See ECF No. 1.  The Supreme Court held in Monell that a municipality can be sued for constitutional violations under 42 U.S.C. § 1983 if the "execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [then] the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.  As such, Internal Affairs files regarding any complaints of or investigations into incidents of excessive force, racial discrimination, false arrest and false imprisonment by Defendant Banks "may prove the sort of policy necessary to prevail against" defendant city on Plaintiff's Monell claim, and thus are relevant.  See Miller, 141 F.R.D. at 296; see also Spell, 591 F. Supp. at 1117-18 ("In order for plaintiff to prove [the allegations of "failure to discipline and active encouragement of assaultive behavior"], he must have an opportunity to discover and review internal investigative files and reports.") (citations omitted).  The Court also finds that any Internal Affairs files concerning other instances of excessive force, racial discrimination, false arrest and false imprisonment involving any of the four non-party deputies are relevant to Plaintiff's claims.  See Hampton, 147 F.R.D. 229 (finding that internal affairs histories of officers who were at the scene during the alleged use of excessive force, but who were not named as defendants in civil rights and wrongful death action, were relevant to defendant city's hiring, training, supervision, and control policies, and to the non-party officers' credibility and willingness to intercede).  The Court notes that all of the identified investigations occurred within 3.5 years of the incident and the Court finds this time frame to be relevant and appropriate.

### b.  Personnel Files

Plaintiff's RFP No. 46 requests "[a]ny and all DOCUMENTS which constitute the employment, discipline, work, personnel or other file kept or maintained for DEPUTY BANKS or any of the other deputies or supervisors responding to the INCIDENT."  Mot., Exh. A at 9.

1    Plaintiff's RFP No. 28 seeks "[a]ny and all DOCUMENTS that refer, relate to or otherwise evidence

2    psychological, psychiatric, or other mental health evaluations, testing or assessments performed

3    on DEPUTY BANKS or any of the other deputies or supervisors responding to the INCIDENT,

4    from the date that YOU first began to evaluate or consider DEPUTY BANKS or any of the other

5    deputies or supervisors responding to the INCIDENT, for a position with YOU, to the present."

6    Id. at 7.  Defendants identified the following withheld Personnel files and background packets

7    as responsive: Deputy Banks [CSD-000430-629], Deputy Ertz [CSD-000630-912], Detective

8    Brumfield [CSD-000913-1143], Deputy Bushnell [CSD-001144-1339], and Deputy Allison [CSD-

9    001340-1623].  Oppo. at 2-3.

10        Defendants maintain that the Personnel files of Defendant Banks and four non-party

11   deputies are not relevant.  Id. at 8.  Plaintiff alleges the requested Personnel files are relevant

12   because they concern "Defendant's prior knowledge of the officers' fitness for duty, history of

13   excessive force or racism, history of provoking violence or anger from those he or she encounters

14   in the field," as well as "the Sheriff's Department unwillingness or failure to properly supervise,

15   control, train, sanction, reprimand or terminate a deputy for the same or similar misconduct or

16   other conduct on the part of the departments['] supervisors or officers tending to encourage or

17   ratify deputy misconduct."  Dicks Decl. at 2-3.  Plaintiff further argues that documents related

18   to screening for psychiatric conditions are relevant in light of his allegations that proper

19   screening of the involved deputies would have identified the deputies as unfit for employment

20   by the Sheriff's Department.  See id. at 3; Joint Stmt. at 13 n.5.  Plaintiff also claims that the

21   requested information cannot not be obtained from any other source.  Dicks Decl. at 2.

22

Police personnel records are "relevant and discoverable" in § 1983 cases.  See Green v. Baca, 226 F.R.D. 624, 644 (C.D. Cal. 2005) (citations omitted); Soto, 162 F.R.D. at 614-15; Medina, 2014 WL 4793026, at *6.  "Items typically found in personnel files, such as records concerning training and performance, have been held to be relevant on the issues of credibility, notice to the employer, ratification by the employer, motive of the officers and malicious intent." Kassab v. San Diego Police Dep't, 2008 U.S. Dist. LEXIS 72619, at *6-7 (S.D. Cal. Sept. 19, 2008) (citing Soto, 162 F.R.D. at 613).  Further, because performance evaluations are conducted on a routine basis, "the absence of materials documenting officer misconduct would tend to suggest the officer in question performed adequately and in accord with department policies." Stewart, 2010 WL 4909630, at *2.

