1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11   MICKAIL MYLES,                         Case No.:  15cv1985-BEN (BLM)

12                          Plaintiff,       **ORDER DENYING PLAINTIFF'S
                                             MOTION TO TAKE DISCOVERY AFTER
13   v.                                      THE CUTOFF AND TO COMPEL
                                             DEPOSITIONS OF SAN DIEGO COUNTY
14   COUNTY OF SAN DIEGO, et al.,            SHERIFF WILLIAM GORE AND SAN
                                             DIEGO COUNTY SHERIFF'S
15                          Defendants.      DEPARTMENT CHIEF LEGAL ADVISOR
                                             ROBERT FAIGIN AND PRODUCTION OF
16                                           ADDITIONAL DOCUMENTS**

17                                           **[ECF No. 31]**

18

19         Currently before the Court is Plaintiff's July 19, 2016 "Motion to Take Discovery After the

20   Cutoff and to Compel Depositions of San Diego County Sheriff William Gore and San Diego

21   County Sheriff's Department Chief Legal Advisor Robert Faigin and Production of Additional

22   Documents" [ECF No. 31 ("MTC")], Defendants' August 2, 2016 opposition to the motion [ECF

1

No. 33 ("Oppo.")], and Plaintiff's August 5, 2016 reply [ECF No. 34 ("Reply")].   Having considered the briefing submitted by the parties and having reviewed all of the supporting exhibits, the Court **DENIES** Plaintiff's motion for the reasons set forth below.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 4, 2015, Plaintiff Mickail Myles filed a complaint against the County of San Diego and Deputy Jeremy Banks, employed by the San Diego County Sheriff's Department, alleging assault, battery, false arrest, false imprisonment, negligence, intentional infliction of emotional distress, violation of California Civil Code §§ 51.7 & 52.1, and violation of civil rights pursuant to 42 U.S.C. §§ 1983, 1985(2)-(3), 1986.   ECF No. 1.   Plaintiff alleges that he was "unlawfully profiled, stopped, detained, hand-cuffed, assaulted, battered, beaten, bitten, berated, defamed, falsely arrested, falsely imprisoned, cited and threatened to be charged with crimes he did not commit, by armed, uniformed, on-duty law enforcement officers, solely because he was a black man driving his own car to his family home in a predominately white neighborhood in Fallbrook, California."   Id. at 2.   Specifically, Plaintiff alleges that on September 5, 2014, he was driving his younger brother home from a local indoor roller-rink and, about a block from his home, noticed a police car with activated emergency lights behind his car.   Id. at 8-9.   Plaintiff claims that he pulled his car over to the curb, waited for an officer to approach his driver's side window with instructions, and when no officer approached, rolled down his driver's side window.   Id. at 9.   Plaintiff states that he then heard a "cacophony of voices coming from the area behind his vehicle screaming at him and making numerous confusing and inconsistent demands," as well as "barking, growling and snarling" from a police dog.   Id.   Plaintiff maintains that he attempted to comply with the officers' commands by opening

2

1   his driver's side door, exiting the car, raising his hands above his head, facing away, and walking

2   backward toward the officers, before he was hand-cuffed.  Id.  Plaintiff asserts that although he

3   was "hand-cuffed, unarmed, passive and completely non-threatening toward the officers," the

4   officers "beat[] him about the head with a club" and commanded their dog to attack him.  Id.

5   Plaintiff asserts, *inter alia*, that Defendants were negligent in their hiring and screening practices,

6   failed to supervise, investigate or discipline for wrongdoing, engaged in "cover-up" of police

7   misconduct, and adhered to a "code of silence."  Id. at 4-8.  Plaintiff further claims that prior to

8   the incident at issue, Defendants had "engaged in the same or similar conduct [as alleged in

9   Plaintiff's complaint] with respect to other minority members of the general public."  Id. at 12.

10          On May 4, 2016, the Court granted in part and denied in part Plaintiff's motion to compel

11   the production of police records held by Defendant County of San Diego.  ECF No. 24.  The

12   Court ordered the production of various categories of documents concerning Defendant Deputy

13   Banks and four non-party deputies who were present at the scene during Plaintiff's incident.

14   See id.  Following Defendants' production of responsive documents, Plaintiff brought the instant

15   motion seeking to expand the scope of discovery and to extend the discovery cutoff, as well as

16   to depose Sheriff Gore and Sheriff Department's Chief Legal Advisor Faigin.  See MTC.

