Browne Greene, SBN 38441
GREENE BROILLET & WHEELER, LLP
222 N. Pacific Coast Highway, Suite 2100
P.O. Box 955
El Segundo, California 90245
Telephone: (310) 576-1200
Facsimile: (310) 576-1220
Email:  bgreene@gbw.law

Daniel K. Balaban, SBN 243652
BALABAN & SPIELBERGER, LLP
11999 San Vicente Blvd., Suite 345
Los Angeles, California 90049
Telephone:  (424) 832-7677
Facsimile:  (424) 832-7702
Email:  daniel@dbaslaw.com

Joseph G. Dicks, SBN 127362
Linda G. Workman, SBN 128621
DICKS & WORKMAN ATTORNEYS AT LAW, APC
7825 Fay Avenue, Suite 120
La Jolla, California 92037
Telephone: (619) 685-6800
Facsimile: (619) 557-2735
Email:  jdicks@dicks-workmanlaw.com; lworkman@dicks-workmanlaw.com

Holly N. Boyer (SBN 221788)
Shea S. Murphy (SBN 255554)
ESNER, CHANG & BOYER
234 East Colorado Boulevard, Suite 750
Pasadena, California   91101
Telephone: (626) 535-9860
Facsimile: (626) 535-9859
Email:  hboyer@ecbappeal.com; smurphy@ecbappeal.com

Attorneys for MICKAIL MYLES, Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

---

MEMORANDUM OF POINTS AND
AUTHORITIES

*Myles v. County of San Diego, et al.*
Case No. 15-cv-1985-JAH (BLM)

MICKAIL MYLES, an individual,

      Plaintiff,

v.

COUNTY OF SAN DIEGO, by and through the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, a public entity; and DEPUTY J. BANKS, an individual,

      Defendants.

Case No. 15-cv-1985-JAH (BLM)

**PLAINTIFF MICKAIL MYLES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS FOR DISCOVERY ABUSES AGAINST DEFENDANTS COUNTY OF SAN DIEGO AND JEREMY BANKS**

Date:    July 1, 2022
Time:   10:00 a.m.
Judge:  Hon. John A. Houston
Crtrm:  13B

Complaint Filed: September 4, 2015

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL SUMMARY .......................................................................... 2

III.    DEFENDANTS' HISTORY OF FAILING TO COMPLY WITH
        DISCOVERY REQUESTS……………………………………………....4

        A. EVIDENCE WITHHELD IN THE MYLES CASE…………………..4

        1. First Instance of Defendants' Withholding of Key Evidence…..........…4

        2. Second Instance of Defendants' Withholding of Key Evidence ........... 6

        B. EVIDENCE WITHHELD IN THE K.J.P., et al. v. COUNTY
           OF SAN DIEGO/FISCHER CASE……………………………….....7

        C. EVIDENCE WITHHELD IN THE *HARTSELL v. COUNTY OF SAN
           DIEGO/STROH* CASE ........................................................................ 8

IV.     THE K-9 UNIT DOCUMENTS WITHHELD BY DEFENDANTS
        WHICH PLAINTIFF RECENTY DISCOVERED ................................. 9

        A. K-9 OFFICER TRENT STROH'S PERSONNEL RECORDS
        WITHHELD BY DEFENDANTS ........................................................ 10

        B. K-9 OFFICER TRENT STROH'S CIVIL LITIGATION RECORDS
        WITHHELD BY DEFENDANTS ........................................................ 12

        C. BUBO'S K-9 RECORDS WITHHELD BY DEFENDANTS ........... 12

V.      PLAINTIFF HAS SUFFERED SEVERE PREJUDICE AS A
        CONSEQUENCE OF DEFENDANTS' DISCOVERY ABUSES ......... 15

VI.     CONCLUSION ...................................................................................... 18

# **TABLE OF AUTHORITIES**

Cases

*Hartsell v. County of San Diego/Stroh*,
 USDC Case No. 16-cv-1094-LAB-JMA ............................................3, 8, 10, 13

*K.J.P., et al. v. County of San Diego/Fischer*,
 USDC Case No. 15-cv-02692-H-MDD .......................................................passim

Plaintiff MICKAIL MYLES ("Plaintiff) hereby submits the following Memorandum of Points and Authorities in Support of his Motion for Sanctions for Discovery Abuses Against Defendants COUNTY OF SAN DIEGO and JEREMY BANKS.

## I.    INTRODUCTION

On September 5, 2014, Plaintiff Mickail Myles – a 26-year-old African American pre-school teacher at Camp Pendleton and part-time college student -- was pulled over by four white San Diego County Deputy Sheriffs in the neighborhood where he and his siblings lived with their parents in Fallbrook, California. Despite the fact that he did not match the description of Hispanic youths who neighbors had complained were playing doorbell ditch and possibly tampering with neighborhood vehicles, Plaintiff was arrested at gun point, and while fully restrained and bent over the back of a Sheriff's vehicle, was brutally beaten by Defendant Jeremy Banks and bitten by Deputy Banks' K-9 unit "Bubo."