The San Diego County Sheriff's Office's collects and maintains background information concerning its deputies, including background packets and personnel files.  Ray Decl. at 14, 16. The requested deputy background files include employment interview, fingerprinting, birth and marriage certificates, DMV records, high school and college transcripts, family residence information, military records, and social security and medical records.  Id. at 16.  The requested personnel files include prior duty assignments, work performance appraisals, performance reviews, commendation letters, academy recruit evaluations, DMV records, personal data worksheets, family contact information, and financial institution information.  Id.  As such, the Court finds that Plaintiff's request is overbroad.

One again, the Court's analysis is hindered by Defendants' failure to describe the specific documents contained in the withheld files and to tailor their arguments to the actual documents or portion of documents.  As a result, the Court finds that the background files and Personnel

1  files for Defendant Banks and the responding deputies may contain relevant information.  For

2  example, performance evaluations (including appraisals, reviews, evaluations, and

3  commendation letters) are relevant to the extent they relate to law enforcement procedures and

4  tactics, knowledge of policies and procedures, arrest and use of force issues, racial discrimination

5  or profiling issues, and any of the issues asserted by Plaintiff in this litigation.  See Soto, 162

6  F.R.D. at 615 (noting that performance evaluations "may be quite relevant to issues involved in

7  Plaintiff's excessive force claim, because such documents may reveal the defendant officers'

8  patterns of behavior, as well as the City's response to such behavior."); Fisher, 2010 WL

9  4917066, at *3 (finding relevant "performance evaluations that relate to judgment, law

10  enforcement and corrections procedures, enforcement tactics, and knowledge of policies and

11  procedures," as well as arrest and use of force training); see also Hampton, 147 F.R.D. 229

12  (finding that internal personnel files of the non-party officers who were at the scene during the

13  alleged use of excessive force, were relevant to issues of city's hiring, training, supervision, and

14  control policies, and to the non-party officers' credibility and willingness to intercede).  The Court

15  also finds that duty assignments are relevant.

16        Turning to the requested "psychological, psychiatric, or other mental records," Plaintiff

17  argues in a footnote that the records are relevant because "had Deputy Banks and other deputies

18  been properly screened, they would have been identified as not fit for employment by the

19  Department."  Joint Stmt. at 13 n.5.  Defendants do not address this argument in either the

20  Joint Statement or their opposition.

21        Courts have found records of mental and psychological evaluations to be relevant to

22  plaintiff's Monell claims against a city police department and to claims against individual officer-

1   defendants, reasoning that claims in such cases may require an evaluation of the officers'

2   subjective state of mind.  See Soto, 162 F.R.D. at 618 (citing Miller, 141 F.R.D. at 296; Mueller

3   v. Walker, 124 F.R.D. 654, 659 (D. Or. 1989) (holding that plaintiff was entitled to discovery of

4   documents concerning psychological or psychiatric referral, evaluation, or treatment of officers

5   regarding past incidents of violence or the incident at issue in a civil rights action against police

6   chief and police officers alleging excessive force during arrest)).  In Soto, the court found that

7   records of officers' mental or psychological conditions were relevant to plaintiff's excessive force

8   claims to the extent they "concern[ed] the incident at issue, prior episodes of violence, or the

9   officers' propensity for violence of the type alleged in the complaint."  Soto, 162 F.R.D. at 618.

10  Here, the Court finds that the requested psychological, psychiatric, or other mental records of

11  Defendant Banks and the other four deputies may be relevant to Plaintiff's claims to the extent

12  they concern the incident at issue or any prior incidents of excessive force, racial discrimination,

13  false arrest and false imprisonment.  See Miller, 141 F.R.D. at 296; Mueller, 124 F.R.D. at 659;

14  Soto, 162 F.R.D. at 618.  However, given the very personal nature of the documents, the Court

15  orders Defendants to produce any responsive psychological, psychiatric or other mental records

16  to the Court for an *in camera* review.

17  **IV.    Privacy**

18      Defendants assert that the withheld documents in the Internal Affairs and Personnel files

19  are subject to privacy protections.  See Oppo. at 3, 7-8.  In support, Defendants argue that the

20  Internal Affairs files have been reviewed by Lieutenant Duckworth who has attested that the

21  documents contain private information of complaining citizens, victims, and witnesses, none of

22  whom consented to the release of the information.  Id. at 7; Duckworth Decl. at 8.  Defendants

34

further claim that Personnel files contain private information of the deputies, their friends, family members and employers, and that disclosure of the withheld documents would jeopardize the safety of the officers and their families.  See Oppo. at 7-8; Duckworth Decl. at 8-11; Ray Decl. at 15.