17                                          **LEGAL STANDARDS**

18          The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

19          Parties may obtain discovery regarding any nonprivileged matter that is relevant
            to any party's claim or defense and proportional to the needs of the case,
            considering the importance of the issues at stake in the action, the amount in
20          controversy, the parties' relative access to relevant information, the parties'
            resources, the importance of the discovery in resolving the issues, and whether
21          the burden or expense of the proposed discovery outweighs its likely benefit.
            Information within this scope of discovery need not be admissible in evidence to
22          be discoverable.

1  Fed. R. Civ. P. 26(b)(1).

2       District courts have broad discretion to determine relevancy for discovery purposes.  See

3  Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  District courts also have broad discretion

4  to limit discovery to prevent its abuse.  See Fed. R. Civ. P. 26(b)(2) (instructing that courts must

5  limit discovery where the party seeking the discovery "has had ample opportunity to obtain the

6  information by discovery in the action" or where the proposed discovery is "unreasonably

7  cumulative or duplicative," "obtain[able] from some other source that is more convenient, less

8  burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

9       A party may request the production of any document within the scope of Rule 26(b).

10  Fed. R. Civ. P. 34(a).  "For each item or category, the response must either state that inspection

11  and related activities will be permitted as requested or state with specificity the grounds for

12  objecting to the request, including the reasons."  Id. at 34(b)(2)(B).  The responding party is

13  responsible for all items in "the responding party's possession, custody, or control."  Id. at

14  34(a)(1).  Actual possession, custody or control is not required.  Rather, "[a] party may be

15  ordered to produce a document in the possession of a non-party entity if that party has a legal

16  right to obtain the document or has control over the entity who is in possession of the

17  document."  Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

18       Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling

19  disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  The party seeking to compel discovery has

20  the burden of establishing that its request satisfies the relevance requirement of Rule 26.  Soto,

21  162 F.R.D. at 610.  Thereafter, the party opposing discovery has the burden of showing that the

22  discovery should be prohibited, and the burden of "clarifying, explaining, and supporting its

4

1   objections." <u>DIRECTV, Inc. v. Trone</u>, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing <u>Blankenship</u>

2   <u>v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir. 1975)).

### DISCUSSION

### I.   <u>Plaintiff's Motion to Compel the Deposition of Sheriff Gore</u>

Plaintiff seeks to depose Sheriff Gore and claims that "Sheriff Gore's public appearance in the media condoning [D]eputy Banks' conduct in the severe use of force against a juvenile, without the benefit of any internal affairs ["IA"] investigation, is consistent with the policy, custom and practice in the Sheriff's Department of covering-up, hiding, excusing, ratifying and, in fact, commending and encouraging the systematic use of excessive force and other abusive police tactics . . . ."  MTC, Declaration of Joseph G. Dicks ("Dicks Decl.") at 5-6; MTC at 18-19. Plaintiff argues that Sheriff Gore's deposition is relevant because it will substantiate his <u>Monell</u> claim[1] against the San Diego County Sheriff's Department and his pending motion to amend to add Sheriff Gore as a defendant.  Dicks Decl. at 6; MTC at 19-20 (citing <u>Chew v. City of Los Angeles</u>, 27 F.3d 1432 (9th Cir. 1994)).