After timely filing his Complaint in Federal Court in 2015 (including a *Monell* civil rights claim against the County of San Diego, which was ultimately dismissed by The Honorable Roger T. Benitez in the face of Defendants' Rule 12(b) challenge), and thereafter concluding his discovery efforts in 2016 in compliance with the court-imposed discovery cut-off, Plaintiff has just learned that Defendants withheld key evidence that was clearly relevant and directly responsive to several of Plaintiff's 2015 and 2016 discovery requests. In particular, Defendants withheld key evidence of the aggressive propensities of Bubo – propensities which were well-known to Defendants and their counsel, but which were hidden from Plaintiff until his counsel stumbled upon evidence through a recent Google search that led them to discover that Bubo had such significant bite aggression that he and a Deputy handler Trenton Stroh had to

retire after Bubo bit the gun hand of Deputy Stroh during a routine training exercise in 2015.

This is not the first time that the County of San Diego and its counsel have withheld key evidence in this case (nor is it the only case where the County has established a pattern and practice of evidentiary cover up). Now, years after losing his *Monell* claim via summary judgment, and currently in the midst of opposing Defendants' motions *in limine* and making final preparations for his July 26, 2022 jury trial, Defendants' latest instance of withholding key evidence has left Plaintiff severely prejudiced in his ability to bring and to prove up all applicable claims, as well as severely prejudiced in his ability to thoroughly oppose Defendants' defenses, and additionally leads Plaintiff to wonder what other evidence has been hidden from him (and others) by the County of San Diego. One need only examine Defendants' recent *in limine* motions (which were filed by Defendants and briefed by both parties prior to Plaintiff learning about the withheld evidence of Bubo's aggressive tendencies), to observe Defendants' latest attempt to benefit from their cover up practices (as for example, Defendants' motion *in limine* seeking to exclude Police Practices expert Jeffrey Noble from testifying concerning the training of Bubo and Defendants' motion *in limine* seeking to exclude other instances of Bubo's aggression). Plaintiff brings the herein motion for sanctions in an effort to halt Defendants' cover up pattern and practice, as well as to redress the substantial prejudice that has been wrought upon Plaintiff as a result thereof.

## II.   FACTUAL SUMMARY

Defendants, in a concerted effort to deny Plaintiff the ability to prove his claims and causes of action against them, to discover and prosecute new or additional claims against them, and to disprove the defenses raised by them, intentionally, and as part of a well-established pattern and practice of failing to produce documents responsive to timely discovery requests served upon them,

have repeatedly failed to produce key responsive documents in their possession. Defendants' propensity for trial by ambush is not limited to the current case. Rather, as more specifically set forth below, this pattern and practice of discovery misconduct and evidence suppression has metastasized to several recent cases currently pending before at least two other Federal Court Judges in this Judicial District, The Honorable Marilyn Huff, in *K.J.P., et al. v. County of San Diego/Fischer*, 15-cv-02692-H-MDD, and The Honorable Larry Burns, in *Hartsell v. County of San Diego/Stroh*, 16-cv-1094-LAB-JMA.

Plaintiff only became aware in early June 2022 of the fact of Bubo's 2015 bite of handler Deputy Stroh (and the County's cover up of the bite and failure to document the bite) after a recent Google search in advance of mediation led Plaintiff's counsel to attorney Keith Rutman, who represented another victim of Bubo in an action entitled *Hartsell v. County of San Diego*. In prosecuting claims against the County of San Diego, attorney Rutman found out about Bubo's bite of Deputy Stroh when it was casually mentioned before a deposition in the *Hartsell* case. After finding out about Bubo's bite of Stroh, attorney Rutman also found out through a colleague that K-9 Deputy Richard Fischer was a witness to Bubo's aggressive bite tendencies and the County's knowledge thereof. (Unfortunately, in the face of the County's opposition, attorney Rutman and his client were thereafter denied key records and the depositions of key witnesses, like Deputy Fischer, regarding the Stroh bite and other of Bubo's aggressive bite incidents.)

Immediately after learning from attorney Rutman about Bubo's bite of Deputy Stroh, counsel for Mickail Myles brought concerns about this latest instance of discovery abuse and evidence suppression to the attention of County Counsel in an email dated June 3, 2022. (Exhibit A, Email Correspondence with County Counsel.) Defense counsel replied two days later (*see id.*), and in the week thereafter, Defendants released over a thousand pages of discovery (*see*

MEMORANDUM OF POINTS AND AUTHORITIES | -3- | *Myles v. County of San Diego, et al.* Case No. 15-cv-1985-JAH (BLM)

*id*.), which Plaintiff's counsel is still in the process of reviewing, but which notably appear to continue to omit numerous key documents related to Bubo and his bite of Deputy Stroh, and instead appear to be comprised primarily of documents previously disclosed by Defendants relating to issues other than the Stroh bite. In addition, Defendants served yet another privilege log (Exhibit S, Defendants' Second Supplemental Privilege Log) asserting objections that were previously overruled in the Order on Plaintiff's Motion to Compel dated May 4, 2016, Doc. 24.