Plaintiff maintains that claims concerning police officers' privacy interests are closely scrutinized when the documents at issue relate to the officers' work with the police department. Reply at 8 (citing Watson, 2008 WL 1925257, at *2; Soto, 162 F.R.D. at 616 (suggesting that internal investigation files are not protected by the right of privacy when documents "related simply to the officers' work as police officers")).  Plaintiff further asserts that the parties' protective order and appropriate redaction of sensitive personal information will alleviate any safety concerns with respect to the officers and their families.  Reply at 9.

Federal courts recognize a constitutionally-based right of privacy that may be asserted in response to discovery requests.  Soto, 162 F.R.D. at 616; Medina, 2014 WL 4793026, at *4.  In resolving privacy objections, courts balance the need for the requested information against the asserted privacy right.  Id.  "In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential."  Soto, 162 F.R.D. at 616; Kelly, 114 F.R.D. at 660.  "However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments."  Soto, 162 F.R.D. at 616.  "Current case law suggests the privacy interests police officers have in their personnel files do not outweigh plaintiff's interests in civil rights cases."  Dowell, 275 F.R.D. at 617 (citing Soto, 162 F.R.D. at 617; Hampton, 147 F.R.D. at 230; Miller, 141 F.R.D. at 301).  Further, privacy

1    rights could be adequately protected by a "tightly drawn" protective order.  See Kelly, 114 F.R.D.

2    at 662, 666, 671; Hampton, 147 F.R.D. at 231.

3        Initially, once again, the Court notes that Defendants do not describe or attempt to

4    address the specific information contained in the Internal Affairs and Personnel files that is

5    subject to privacy protections.  See Oppo. at 7-8.  Defendants also do not conduct any type of

6    balancing analysis and do not provide any facts to enable the Court to conduct the required

7    analysis.  Id.  Rather, Defendants merely provide conclusory statements that the files "are

8    replete with private information" and "contain private information."  See id. at 8.  This is

9    insufficient to establish the applicability of the privacy protection or to enable the Court to

10   conduct the required balancing analysis.

11       To the extent Defendants rely on California privilege law, the Court will not apply

12   California statutory privileges to Plaintiff's federal claims.  See Miller, 141 F.R.D. at 299 (finding

13   California rules for discovery and privileges to be "fundamentally inconsistent" with federal law

14   and the liberal federal policy on discovery); Medina, 2014 WL 4793026, at *7 (refusing to apply

15   California privilege law in a discovery dispute in 42 U.S.C. § 1983 case); Fisher, 2010 WL

16   4917066, at *4 (same).  Utilizing the federal, constitutionally-based right of privacy, the Court

17   finds that the privacy interests at stake could be adequately protected by the parties' protective

18   order and the redaction of any highly personal information.  See Soto, 162 F.R.D. at 616 (stating

19   that "[a] carefully drafted protective order could minimize the impact of . . . disclosure"); Medina

20   2014 WL 4793026, at *7 (finding that defendants' privacy concerns would be protected by a

21   protective order).  The Court also finds that Plaintiff's need for discovery in this case outweighs

22   the asserted privacy interests with respect to the relevant Internal Affairs and Personnel files.

Documents related to other incidents of excessive force, racial discrimination, false arrest and false imprisonment, and discipline related to such incidents, as well as performance evaluations and relevant training records, may lead to valuable motive, intent, pattern, or credibility evidence, which Plaintiff cannot obtain through alternative means.   See Fisher, 2010 WL 4917066, at *6-7.