Defendants oppose Plaintiff's motion arguing that Plaintiff's request to depose Sheriff Gore is premature because Sheriff Gore is not a party in this action, and Plaintiff's motion to add Sheriff Gore as a defendant has not yet been adjudicated.  Oppo. at 14-15.  Defendants further claim that Plaintiff already has deposed "persons most qualified in the areas of Internal Affairs

---

[1] A municipality can be sued for constitutional violations under 42 U.S.C. § 1983 if the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 694 (1978).

investigations/policies, claims/command investigations and policies, use of force policies, use of K-9s (policies and training) and personnel files," "all officers on scene in the subject incident, including Deputy Banks," and has obtained all "IA investigations involving the five on-scene officers and Deputy Banks' personnel file." Id. at 14.  Defendants also argue that the June 13, 2015 incident regarding which Sheriff Gore held a press conference is unrelated because it occurred nine months after the incident at issue in this case and involved different circumstances.[2] Id. at 15.

Plaintiff replies that after he obtained "the evidence that Gore was ratifying, encouraging, condoning and commending his deputies' conduct without the benefit of a single internal affairs investigation," he had proof that Sheriff Gore was a "moving force behind the policies, procedures and practices," thereby justifying the deposition.  Reply at 7 (emphasis omitted). Plaintiff objects to any restrictions on the scope of the requested deposition arguing that they would prevent questioning about Sheriff Gore's understanding and implementation of policies and procedures at issue in this case.  Id. at 8.  Plaintiff asserts that in light of his Monell claim and his "potential" claim against Sheriff Gore individually, he is entitled to discover evidence of a supervisor's participation that "may involve the setting in motion of acts which cause others to inflict constitutional injury." Id. (citation omitted).

"Courts have often observed that discovery seeking the deposition of high-level executives (so-called 'apex' depositions) creates 'a tremendous potential for abuse or

---

[2]   Defendants explain that during the June 13, 2015 incident Deputy Banks was bitten by a juvenile resisting detention, whereas in this case, Plaintiff was bitten by Deputy Banks' K-9.  Id. at 15.

6

harassment' that may require the court's intervention for the witness's protection under Rule 26(c)." K.C.R. v. Cty. of Los Angeles, 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014) (quoting Apple, Inc. v. Samsung Elecs. Co., Ltd., 282 F.R.D. 259, 263 (N.D. Cal. 2012)).  In order to avoid an apex deposition, the individual must first show that he or she is sufficiently high-ranking to merit protection.  If the witness is able to do so, the party seeking to depose the official must "show (1) the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that cannot reasonably be obtained from other sources; (3) the testimony is essential to the case at hand; (4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and (5) the evidence sought is not available through less burdensome means or alternative sources." Thomas v. Cate, 2010 WL 1343789, at *1 (E.D. Cal. Apr. 5, 2010).  The apex doctrine does not protect high-ranking officials from all depositions.  K.C.R., 2014 WL 3434257, at *3.  "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." Id. (citing Apple Inc., 282 F.R.D. at 263).  If, however, the official is "removed from the daily subjects of the litigation, [and] has no unique personal knowledge of the facts at issue, a deposition of the official is improper." Id. at *4 (quoting Celerity, Inc. v. Ultra Clean Holding, Inc., 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007)).  Courts also generally do not permit depositions of high ranking officials to occur before the depositions of lower ranking employees with more direct knowledge of the case have been taken.  Id.

1    Plaintiff acknowledges that Sheriff Gore is the San Diego Sheriff's Department's chief

2    policy maker and highest ranking government officer.  See MTC at 19.  As such, the Court finds

3    that Sheriff Gore is a high-ranking government official.  See Jarbo v. County of Orange, 2010

4    WL 3584440, at *2 (C.D. Cal. Aug. 30, 2010) (finding that the Sheriff of Orange County was a

5    high-ranking government official not subject to deposition absent extraordinary circumstances);

6    Holguin v. County of Los Angeles, 2011 WL 7128640, at *3-4 (C.D. Cal. Oct. 12, 2011) (finding

7    that the Sheriff of Los Angeles County was a high-ranking official not subject to deposition

8    absent extraordinary circumstances).  Because Sheriff Gore is a high-ranking government

9    official, the burden switches to Plaintiff to demonstrate the need for Mr. Gore's testimony.