As a result of this latest instance of discovery abuse, and in the context of Defendants' deeply entrenched pattern and practice of improperly withholding relevant evidence, Plaintiff asks this Court to order sanctions as specific herein. Plaintiff has been severely prejudiced in his ability to seek justice -- prejudice which can never be fully abated, but which needs to be redressed.

## III. DEFENDANTS' HISTORY OF FAILING TO COMPLY WITH DISCOVERY REQUESTS

### A. EVIDENCE WITHHELD IN THE MYLES CASE

#### 1. First Instance of Defendants' Withholding of Key Evidence

Discovery in this case started on a difficult note when Defendants refused to produce the documents identified in their privilege log, including their *claims files concerning the Myles abuse case*, the *officer personnel records*, and the *internal affairs records* concerning the officers involved in the Myles abuse. This forced Plaintiff to file a motion to compel. In what can only be described as a complete and total rebuke of the Defendants' position as to each and every one of its arguments against production, on May 4, 2016, Magistrate Judge Barbara Major rendered a comprehensive, 40-page opinion ordering the production of each and every document identified on Defendants' privilege log. Only the records concerning the officer psychological testing and evaluation were ordered

to be produced to the Magistrate for review, due to their sensitive nature. A copy of that decision is filed herewith as Exhibit Q, Doc. 24, highlighted for the Court's reference and convenience.

As a consequence of the Court's order of May 4, 2016, requiring that the documents be produced by May 11th, the County, on May 6th and 11th, 2016, produced some obviously responsive documents. However, while working on his mediation video for a June 2016 mediation, Plaintiff's legal team identified, through internet searches, several instances of reported abuses by Defendant BANKS, which made it very clear that the County was not being candid in discovery about the existence of other documents and evidence responsive to Plaintiff's discovery requests. In particular, Plaintiff identified:

1. An instance wherein BANKS had used his then K-9 to attack Mr. Hugo Barragan, who was wanted on misdemeanor traffic infractions. The K-9 attack and other uses of force on Mr. Barragan resulted in his death and a homicide investigation. The Barragan incident was never disclosed to Plaintiff and records about it were never produced by the County.

2. An instance wherein BANKS used a taser and choke hold on a 13-year-old child skateboarding illegally behind a supermarket. This incident was videotaped by shocked onlookers and reported on the news. The public outrage resulted in Sheriff Gore giving a news conference defending Banks' conduct despite the fact that only two days had passed and no investigation into BANKS' use of force had taken place. Similar to the Barragan incident, the child tasing/choke hold incident was never disclosed to Plaintiff and records about it (including Gore's videotaped statements) were never produced by the County.

3. Records concerning K-9 Bubo's training, certification and related documents.

-5-   *Myles v. County of San Diego, et al.*
Case No. 15-cv-1985-JAH (BLM)

Defendants had either claimed that these items were previously produced (in the case of the Bubo records) or were previously objected to in response to Plaintiff's special interrogatories. Plaintiff's counsel pointed out in several letters that the County had failed to produce all of the K-9 records and had, in addition, falsely represented that the documents concerning items 1 and 2 above had been identified in its privilege log, which was the subject the Court's May 4, 2016, Order on Motion to Compel.

On May 20, 2016, and June 15, 2016, Plaintiff's counsel, Joseph G. Dicks, called out Defendants' false and misleading discovery responses, demanding that the documents be produced. *See* Exhibits N and O, Dicks' letters to County Counsel, George Brewster and Morris Hill, dated May 20, 2016 and June 15, 2016, respectively. *See also* Exhibit R, September 8, 2016, email to County Counsel and response thereto.

Ultimately, the County produced additional relevant documents. Unfortunately, the delayed production caused Plaintiff, at great additional expense, to re-take the depositions of BANKS, K-9 County PMQ Jacob Pavlenko, Sergeant James Pucillo, Lieutenant Jeffrey Duckworth, Sheriff's Executive Officer Robert Kanaski, and deputy Yancy Majordeleon. It also necessitated having Plaintiff's designated Police Procedures expert, Jeffrey Noble, read and analyze these additional documents and depositions and revise his Rule 26 report. In addition, years later -- specifically, on June 3, 2022 – it became obvious that Defendants *still* had not produced all of the responsive K-9 documents.