Further, "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." Jaffee v. Redmond, 518 U.S. 1, 15 (1996).  However, the privilege applies only when the results of the evaluations were not disclosed to third parties. See Medina, 2014 WL 4793026, at *9 (citing Phelps v. Coy, 194 F.R.D. 606, 608 & n.2 (S.D. Ohio 2000) (finding that the psychotherapist-patient privilege did not protect information learned by a psychologist where she evaluated the defendant police officer at his municipal employer's request and provided the results of the evaluations to the employer in a 42 U.S.C. § 1983 suit against the officer); Kamper v. Gray, 182 F.R.D. 597, 599 (E.D. Mo. 1998) (finding that the psychotherapist-patient privilege did not apply to reports, notes, test scores, and other documents resulting from county police officers' counseling sessions with mental health professionals where county required officers to undergo psychological evaluations as part of their employment, and where the results of the evaluation were subsequently submitted to the employer)); Siegfried v. City of Easton, 146 F.R.D. 98, 101 (E.D. Pa. 1992) (holding that psychiatric records of a police officer were discoverable where the examination was required as part of the hiring process).  The privacy interest in medical records is "conditional, and a limited impairment of the right may be allowed if properly justified." Soto, 162 F.R.D. at 618-19 (citation

37

1   omitted).  "The state's interest must be balanced against the patient's right to maintain private

2   medical records."  Id. at 619 (citation omitted).

3        In this case, the requested psychological, psychiatric, or other mental records may have

4   been created in the course of the deputies' employment with the County and may be included

5   in the Personnel files.  See Ray Decl. at 16.  If the records were disclosed to their employer, a

6   third party, the deputies had no expectation of confidentiality with respect to those records.  See

7   Medina, 2014 WL 4793026, at *9 (reasoning that because the deputies' fitness for duty and

8   return to work records were shared with their employer, a third party, the deputies had no

9   expectation of confidentiality, and requiring the production of such records); Doe v. The City of

10  San Diego, 12cv689-MMA (DHB), at *28 (S.D. Cal. March 29, 2013) (requiring the production of

11  mental or psychological records of defendant officer concerning the incident at issue and prior

12  indents of misconduct or defendant officer's propensity for misconduct "of the type alleged" in

13  plaintiff's complaint for an in camera review).

14  **V.    Redaction**

15       Defendants ask the Court, in case it orders the production of the withheld documents, to

16  redact "all personal information regarding the deputy, spouse and children[,] such as their social

17  security, driver's license number, address, etc."  See Duckworth Decl. at 12; see also Ray Decl.

18  at 18.  Defendants also ask that "disclosure order relative to any citizen complaint be limited to

19  the identity and location of the citizen complaint and any witnesses."  Ray Decl. at 18.  Plaintiff

20  argues that appropriate redactions of sensitive personal information will alleviate any safety

21  concerns with respect to the officers and their families.  Reply at 9.

22

The Court **GRANTS** Defendants' request to redact all personal information regarding the Deputies including personal information of the Deputies, complainants and witnesses, including spouse and children names, dates of birth, social security numbers, driver's license numbers, vehicle license plate numbers, telephone numbers, and addresses, but **not** the names of witnesses, complainants, and officers.  See Newell v. Cnty. of San Diego, 12cv1696-GPC (BLM), at *10 (S.D. Cal. Apr. 8, 2013).

**CONCLUSION**

Plaintiff's request for documents is **GRANTED IN PART** and **DENIED IN PART** as follows:

On or before **May 11, 2016**, the County is **ORDERED** to produce to Plaintiff, subject to the Court's Protective Order and with the appropriate redactions outlined above in Section V, the following withheld documents:

- All Claims Investigation files;

- All Internal Affairs files regarding any complaints of or investigations into incidents involving allegations of excessive force, racial discrimination, false arrest, or false imprisonment by Defendant Banks;

- Because Defendants' pleadings indicate that the requested Internal Affairs records exist for Deputies Ertz and Allison [see Oppo. at 2 (referencing CSD-000207, 221-36, 251-429); Duckworth Decl. at 10], all Internal Affairs files containing allegations of excessive force, racial discrimination, false arrest, or false imprisonment by Deputies Ertz and Allison;

- All documents contained within the Personnel or background files of Deputies Banks, Ertz, Brumfield, Bushnell, and Allison, which contain information regarding deputies' fitness for duty, knowledge of or compliance with policies and procedures, false arrest and use of force issues, racial discrimination and profiling issues, including but not limited to duty assignments and performance evaluations.

On or before **May 11, 2016**, the County shall lodge with the Court for an *in camera* review any psychological, psychiatric, or other mental records of Deputies Banks, Ertz, Brumfield, Bushnell, and Allison.

**IT IS SO ORDERED.**

Dated:  5/4/2016

Hon. Barbara L. Major
United States Magistrate Judge

15cv1985-BEN (BLM)