10   Thomas, 2010 WL 1343789, at *1.  Plaintiff does not carry his burden.

11   Initially, the Court notes that Sheriff Gore is not a named defendant and the fact that

12   Plaintiff is seeking leave to amend his complaint to add Sheriff Gore as a named defendant does

13   not justify the deposition.[3]  Plaintiff does not assert that Sheriff Gore was present for or

14   participated in the conduct underlying the conduct in this case.  Plaintiff also does not identify

15   the specific information that can only be obtained from Sheriff Gore.  Rather, Plaintiff relies on

16   an expert opinion to argue that he should be able to depose Sheriff Gore because he is the chief

17

18
_____

19   [3] Plaintiff relies on Chew, 27 F.3d 1432, to argue that it is not unusual to depose a department
     head.  MTC at 20.  In Chew, Plaintiff brought a § 1983 action against the City of Los Angeles,
20   Police Chief Gates, police officers who trained the canine unit, and the supervisors of the canine
     unit, alleging that the release of the police dog that assaulted plaintiff violated his constitutional
     rights.  Chew, 27 F.3d at 1435-36.  In Chew, Chief Gates was named as a defendant, whereas
21   in this case, Sheriff Gore has not been named as a defendant.  Id. at 1435.  As such, at this
     stage of the proceedings, Plaintiff's reliance on Chew to support his motion to compel Sheriff
22   Gore's deposition is unavailing.

8

policy maker and Plaintiff seeks to depose Sheriff Gore regarding the San Diego County Sheriff's Department's practices concerning the training, supervision, review, investigation and discipline for "violations of policy and law relating to use of force, including racially discriminatory use of force against ethnic minorities." See MTC at 18-20; id., Expert Report of Jeffrey J. Noble ("Noble Rpt.") at 6-8.  However, Plaintiff has not provided any evidence establishing that Sheriff Gore has "unique first-hand, non-repetitive knowledge" of the San Diego County Sheriff's Department's policies and practices.  See K.C.R., 2014 WL 3434257, at *3.  Plaintiff already has deposed the "persons most qualified in the areas of Internal Affairs investigations/policies, claims/command investigations and policies, use of force policies, use of K-9s (policies and training), and personnel files." See Oppo. at 14.   Plaintiff also has deposed Deputy Banks and all officers on the scene during Plaintiff's incident, and has obtained all "IA investigations involving the five on-scene officers and Deputy Banks' personnel files." Id.   Additionally, according to Plaintiff's own assertions, the evidence he already has obtained during the course of discovery "establishes the County's liability for its willful failure to property investigate allegations of officer misconduct," and Sheriff Gore's deposition will only "buttress and support the highly revealing discovery obtained to date." MTC at 19.

The only specific action taken by Sheriff Gore identified by Plaintiff as justifying the requested deposition is the press conference held by Sheriff Gore many months after Plaintiff's incident.  See id. at 15; Oppo. at 14.  On June 13, 2015, Deputy Banks was on patrol and encountered a minor who was reported as a "runaway." MTC at 15.  According to Plaintiff, during the encounter, Defendant Banks struck, pushed, pulled, and tased the minor, and attempted to apply a "carotid sleeper." Id.  Within two days of the incident, Sheriff Gore held a

9

1   press conference during which he discussed Banks' actions, responded to questions about the

2   incident, and displayed photos of the injuries Banks suffered during the incident.  See id.; Oppo.

3   at 11; see also MTC, Exh. J.  Defendants argue that this incident is different because Deputy

4   Banks was bitten by the juvenile who was resisting arrest and the fact that Sheriff Gore spoke

5   about the incident at a press conference does not justify his deposition in this case.  Oppo. at

6   15.   The Court agrees with Defendants.  The fact that Sheriff Gore spoke at a press conference

7   addressing a different incident that occurred many months after the incident in this case, even

8   considering the fact that Deputy Banks was involved in both incidents, does not justify deposing

9   Sheriff Gore in this case.

10       The Court finds that at this stage of the proceedings, Plaintiff has not established that

11   Sheriff Gore's testimony "is necessary to obtain relevant information that is not available from

12   another source" and is "essential to the case at hand," or that Sheriff Gore "has first-hand