## 2. Second Instance of Defendants' Withholding of Key Evidence

Plaintiff's counsel learned in early June 2022 (once again as a result of an internet search conducted by Plaintiff's counsel in preparation of a mediation video) that Defendants had again repeated their pattern of refusing to identify

relevant evidence and produce obviously responsive documents. The withheld evidence that Plaintiff learned about in early June 2022, concerned Bubo's lack of fitness, including Bubo's July 22, 2015 bite of handler Deputy Trent Stroh (evidence which was never disclosed to Plaintiff). (*See* Section IV, below.) After Plaintiff confronted Defendants on June 3, 2022 about their latest instance of discovery abuse and evidence suppression, records dating back over eight years began pouring in on June 5, 2022 and continued on June 9-10, 2022 (most of which appear to be documents previously disclosed by Defendants relating to issues other than the Stroh bite), along with yet another privilege log (asserting objections that were previously overruled in the Order on Plaintiff's Motion to Compel dated May 4, 2016, Doc. 24), confirming once again the County's blatant disregard for the discovery process and the Court's Order of May 4, 2016. *See* Exhibit A, Email Correspondence with County Counsel. The prejudice that this abuse has caused Plaintiff is significant. (*See* Section V, below.)

## B. EVIDENCE WITHHELD IN THE K.J.P., et al. v. COUNTY OF SAN DIEGO/FISCHER CASE

The case entitled *K.J.P. v County of San Diego* (15-cv-02692-H-MDD) Involves the abuse by then Deputy Richard Fischer[1] which resulted in the death of Mr. Lucky Phounsy and an $85,000,000 jury verdict against the County of San Diego. After the first trial culminated in a mistrial, and before the second trial began, Plaintiffs in that case learned that the County had deliberately withheld exculpatory evidence concerning, among other things, the dearth of drugs in Lucky Phounsy's system at the time of his death. In response, Judge Marilyn Huff gave the jury several corrective instructions citing the County's discovery failures. After the verdict in the second trial, counsel for the County (the same team of attorneys representing the Defendants in the Myles case) filed

---

[1] Fischer was fired and convicted for his on-duty misconduct in abusing detainees.

MEMORANDUM OF POINTS AND AUTHORITIES
-7-
*Myles v. County of San Diego, et al.*
Case No. 15-cv-1985-JAH (BLM)

a new trial motion, ***blaming Judge Huff and Plaintiff's counsel for the verdict.*** (*See* Exhibit G, portions of the motion for new trial and corrective instructions.) A similar "blame everyone else" tactic was recently employed in Myles' case. *See* Exhibit T, Order by Judge Houston Denying Defendant's Application for Leave to File Motion to Consider Disputed Jury Instructions, Doc. 165. In addition to the fact that the County suppressed evidence in the *K.J.P.* case similar to its suppression practices in Mickail Myles' case, counsel for Mr. Myles also recently learned that Deputy Fischer is a witness to Bubo's pattern of bite aggression and knowledge thereof by County personnel.

## C. EVIDENCE WITHHELD IN THE *HARTSELL v. COUNTY OF SAN DIEGO/STROH* CASE

The case entitled *Hartsell v. County of San Diego* (16-cv-1094-LAB-LL) involves the alleged misuse by Deputy Stroh of his then K-9 Bubo -- the same K-9 that BANKS used to attack Mickail Myles. While searching the internet for photographs of Bubo, counsel for Myles ran across a decision by Judge Burns in the *Hartsell* case which described Bubo's attack of Hartsell and enabled counsel to identify Hartsell's counsel as Keith Rutman. In the day or two following, not only did counsel for Myles learn from Mr. Rutman that Bubo bit Sheriff handler Deputy Stroh, Plaintiff also learned the identity of witnesses to Bubo's known bite aggression (including Deputy Fischer) and documents (including Deputy Stroh's medical malpractice complaint describing the bite incident), all of which were never disclosed to Myles. Myles' counsel also learned that Hartsell was a fellow victim of the County's wrongful failure to produce responsive documents in discovery regarding the same issue. *See* Exhibit K, Hartsell's motion to re-open discovery.[2] Moreover, a comparison of what Hartsell received in discovery

---

[2] While Hartsell's motion to re-open discovery was unsuccessful, Hartsell (originally a pro per litigant) had failed to plead most of the claims and causes of action Myles has pleaded and that may well have had an effect on the outcome of Hartsell's motion. Hartsell's case is currently on appeal.

regarding Bubo and what Myles has just recently received from Defendants regarding Bubo, reveals that Hartsell's concerns about what he did not receive were justified. Myles now has at least some documents concerning the nature and extent of Deputy Stroh's injuries inflicted by Bubo, as well as documents regarding the Stroh disability and forced retirement as a consequence of those injuries. However, it is apparent that many documents are still being wrongfully withheld.

## IV.  THE  K-9  UNIT  DOCUMENTS  WITHHELD  BY  DEFENDANTS WHICH PLAINTIFF RECENTY DISCOVERED

On October 22, 2015, Plaintiff served Defendant County of San Diego the following document request:

> **Any and all DOCUMENTS which refer to the health, licensing, ownership, possession, control, training, and evaluation of the K-9 which attacked PLAINTIFF during the INCIDENT.**

*See* Exhibit B.