13   information that cannot reasonably be obtained from other sources."  See Thomas, 2010 WL

14   1343789, at *1.  Because Sheriff Gore is a high-ranking official who is not a named defendant

15   in this action and to whom the apex doctrine applies, and because Plaintiff has not established

16   the requisite need for Sheriff Gore's testimony, the Court **DENIES WITHOUT PREJUDICE**

17   Plaintiff's motion to compel Sheriff Gore's deposition.  See Holguin, 2011 WL 7128640, at *3-4

18   (barring plaintiff from deposing the Sheriff of Los Angeles County, where plaintiff's complaint

19   alleged a Monell claim against the County for the Sheriff's Department's use of force, its internal

20   procedures for investigating use of force incidents, and its lack of discipline of officers).

21   ///

22   ///

10

15cv1985-BEN (BLM)

1

## II.    <u>Plaintiff's Motion to Compel the Deposition of Robert Faigin</u>

2          Plaintiff seeks to depose Robert Faigin, the Sheriff Department's Chief Legal Advisor.  MTC

3    at 20-21.  In support, Plaintiff alleges that Defendants' discovery responses were misleading and

4    the document production was incomplete, and that Mr. Faigin verified all of the discovery

5    responses under the penalty of perjury.  <u>Id.</u>  Plaintiff argues that he is entitled to depose Mr.

6    Faigin as the person responsible for assuring the accuracy and completeness of the discovery

7    responses, privilege log and produced documents.  <u>Id.</u> at 20-21.  Plaintiff also argues that

8    Defendants may not assert any privilege based on Mr. Faigin's title or position, because Mr.

9    Faigin waived any alleged privilege as the "verifier of the truth" of the Sheriff Department's

10   discovery responses.  <u>Id.</u> at 21.

11         Defendants oppose Plaintiff's motion arguing that Fed. R. Civ. P. 34 does not require a

12   verification and that Plaintiff is thus mistaken that Mr. Faigin "verified document requests."

13   Oppo. at 15-16.  Defendants further assert that Plaintiff has not alleged what specific discovery

14   responses were misleading, and claim that Plaintiff's request is meant to harass and discover

15   confidential attorney-client communications.  <u>Id.</u> at 16.  Defendants also contend that Mr. Faigin

16   explains in his declaration what he does when asked to verify interrogatories, and thereby

17   provides sufficient detailed information to negate any need for a deposition.  <u>Id.</u>

18         In his reply, Plaintiff admits that the responses to requests for documents were not

19   verified and were not required to be verified, but argues that Mr. Faigin verified interrogatories

20   and stated under the penalty of perjury that the relevant and responsive documents were

21   identified in the privilege log served with Defendants' discovery responses.  Reply at 9.  Plaintiff

22   asserts that Mr. Faigin attested to the accuracy and completeness of the privilege log, which

1    Plaintiff contends is "a critical misrepresentation, whether intentional or not." <u>Id.</u> (emphasis

2    omitted).  Plaintiff thus claims that he is entitled to question Mr. Faigin regarding the search for

3    and the production of relevant responsive documents. <u>Id.</u> at 9-10.

4          An attorney's signature on a disclosure document constitutes a certification that to the

5    best of the attorney's knowledge and belief formed after a reasonable inquiry the disclosures

6    are correct and complete as of the date signed.  <u>See</u> Fed. R. Civ. P. 26(g)(1)(A) ("[b]y signing,

7    an attorney or party certifies that to the best of the person's knowledge, information, and belief

8    formed after a reasonable inquiry . . . with respect to a disclosure, it is complete and correct as

9    of the time it is made.").  The production of documents under Fed. R. Civ. P. 34 "does not

10   require verification in the same manner that interrogatory responses do" because documents

11   "produced under Rule 34 are subject only to the general signature requirement in Rule 26(g)."