On March 24, 2016, Plaintiff served the following document request in conjunction with the Notice of Deposition of the County's Person Most Qualified regarding the K-9 that Deputy Banks ordered to, and did, attack Plaintiff:

> **Any and all DOCUMENTS that refer, relate to or otherwise evidence training and service record of "Bubo" the K-9, including any and all bite reports and logs for the entirety of his service to the San Diego County Sheriff's office or any other law enforcement agency.**

*See* Exhibit C.

As detailed in the Declaration of Joseph G. Dicks filed concurrently herewith, it was not until the first day or two in June that Plaintiff coincidentally became aware of the fact that "Bubo", the same K-9 that attacked Plaintiff, also

attacked his handler, K-9 deputy Trent Stroh, on July 22, 2015, during a routine training exercise. The attack on Deputy Stroh was so bad that Deputy Stroh was not only forced to leave the K-9 service, but because he could no longer execute his duties as a deputy, he had to retire from the Sheriff's Department. *See* <u>Exhibit D</u>, excerpts from the Stroh deposition taken in *Hartsell v. County of San Diego*, 16-cv-1094-LAB (LL).[3] Yet, nothing was disclosed about the Stroh incident by Defendants in the Myles case in response to the above two document requests. Given the specificity and particularity of the two document requests, Defendants should have produced documents in 2015 and 2016 regarding the Stroh incident, including Stroh's personnel records, Stroh's civil litigation records, and Bubo's K-9 records.

### A. <u>K-9 OFFICER TRENT STROH'S PERSONNEL RECORDS WITHHELD BY DEFENDANTS</u>

Deputy Stroh's personnel records documenting the injuries he received from Bubo's bite and his forced retirement as a result, are clearly relevant, probative and at least "likely to lead to the discovery of admissible evidence", particularly in light of Plaintiff's Bane Act claims, Plaintiff's claims of failure to properly train, document, and supervise, Plaintiff's claims of ratification, and Plaintiff's previously dismissed *Monell* claims.[4]

---

[3] The deposition was taken by attorney Keith Rutman after the Court appointed him to represent the pro-per plaintiff, Michael Hartsell, as the case risked a dismissal for failure to prosecute. (16-cv-1094, Doc. 16.) Hartsell alleged in his complaint that Stroh ordered Bubo to bite him and failed to call Bubo off, as required by department policy. Hartsell lost his case, which is currently being appealed, in part, because the Court denied his motion to re-open discovery for failing to turn over the documents concerning Stroh being bitten by Bubo, *some of the very same material that was withheld in the current case*. *See* <u>Exhibit K</u>, *Hartsell* Motion to Re-Open Discovery.

[4] *See* Section V of this brief regarding the prejudice Plaintiff suffered from not having the discovery in question to support his *Monell* cause of action, which was ultimately dismissed on motion for summary judgment. Had Plaintiff been provided these critical documents, it is likely the *Monell* claims would have survived Defendants' FRCP 12(b) attack. Instead, Defendants subsequently benefited from its wrongful withholding of documents when the Court granted Defendants' 12(b) motion as to Plaintiff's *Monell* cause of action.

---

In addition, it is to no avail that Defendants claim a privilege as to Stroh's personnel records, as the issue as to the production of relevant personnel records was the subject of the above referenced motion to compel in this case, a motion that was unequivocally decided in Plaintiff's favor. (Doc. 24.) It is also notable given the County's conduct in this case, that the declarations prepared and filed by the County in an attempt to keep these records from Plaintiff, were false and misleading. (*See* Exhibit M, Supplemental Declaration of Joseph G. Dicks in Support of Motion to Compel Police Records and exhibits cited therein, Doc. 21.) The County's declarations, by then Captain Marco Garmo[5], Lieutenant Jeffrey Duckworth and Captain Anthony Ray, all contained extraordinarily misleading misrepresentations regarding their basis for claiming a privilege against disclosure, revealing that they had absolutely no idea what the records contained and had no idea that a protective order had issued in the case protecting the public disclosure of the requested documents. (*See* Exhibit M, Bates Page Nos. 04, 026-027, 033-034, 055-056, and 064-069.) In fact, Captain Ray admitted that his declaration, stating that he had "read and reviewed" the 1,200 pages of identified documents, was not true, when he had only "flipped through" 100 pages of the documents. (*See* Exhibit M, Bates Page Nos. 04 and 074-076.)

Thus, the Stroh personnel files dealing with and documenting Bubo's bite, resulting injuries and resulting retirement are relevant, probative, and not protected by any privilege. Worse, they were never identified in any privilege log, so Plaintiff had no idea they even existed.