12   <u>Kas v. Mercedes-Benz USA, LLC</u>, 2012 WL 473931, at *3 (C.D. Cal. Feb. 1, 2012).  A party has

13   a continuing duty to supplement or correct its disclosure or response upon learning that "in

14   some material respect the disclosure or response is incomplete or incorrect, and if the additional

15   or corrective information has not otherwise been made known to the other parties during the

16   discovery process or in writing." <u>See</u> Fed. R. Civ. P. 26(e)(1)(A); <u>see also</u> <u>Rodriguez v. IBP, Inc.</u>,

17   243 F.3d 1221, 1229 (10th Cir. 2001) (a party is under a continuing duty to supplement

18   incomplete information disclosed in interrogatories).

19         Here, after the Court issued its May 4, 2016 order granting in part and denying in part

20   Plaintiff's motion to compel [ECF No. 24], Defendants produced additional documents responsive

21   to the Court's Order. <u>See</u> Dicks Decl. at 4-5.  Plaintiff does not set forth any evidence indicating

22   that Defendants intentionally withheld relevant documents after the Court determined the scope

1  of permissible discovery in this case or that Defendants' initial responses were intentionally

2  misleading.  Defendants, on the other hand, have provided a declaration indicating that they did

3  not deliberately withhold the requested documents.  See Oppo., Declaration of George Brewster

4  ("Brewster Decl.") at 2-3 (stating that "[t]here was no deliberate or intentional withholding of

5  the [requested] documents," and that Defendants supplemented document production after

6  discovering that there were additional responsive documents that had not been produced).  In

7  addition, Mr. Faigin submitted a declaration in support of Defendants' opposition to Plaintiff's

8  motion detailing the procedure he follows in responding to discovery requests.  See Oppo.,

9  Declaration of Robert Faigin ("Faigin Decl.").

10         Mr. Faigin declares that he is a Special Assistant to San Diego County Sheriff Gore, serves

11  as the Chief Legal Advisor for the San Diego County Sheriff's Department, and oversees the

12  Department's Legal Affairs Unit that serves as the Department's liaison with the Office of County

13  Counsel.  Id. at 1-2.  The Legal Affairs Unit receives requests for admissions, interrogatories,

14  and requests for production of documents from the Office of County Counsel and forwards the

15  requests to a particular bureau, unit or person to "conduct a reasonable investigation for

16  responsive documents and answers."  Id. at 2.  Each individual bureau, unit, or person is

17  responsible for providing correct documents and answers to the Legal Affairs Unit, which are

18  then copied and forwarded to the Office of County Counsel.  Id. at 3.  The County Counsel drafts

19  pleadings and responses based on the discovery provided by department staff and forwards

20  them to the Legal Affairs Unit for review.  Id. Mr. Faigin reviews the responsive pleadings "in

21  conjunction with the information provided by Department staff, to ensure that they contain the

22  information provided to the Office of County Counsel, and that they are accurate based on the

15cv1985-BEN (BLM)

1  information that [he] ha[s] been previously provided." Id.  Once Mr. Faigin "ha[s] reviewed the

2  draft response and [is] satisfied as to the accuracy of the answers, [he] attest[s] to the truth of

3  the interrogatory responses on behalf of the Department by completing a verification under

4  penalty of perjury."  Id.   As such, Mr. Faigin's declaration provides specific and detailed

5  description of his role in the San Diego Sheriff's Department and the process within the

6  Department of formulating discovery responses, including the process of verifying interrogatory

7  responses.

8       Despite Plaintiff's allegations, the evidence establishes that Defendants are complying

9  with the federal rules by providing written responses and responsive documents, including

10  privilege logs, and supplementing those items when additional information is discovered or

11  required to be produced by the Court.  Additionally, as noted above, Plaintiff has conducted

12  numerous depositions of the individuals who have first-hand knowledge of the pertinent facts in

13  this case.  In light of the above, the Court **DENIES** Plaintiff's request to compel the deposition

14  of Mr. Faigin.  See Miller v. United States, 203 F. App'x 577, 579 n.2 (5th Cir. 2006) (finding that

15  the district court did not abuse its discretion when it denied plaintiff's request to depose an Air

16  Force attorney who signed answers to interrogatories, reasoning that the "attorney was not a

17  fact witness; he was an Air Force attorney charged with the duty of collecting information

18  regarding this lawsuit because it was more efficient for one person to perform this task," and

19  that the plaintiff "had ample opportunity to discover facts from other available witnesses who

20  had knowledge of the pertinent circumstances.").