/ / /

/ / /

/ / /

---

[5] Who at the time, and unknown to Plaintiff, was conducting unlawful firearms trading/sales which eventually resulted in his pleading guilty to federal firearms violations and a two-year prison term. *See* Exhibit J.

| MEMORANDUM OF POINTS AND AUTHORITIES | -11- | *Myles v. County of San Diego, et al.* Case No. 15-cv-1985-JAH (BLM) |

## B. K-9 OFFICER TRENT STROH'S CIVIL LITIGATION RECORDS WITHHELD BY DEFENDANTS

The identical analysis applies to the litigation and discovery files concerning Deputy Stroh's civil litigation/worker's compensation claims arising from Bubo's attack on him during the July 22, 2015, training session.

Exhibit I is Stroh's civil complaint of October 25, 2016, in which Stroh made his injuries regarding Bubo's bite public. That complaint details the Bubo attack, Stroh's injuries (allegedly complicated by his surgeon's medical malpractice) and the fact that the County "directed" Stroh's medical care and evaluations as said care and evaluations was the direct result of Stroh's on-the-job injuries. (*See* Exhibit I, 4:15-16.) Like the personnel records, these documents were knowingly withheld and were never identified in a privilege log, as required, leaving Plaintiff with no possible idea of their existence and no opportunity to move to compel them.

## C. BUBO'S K-9 RECORDS WITHHELD BY DEFENDANTS

Bubo's training, bite, control, ownership, and all other records of Bubo's involvement with the County were the subject of two separate document requests. (*See* Exhibit B, Plaintiffs First Request for Documents and Exhibit C, Plaintiff's Notice of Deposition re Defendant's Person Most Qualified re Bubo's training and service record.) Yet, Defendants suppressed a significant trove of records concerning Bubo and his fitness as a K-9, both prior to discovery cut-off in 2016, and in the six years after discovery cut-off. It was only after Plaintiff's counsel uncovered the existence of the following records and notified counsel for the County on June 3, 2022, that the County disclosed some of its suppressed evidence relating to Bubo. In particular, the County had in its possession, but failed to either identify in a privilege log or produce[6]:

---

[6] In fact, the County's PMQ on the issue, Sergeant Jacob Pavlenko, testified that he had produced all records of Bubo's on-the-job biting incidents which was, of course, false. *See* Exhibit F, Vol. I of Pavlenko's deposition, at 94:3-7.

MEMORANDUM OF POINTS AND AUTHORITIES          -12-          *Myles v. County of San Diego, et al.* Case No. 15-cv-1985-JAH (BLM)

1. Exhibit H, Bubo's "Canine Unit Activity" (aka "Canine Deployment Report"): This 8-page document was produced in the *Hartsell v. County of San Diego* matter, but not in the present matter. It ends on July 3, 2015, **19 days prior to the July 22, 2015, incident where Bubo bit his K-9 handler, Deputy Trent Stroh** (despite its title representing that the period extends for a much longer term period);

2. Exhibit D, The Deposition of Trent Stroh, taken March 23, 2018, in the *Hartsell v. County of San Diego* matter;

3. Exhibit K, the Motion to Re-Open Discovery in the *Hartsell v. County of San Diego* matter[7], identifying **at least three witnesses** with knowledge of Bubo's marred service record, two of which are/were County K-9 officers, Deputy Richard Fischer[8] and Deputy Jason Balinger. (*See* Exhibit K, *Hartsell* Motion to Re-Open Discovery, pp. 5-6.);

4. Exhibit I, Stroh's civil complaint regarding his injuries from the Bubo bite; and,

5. Deputy Stroh's extensive medical records concerning the Bubo bite injuries.

On June 3, 2022, immediately after these facts and documents came to light, Plaintiff's counsel wrote to Defendants' counsel, concerned about the fact that these documents were never produced, and asking what other documents were being withheld, with defense counsel replying two days later. *See* Exhibit A, email chain between Joseph G. Dicks and Ronald Lenert. In the week

---

[7] *See* Section III of this brief addressing the County's pattern and practice of failing to abide by its discovery obligations.

[8] Deputy Richard Fischer is no longer employed by the San Diego Sheriff's Department. He was fired and prosecuted criminally for assaulting female detainees, and he was also the subject of a verdict for $85,000,000 in a case recently tried before The Honorable Marilyn Huff. See Section III of this brief addressing the County's pattern and practice of failing to abide by its discovery obligations.

| MEMORANDUM OF POINTS AND AUTHORITIES | -13- | *Myles v. County of San Diego, et al.* Case No. 15-cv-1985-JAH (BLM) |

thereafter, County Counsel Ronald Lenert sent emails attaching over a thousand pages of documents, resulting in Plaintiff's counsel having to sift through an enormous stack of documents in an attempt figure out what was new and what was just a bulk re-production of documents that had already been produced. It appears that out of the over one thousand pages of documents produced by the County between June 5, 2022 and June 9-10, 2022, only about 125 pages or so were new. The balance were almost entirely duplicative of what had been previously produced prior to discovery cut-off in this case six years ago.