21  ///

22  ///

1       ### III.   <u>Motion to Compel Production of Additional Documents</u>

2       Months after the close of fact discovery [<u>see</u> ECF No. 10], Plaintiff asks the Court to

3       extend the fact discovery cutoff and to expand the scope of discovery "into the nature and

4       extent of the Sheriff Department's failure and refusal to properly investigate and review claims

5       of misconduct by its sworn officers."  MTC at 21-23.  Specifically, Plaintiff seeks the following

6       categories of documents from September 5, 2009 through the present: (1) "[a]ll Use of Force

7       reports," (2) "[a]ll Internal Affairs investigations," (3) "[a]ll disciplinary actions within the

8       department," and (4) "[a]ll allegations of dishonesty, all investigations into allegations of

9       dishonesty, all disciplinary actions relating to deputy dishonesty, and all *Brady* lists identifying

10      dishonest deputies."  <u>Id.</u> at 22-23.  In support, Plaintiff alleges that he learned from Defendants'

11      recent document production, as well as through his own investigation, about five instances

12      where Deputy Banks used excessive force and where the Sheriff's Department did not conduct

13      any IA reviews and investigations.  <u>Id.</u> at 21-22.  Plaintiff claims that the incidents point to the

14      Sheriff's Department's "pattern and practice" of hiding, concealing and enforcing the "code of

15      silence" that protects officers from scrutiny or discipline.  <u>Id.</u> at 22.

16      Defendants respond that Plaintiff's requests for the information concerning every deputy

17      in the San Diego Sheriff's Department for a seven-year period are not proportional to the case

18      and seek irrelevant information.  Oppo. at 6-14, 19; <u>id.</u>, Declaration of Jeffrey Duckworth

19      ("Duckworth Decl.") at 3.  In support, Defendants maintain that responding to Plaintiff's requests

20      will require at least 2,700 hours at a cost exceeding $325,000.  Oppo. at 8; <u>see also</u> Brewster

21      Decl. at 3-5.  Defendants also assert that the requests seek numerous irrelevant documents,

22      such as, for example, IA investigations, which concluded that there was no misconduct, and

15

1   documents concerning the conduct of deputies under different circumstances.[4]  Id. at 10 (citing

2   id., Exh. 2, Deposition of Jeffrey Duckworth at 11-12).  With respect to the use of force reports,

3   Defendants claim that there are many types of force employed by officers, such as "hands on

4   control, intermediate weapons, chemical agents or the pointing of a firearm."  Id. at 11 (citing

5   Duckworth Decl. at 2-3).  Defendants also maintain that Plaintiff's requests for disciplinary

6   records will include records about deputies who were reviewed for possible discipline for

7   unrelated actions, such as handling neighbor disputes, overseeing vehicle tows, and chasing

8   feeing felons.  Id. at 13.  Defendants further allege that the Sheriff's Department does not

9   maintain a "Brady List" identifying dishonest deputies.  Id. at 12; Faigin Decl. at 3.  Defendants

10   thus argue that  that the burden and cost of producing the requested records far outweigh any

11   potential benefit to Plaintiff's case.  Id. at 13-14.

12        Plaintiff replies that this case is centered on the allegations that the Sheriff's Department

13   is operating under policies, procedures, customs and practices which encourage, cause, approve

14   and ratify constitutional violations against Plaintiff and others similarly situated.  Reply at 10.

15   Plaintiff asserts that in light of his claims and interests of "making real structural, systemic and

16   lasting changes" to the Sheriff's Department, Defendants' assertion of "burden" and "expense"

17   carry little weight.  Id. at 11.  Plaintiff thus claims that he must be allowed access to the

18   requested records.  Id. at 13.