Of note as to the new documents produced on June 10, 2022, were the following:

1. Documentation of Bubo's ownership transfer from the County to Banks, personally;

2. Documentation that Bubo was initially trained as a drug-sniffing dog, not a tracker/biter;

3. Report of Occupational Injury re Bubo biting Stroh;

4. Stroh's Worker's Compensation Claims Forms re Bubo bite;

5. Stroh's medical release forms re Bubo bite;

6. A blank Sheriff's Department Medical Disability Status Report;

7. Multiple Crime and Use of Force Reports concerning Deputy Stroh and/or Bubo; and

8. Several Memoranda from Brian Hout regarding Stroh/Bubo bites of suspects/detainees.

Moreover, still missing are *any* of the *training* records documenting the Bubo/Stroh bite incident[9], photographs of the Stroh bite, photographs of Bubo, and the medical records concerning the Bubo/Stroh bite and resulting injuries

[9] In fact, the Training Log produced at the Pavlenko deposition ***mysteriously ends on July 9, 2015, thirteen (13) days prior to the date Bubo bit Stroh*** during a training exercise, ***despite the fact that the title page of the document reads "5/1/2011 – 4/11/16"***. *See* <u>Exhibit U</u>, Bubo's Canine Daily Training Report.

requiring Stroh to retire. Moreover, Plaintiff still has not received from the County the Canine Deployment Record that attorney Rutman was kind enough to share with Plaintiff (Exhibit H). That document, similar to the Canine Daily Training Report (Exhibit U), *abruptly ends July 9, 2015, nineteen (19) days prior to Bubo biting Stroh, despite the fact that the title page of the document reads "5/1/2011 – 4/11/16".*

## V.   PLAINTIFF HAS SUFFERED SEVERE PREJUDICE AS A CONSEQUENCE OF DEFENDANTS' DISCOVERY ABUSES

Clearly, Defendants' improper withholding of evidence related the Stroh bite by Bubo, as well as other withheld evidence relating to Bubo's problems with bite aggression, has resulted in severe prejudice to Plaintiff in this case, including: the prejudice of Plaintiff's ability to amend his complaint to thoroughly plead all legal claims available to him and the facts supporting those claims, the prejudice of Plaintiff's ability to pursue additional discovery in search of other relevant evidence including the ability to thoroughly examine all witnesses by deposition, the prejudice of Plaintiff's ability to designate and fully inform his own experts, the prejudice of Plaintiff's ability to oppose Defendants' motions for summary judgment, the prejudice of Plaintiff's ability to fully advance and to fully oppose motions *in limine*, the prejudice of Plaintiff's ability to address Defendants' requests for special jury instructions and to seek proper jury instructions on his own behalf, and the prejudice to Plaintiff's ability to thoroughly prosecute at trial all causes of action rightfully available to him under the law, in particular, his *Monell* claim.

The documents about Bubo's bite of Deputy Stroh have been withheld from Plaintiff *for almost seven years*, as has the identity of witnesses revealed in those documents, and represent a vast and rich potential source of probative information and evidence that supports not only Plaintiff Mickail Myles' current claims, but that also support the *Monell* claim that was dismissed as a

consequence of the County's motion for summary judgment filed in October of 2016 and decided by The Honorable Roger T. Benitez on September 20, 2017.

One need only review Magistrate Major's May 4, 2016, decision regarding the relevancy/admissibility of the records withheld to understand their importance to the *Monell* and other claims asserted by Myles:

> [I]n the context of civil rights excessive force cases against police departments, plaintiffs may suffer great difficulties if courts impose demanding relevancy standards on them." Soto, 162 F.R.D. at 610 (citing Kelly, 114 F.R.D. at 667-68). Records of citizen complaints against law enforcement involving excessive force are relevant in civil rights cases, because such records may be "crucial to proving [a] [d]efendant's history or pattern of such behavior." Soto, 162 F.R.D. at 620; Medina, 2014 WL 4793026, at *11 (same). Internal affairs files of the named officer defendants may also be relevant "on the issues of credibility, notice to the employer, ratification by the employer and motive of the officers." Hampton, 147 F.R.D. at 229. Additionally, "information concerning other instances of misconduct may also be relevant on the issue of punitive damages, in that the information may lead to evidence of a continuing course of conduct reflecting malicious intent." Id. Further, "post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry." Henry v. Cnty. of Shasta, 132 F.3d 512, 519 (9th Cir. 1997), as amended, 137 F.3d 1372 (9th Cir. 1998); Medina, 2014 WL 4793026, at *12 (same).
>
> *        *        *
>
> The Court finds that any Internal Affairs files regarding any complaints of or investigations into incidents of excessive force, racial discrimination, false arrest and false imprisonment by Defendant Banks are relevant to show a purported pattern of misconduct by Defendant Banks and the failure of his supervisors to hold him accountable for such misconduct. Plaintiff's claims directly implicate the complicity of the San Diego County Sheriff's Department's chain of command and its failure to properly hire, train, screen, supervise and discipline its deputies and supervisors, as well as its willingness to cover up, excuse and ratify its deputies' misconduct.