19

20

21   _____

22   [4]   Defendants explain that such circumstances include "varying locations, types of crime
investigated, times of day or night, officer safety issues, public safety issues, known suspects,
fleeing felons, among many other factors an officer faces in each investigation."  Id. at 10.

16

15cv1985-BEN (BLM)

1      Defendants already have produced a broad range of documents including the use of force

2   reports for Plaintiff's incident and other incidents involving Deputy Banks, all IA investigations

3   conducted within three-and-a-half years of the incident at issue involving Deputy Banks and the

4   four non-party deputies on the scene during Plaintiff's incident involving allegations of excessive

5   force, racial discrimination, false arrest and false imprisonment, and the personnel files for all

6   five deputies, including information regarding fitness for duty, knowledge of or compliance with

7   policies and procedures, false arrest and use of force issues, racial discrimination and profiling

8   issues, and performance evaluations.  See Brewster Decl. at 2; Oppo. at 8-9, 12.  Defendants

9   also have produced the Sheriff's Department's written procedures, and deposed Lt. Duckworth,

10  whom Defendants identified as the most qualified person to discuss IA Investigations.  Oppo. at

11  8-9; id., Exh. 2, Deposition of Jeffrey Duckworth.

12      Plaintiff now seeks "[a]ll Use of Force reports," "[a]ll Internal Affairs investigations," "[a]ll

13  disciplinary actions within the department," and "[a]ll allegations of dishonesty, all investigations

14  into allegations of dishonesty, all disciplinary actions relating to deputy dishonesty, and all *Brady*

15  lists identifying dishonest deputies" from September 5, 2009 through the present.  MTC at 22-

16  23.  Plaintiff's requests are extremely overbroad, seek irrelevant information, and are not

17  proportional to the needs of the case.  The San Diego Sheriff's Department employs 2,528 sworn

18  personnel, including 1,320 law enforcement sworn personnel.  Duckworth Decl. at 2.  The

19  records for such personnel for a seven-year period will undoubtedly contain a vast amount of

20  irrelevant information and will cost in excess of $325,000 to compile.  See Oppo. at 8; Duckworth

21

22

17

Decl.; Brewster Decl.  Plaintiff makes no effort to tailor his requests to the needs of the case[5], and this Court will not "fashion new discovery requests" where Plaintiff's requests are extremely overbroad and seek irrelevant information.  See Bartolome v. City & Cty. of Honolulu, 2008 WL 2736016, at *1, 14 (D. Haw. July 14, 2008) (declining to "invent a duty for a judge to fashion new discovery requests when the ones presented are overbroad," where plaintiff sued two police officers and the City and County of Honolulu alleging, *inter alia*, that the City failed to train officers on the appropriate use of force and maintained a custom or policy that endorsed the use of excessive force by failing to investigate and discipline officers).  The Court therefore **DENIES** Plaintiff's motion to expand the scope of discovery.  See Fed. R. Civ. P. 26(b)(1) (limiting the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case").  Because the Court denies Plaintiff's motion to expand the scope of discovery, the Court does not find good cause to extend the discovery cutoff and **DENIES** the motion.

## SUMMARY AND CONCLUSION

For the foregoing reasons, the Court:

1) **DENIES WITHOUT PREJUDICE** Plaintiff's motion to compel Sheriff Gore's deposition;

2) **DENIES** Plaintiff's request to compel the deposition of Mr. Faigin; and

///

///

------

[5] The Court finds Plaintiff's failure to tailor his requests particularly vexing since he did not address in his Reply the numerous facts and concerns raised by Defendants and did not include the types of limitations imposed by the Court in its last discovery order.  See ECF No. 24 at 26-33.

1     3)  **DENIES** Plaintiff's motion to expand the scope of discovery and to extend the discovery

2  cutoff.

3      **IT IS SO ORDERED.**

4

5  Dated:  8/15/2016

6                             Hon. Barbara L. Major

7                             United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22