*See* Order Granting in Part and Denying in Part Plaintiff's Motion to Compel Production of Police Records Held by Defendant County of San Diego (Doc. 24) at 28-29.

Continuing at page 32 of her decision, Magistrate Major's opined:

> Police personnel records are "relevant and discoverable" in § 1983 cases. See Green v. Baca, 226 F.R.D. 624, 644 (C.D. Cal. 2005) (citations omitted); Soto, 162 F.R.D. at 614-15; Medina, 2014 WL 4793026, at *6. "Items typically found in personnel files, such as records concerning training and performance, have been held to be relevant on the issues of

*credibility, notice to the employer, ratification by the employer, motive of the officers and malicious intent.*" Kassab v. San Diego Police Dep't, 2008 U.S. Dist. LEXIS 72619, at *6-7 (S.D. Cal. Sept. 19, 2008) (citing Soto, 162 F.R.D. at 613). Further, because performance evaluations are conducted on a routine basis, "the absence of materials documenting officer misconduct would tend to suggest the officer in question performed adequately and in accord with department policies." Stewart, 2010 WL 4909630, at *2. (Emphasis added.

*Id*. at 32.

It is undoubtedly the case that Plaintiff was denied his full and fair opportunity to oppose the summary judgment motion ultimately ruled upon by Judge Benitez, as Plaintiff simply was not provided with all the relevant, probative, responsive documents that were plainly in Defendants' custody and which Defendants only acknowledged existed after Plaintiff found out about them on his own and confronted Defendants about their failures less than two months before trial and six years after the discovery cutoff. It is of absolutely no consequence that some portions of some of the documents wrongfully withheld might end up not being admitted into evidence (although, given their probative value, exclusion of this evidence is highly unlikely). Moreover, the documents Plaintiff was fortunate enough to locate (despite Defendants' efforts to conceal them) contain references to witnesses that Plaintiff would have deposed (e.g., former K-9 Deputy Fischer, former K-9 Deputy Stroh, K-9 Deputy Balinger, Balinger neighbor Justin Sybrandt, etc.) on issues directly bearing on Bubo, his handlers, his training, temperament and performance, all of which would have given Plaintiff substantial additional information, evidence and basis to prove his claims or, at the very least, defeat the summary judgment motion.

Plaintiff was also denied his full and fair opportunity to fully prepare his experts for trial. Here, Defendants have filed a motion *in limine* seeking to exclude Police Practices expert Jeffrey Noble from testifying concerning the training of the K-9 Bubo in the context of the circumstances circumscribed by the evidence produced in discovery. To deny Plaintiff the benefit of Mr. Noble's testimony when that testimony has been undermined by Defendants' failure to

produce relevant evidence demanded in discovery is highly prejudicial to Plaintiff's ability to prove his case.

Finally, the supplemental privilege log Defendants recently served (Exhibit S) raises the specter that ***Defendants are still withholding documents*** based on objections Magistrate Judge Major found to be baseless in the context of this litigation, further exacerbating the prejudice Myles suffered in defending against the Defendants' several summary judgment motions. What additional evidence are Defendants withholding in this and other cases pending before this Court?

## VI.   CONCLUSION

In light of the facts and for the reasons set forth above, the Court should issue the following sanctions:

1. A reinstatement of Plaintiff's *Monell* claims against the County of San Diego, including prayers for relief allowed thereunder (such as the appointment of an auditor or monitor to address the County's pattern and practice of unlawful evidence suppression that appears deeply entrenched in the command and operation of the San Diego Sheriff's Department);

2. A directed verdict for Plaintiff as against Defendant County of San Diego as to liability on all claims and causes of action;

3. A strike of the answer and all affirmative defenses of the County of San Diego;

4.  Instructions to the Jury on the County's willful failure to disclose information in discovery, as was done in *K.J.P., et al. v. County of San Diego/Fischer* 15-cv-02692-H-MDD; and,

/ / /

/ / /

/ / /

/ / /

5.  Monetary Sanctions in an amount to be determined by the Court.


DATED:  June 16, 2022          DICKS & WORKMAN
                               ATTORNEYS AT LAW, APC



                               By: */s/ Joesph G. Dicks*
                                   Joseph G. Dicks
                                   Attorneys for Mickail Myles, Plaintiff
                                   Email: jdicks@dicks-workmanlaw.com

MEMORANDUM OF POINTS AND            -19-          *Myles v. County of San Diego, et al.*
AUTHORITIES                                        Case No. 15-cv-1985-JAH (BLM)