1  Ronald Lenert, Senior Deputy (State Bar No. 277434)
   1600 Pacific Highway, Room 355
2  **COUNTY OF SAN DIEGO**
   **OFFICE OF COUNTY COUNSEL**
3  San Diego, California 92101-2469
   Telephone: (619) 531-5805
4  Fax: (619) 531-6005

5  Mildred K. O'Linn (State Bar No. 159055)
     *mko@manningllp.com*
6  Anita Clarke (State Bar No. 321015)
     *akc@manningllp.com*
7  **MANNING & KASS**
   **ELLROD, RAMIREZ, TRESTER LLP**
8  801 South Figueroa Street, 15th Floor
   Los Angeles, CA 90017
9  Telephone: (213) 624-6900
   Facsimile: (213) 624-6999
10
   Attorneys for Defendants
11 COUNTY OF SAN DIEGO and DEPUTY J. BANKS

12

13              **UNITED STATES DISTRICT COURT**

14              **SOUTHERN DISTRICT OF CALIFORNIA**

15

16 MICKAIL MYLES, an individual,          Case No. 3:15-cv-01985-JAH-BLM
                                          District Judge, John A. Houston;
17        Plaintiff,                      Magistrate Judge Barbara Lynn Major

18        v.

19 COUNTY OF SAN DIEGO, by and           **DEFENDANTS' SUPPLEMENTAL**
   through the SAN DIEGO COUNTY          **BRIEF REGARDING STROH AND**
20 SHERIFF'S DEPARTMENT, a public        **VALDEZ**
   entity; and DEPUTY J. BANKS, an
21 individual,                           Action Filed:      09/04/2015
                                          Trial Date:        07/26/2022
22        Defendants.

23

24 **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS:**

25        Pursuant to the Court's Minute Order of July 13, 2022 (Dkt. No. 192), the defendants

26 hereby submit the following supplemental brief "with respect to the issue concerning

27 Stroh's discovery and the timeframes regarding incidents and complaints to Sheriffs

28 Department for Valdez matte[r]".

## 1.      DEPUTY TRENTON STROH

During the July 8, 2022 hearing, this Court summarized the plaintiff's argument "with respect to the issue concerning Stroh's discovery" as follows:

> Defendants should have produced documents in 2015 and 2016 regarding Stroh incident, including: Stroh's personnel records documenting his injuries received from Bubo's bite, his forced retirement; Stroh's civil litigation and worker's compensation records; …"

Dkt 190: Transcript of Status Conference, July 8, 2022 (hereafter referred to as the "7/8/22 RT"), page 9, lines 7-9. However, a review of the relevant court orders makes clear that the defendants did not have any duty to produce these documents in response to the discovery propounded by the plaintiff.

As the Court noted during the July 8th hearing, the plaintiff propounded a set of requests for production of documents dated October 22nd, 2015. 7/8/22 RT, page 5, lines 23-24. The defendants served their response on November 20, 2015, asserting various objections and privileges. See Dkt. 24, page 3, line 17 – page 4, line 5. The plaintiff, in response, file a motion to compel. 7/8/22 RT, page 6, lines 17-18.

> In an order dated May 4th of 2016, Document Number 24, the Honorable Barbara Major, US magistrate judge, granted Plaintiff's motion in part and ordered the County to produce: All Claims Investigation files; all Internal Affairs files regarding any complaints of or investigations into incidents involving allegations of excessive force, racial discrimination, false arrest, or false imprisonment by Defendant Banks; next, all Internal Affairs files containing allegations of excessive force, racial discrimination, false arrest, or false imprisonment by Deputies Ertz and Allison.

7/8/22 RT, page 7, lines 6-15. (The term "Claims Investigation files" refers to "Documents related to the underlying incident". Dkt. 24, page 5, lines 21-22.)

The documents related to Stroh that the plaintiffs contend should have been produced in response to this discovery demand simply don't fit within the scope of the Magistrate Judge's order describing the materials that the defendants did have an obligation to produce. Specifically, none of the Stroh documents constitute a "Claims Investigation file[]" or an "Internal Affairs file[] regarding any complaints of or investigations into incidents involving allegations of excessive force, racial discrimination, false arrest, or false imprisonment by Defendant Banks [or] by Deputies Ertz and Allison." So, based on the ruling on the motion

brought by the plaintiff himself, the defendants did not have a duty to produce any documents related to the Stroh incident.

The suggestion has been made that the violation arose from the defendants' alleged failure to supplement their previous production to include the Stroh documents. But the obligation to supplement arises when a party discovers documents that should have been produced earlier. Here, the Magistrate Judge's ruling indicated that the Stroh documents did not have to be produced earlier, and so there would not have been any obligation to supplement the defendants' early production to add these documents, whenever they might have been discovered.

## 2.    VALDEZ

As noted above, the Magistrate Judge ordered the defendants to produce Internal Affairs files regarding any complaints of or investigations into incidents involving allegations of excessive force, racial discrimination, false arrest, or false imprisonment by Defendant Banks. The Court identified a window of discoverable IA investigations, occurring from March 2011 to September 2014; "The Court notes that all of the identified investigations occurred within 3.5 years of the incident and the Court finds this time frame to be relevant and appropriate." Dkt. 24, page 30, lines 16-18. Thus, the order required the County to produce IA files for incidents occurring between March 2011 to September 2014.[1] The Valdez documents are not within this timeframe.

Thereafter, the Magistrate Judge denied the plaintiff's motion to compel production of additional documents, which essentially sought to expand the scope of discovery previously established by the Magistrate Judge, finding that "Plaintiff's requests are extremely overbroad, seek irrelevant information, and are not proportional to the needs of

---

[1]   Given that the Court's order was issued in May 2016, just a year-and-a half after the incident, it would not be logical to interpret the Magistrate Judge's order as meaning that the window would extend for a seven full years: 3.5 years prior to the incident and also 3.5 years after the incident, i.e. to a date two full years in the future after the date the order was issued.

1    the case." Dkt. 35, page 17, lines 16-17.

2        District Judge Benitez confirmed this ruling, denying the plaintiff's request for

3    "(1) all Use of Force reports for the period beginning five years prior to the incident

4    (*i.e., September 5, 2009 to present*); (2) all Internal Affairs investigations for the period

5    beginning five years prior to the incident; (3) all disciplinary actions within the department

6    for the period beginning five years prior to the incident; and (4) all allegations of dishonesty,

7    all investigations into allegations of dishonesty, and all disciplinary actions relating to

8    deputy dishonesty for the period beginning five years prior to the incident." Dkt. 50, page

9    8, lines 9-15; emphasis added. Judge Benitez agreed with the Magistrate Judge, finding that

10   "Plaintiff's document requests are extremely overbroad, would produce large amounts of

11   irrelevant information, and are not tailored to the needs of this case." Dkt. 50, page 9, lines

12   17-19.

13       All of the Valdez documents that the plaintiff has presented to this Court were created

14   outside the discovery window established by the Magistrate Judge, and thus none of them

15   was subject to discovery within the scope of the Magistrate Judge's order.[2]

16
17   **3.    THE COURT'S SANCTIONS ARE EXCESSIVE GIVEN THAT THE
         DEFENDANTS DID NOT HAVE ANY REASON TO BELIEVE THAT
18       THEY WERE VIOLATING A DISCOVERY ORDER IN REGARD TO
         THE STROH AND VALDEZ DOCUMENTS**

19       The Ninth Circuit explained in *Wyle v. R.J. Reynolds Indus., Inc.,* 709 F.2d 585, 589

20   (9th Cir. 1983) that "Federal Rule of Civil Procedure 37 authorizes the district court, in its

21   discretion, to impose a wide range of sanctions when a party fails to comply with the rules

22   of discovery or with court orders enforcing those rules. [Citations.] When choosing among

23   possible sanctions, the district court may consider the deterrent value of an order of dismissal

24   on future litigants as well as on the parties. [Citation.]" Further, as this Court explained

25   _____

26   [2] The plaintiff states that the date of Exhibit JJ is July 12, 2013, but there is nothing
     in the document to indicate that it was prepared on that date or delivered to the County
27   on or about that date. The document simply describes an incident that allegedly
     occurred on July 12, 2013, and the document could have been prepared at any time
28   thereafter.

during the July 8th hearing:

> In addition, a district court must determine that the violations of discovery orders were due to the willfulness, bad faith, or fault of the party, Hyde & Drath vs Baker, 24 F.3d 1162 and 1167, Ninth Circuit 1994. Disobedient conduct not shown to be outside of the control of the litigants is sufficient to demonstrate willfulness, bad faith, or fault.

7/8/22 RT, page 5, lines 17-22.

Also, "[s]anctions imposed under Rule 37(b)(2) 'must be specifically related to the particular "claim" which was at issue in the order to provide discovery.' *Insurance Corp. of Ireland,* 456 U.S. at 707." *Fjelstad v. Am. Honda Motor Co.,* 762 F.2d 1334, 1342 (9th Cir. 1985).

The Court, during the July 8th hearing, stated on the record that "[t]he Court finds that defendant's failure to propound requested discovery, undue delay in supplementing discovery have effectively hogtied Plaintiff's efforts to defend against motions filed by Defendants, to diligently prepare motions for discovery, and to adequately oppose Defendants' motions, and to prepare for trial all creating substantial prejudice to Plaintiff." 7/8/22 RT, page 12, line 22 – page 13, line 3.  But the Court appears to have been referring exclusively to the fact that the defendants did not produce the Stroh documents earlier, as is indicated by the Court's discussion beginning at page 9, line 5 through page 12, line 12.

However, as discussed in Section 1 above, the Stroh documents were not required to be produced given the scope of discovery established by the Magistrate Judge.  If these documents were not required to be produced, then obviously the defendants cannot be sanctioned for having failed to produce them.  It is of course possible that the Court will disagree with the defendants' interpretation of the scope of discovery established by the Magistrate Judge.  But it cannot be disputed that the defendants' interpretation is one that could legitimately, and in good faith, have been drawn from the Magistrate Judge's order.

Thus, even if this Court were to conclude that a different interpretation should be drawn from the language of the Magistrate Judge's order, any sanctions that the Court might impose on the defendants for having reached the wrong conclusion about the required scope of production would have to take into consideration that the defendants' alleged error in this

1  regard was unintentional and not readily apparent to them.  That is not a situation where the

2  party that allegedly failed to fully respond to discovery was acting willfully or in bad faith.

3        Nor can it be said that the defendants' action was due to their "fault", in the sense that

4  they should have known that their actions were improper.  They thought they were

5  complying with the scope of discovery established by the Magistrate Judge, based on a

6  legitimate interpretation of the Magistrate Judge's order.  A good faith misinterpretation of

7  a court order should not be deemed "[d]isobedient conduct not shown to be outside of the

8  control of the litigants".  Nor can it be said that punishing parties for their counsel's good

9  faith – but allegedly misguided – attempts to comply with court orders has a legitimate

10  "deterrent value … on future litigants as well as on the parties."

11        Thus any sanctions to be imposed should be limited to putting the plaintiffs in the

12  position they would have been if the defendants had "correctly" interpreted the Magistrate

13  Judge's order, and should not have as a secondary purpose an intent to punish the defendants

14  for their actions.  According to the plaintiff, the harm he suffered as a result of not receiving

15  the Stroh documents earlier was as follows:

16        Plaintiff argues that as a result of Defendants' conduct, he has been
   deprived of the ability to: Amend his complaint to thoroughly plead all legal
17        claims available to him and the facts supporting those claims; to pursue
   additional discovery in search of other relevant evidence including the ability
18        to thoroughly examine all witnesses by deposition; to designate and fully
   inform his own experts; to oppose defendants' motions for summary
19        judgment; to fully advance and to fully oppose motions in limine; to address
   defendants' requests for special jury instructions and to seek proper jury
20        instructions on its own behalf; and thoroughly prosecute at trial all causes of
   action rightfully available to him under the law, in particular, his Monell claim.

21

22  7/8/22 RT, page 11, lines 1-13.

23        The direct means of putting the plaintiff in the position he would have been in had

24  the Stroh documents been produced earlier would simply be to continue the trial, re-open

25  discovery (for the plaintiff), and vacate the rulings in the various proceedings referenced by

26  the plaintiff.  This would allow the plaintiff to fully prosecute his case, without punishing

27  the defendants for their good faith, but allegedly mistaken, belief that the Stroh documents

28  did not come within the scope of discovery as established by the Magistrate Judge.

1    The prejudice the plaintiff claims that he would suffer by such a solution to this issue

2 is that the trial of his case would be delayed. While delay is a legitimate concern, here the

3 sanctions issued to avoid that delay impose an unjust punishment on the defendants for

4 actions that do not demonstrate willfulness, bad faith, or fault. Given the circumstances

5 related to the initial non-production of the Stroh documents, the Court should reconsider

6 those sanctions and instead impose the less-draconian sanction of vacating the trial date and

7 re-opening this litigation.

8    The same analysis applies to the issue of the Valdez documents. The Court's

9 explanation for its ruling, as stated on the record on July 8, 2022, indicates that it did not

10 base its sanction order on the Valdez matter. But even if this Court were to now hold that

11 the defendants' failure to initially produce the Valdez documents prejudiced the plaintiff,

12 that would not justify the sanctions the Court has imposed. As discussed in Section 2 above,

13 the Valdez documents were not required to be produced given the scope of discovery

14 established by the Magistrate Judge and confirmed by District Judge Benitez. If these

15 documents were not required to be produced, then obviously the defendants cannot be

16 sanctioned for having failed to produce them.

17    As with the Stroh documents, even if the Court disagrees with the defendants'

18 interpretation of the scope of discovery established by the Magistrate Judge, it cannot be

19 disputed that the defendants' interpretation is one that could be legitimately, and in good

20 faith, drawn from the Magistrate Judge and Judge Benitez's orders.

21    Therefore, as with the Stroh documents, even if this Court were to conclude that a

22 different interpretation should be drawn from the language of the Magistrate Judge's order,

23 any sanctions that the Court might impose on the defendants for having reached the wrong

24 conclusion about the required scope of production would have to take into consideration

25 that the defendants' alleged error in this regard was unintentional and not readily apparent

26 to them.

27    Accordingly any sanctions to be imposed should be limited to putting the plaintiffs

28 in the position they would have been if the defendants had "correctly" interpreted the

Magistrate Judge's order, and should not have as a secondary purpose any intent to punish the defendants for their actions.   The sanctions imposed by this Court exceed these parameters and should instead be limited as discussed above in relation to the Stroh documents.

There is another reason why the sanctions imposed by the Court are not appropriate. As noted above, "[s]anctions imposed under Rule 37(b)(2) must be specifically related to the particular claim which was at issue in the order to provide discovery." *Fjelstad, supra,* 762 F.2d at 1342; citation and internal quotation marks omitted.   The Court's sanctions do not meet that standard in relation to the Stroh and Valdez documents.

The Court, as part of its sanction order, reinstated the plaintiff's *Monell* claim.   But the Stroh and Valdez documents do not "specifically relate" to that claim.   Both are single incidents, relating to separate issues: the alleged improper training of Bubo, and an alleged use of excessive force by Defendant Banks.   But it is well-established that single incidents do not provide an adequate basis for a *Monell* claim against a municipality.

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-824 (1985).   "Liability for improper custom may not be predicated on isolated or sporadic incidents." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996).   Similarly, *Monell* claims based on a failure-to-train theory generally require a "pattern of similar constitutional violations by untrained employees".   *Connick v. Thompson,* 563 U.S. 51, 62 (2011).   See also *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 407-408, holding that a "one-time negligent administration" of a training program does not "tend to show . . . the lack of proper training".

Thus, since the information from the Stroh and Valdez documents cannot, standing alone, support a *Monell* claim against the County, it cannot be said that the sanction of reinstating the plaintiff's *Monell* claim meets the requirement that it be a sanction

1    *specifically related* to the particular claim which was at issue in the order to provide
2    discovery." *Fjelstad, supra,* 762 F.2d at 1342; emphasis added.  The same is true regarding
3    the Court's sanction of precluding the defendants from presenting evidence to rebut the new
4    opinions to be offered by the plaintiff's experts on the *Monell* issue.

5        This is also true as to the Court's reversal of its prior rulings on several motions in
6    limine, the overall effect of which is to allow the plaintiff to introduce evidence of alleged
7    bad conduct by Defendant Banks and Bubo that occurred after the incident at issue in this
8    action.  Such evidence might arguably be relevant in support of a *Monell* claim, but, as
9    discussed above, allowing the introduction of this evidence cannot be properly be deemed
10   a sanction "specifically related" to the *Monell* claim, because the information from the Stroh
11   and Valdez documents cannot, standing alone, support a *Monell* claim against the County.

12       Accordingly, for all these reasons, and for the reasons discussed above, the Court
13   should reconsider the sanctions it has imposed in regard to the Stroh and Valdez matters and
14   instead impose the less-draconian sanction of vacating the trial date and re-opening this
15   litigation.

16       Even if the Court were to decide not to reconsider its sanctions order, it should still
17   order a continuance of the trial.  The reinstatement of the *Monell* claim will require
18   testimony from a great number of additional witnesses and the introduction of a substantial
19   number of additional documents.  The plaintiff has just sent more than 25 trial subpoenas to
20   the County for current and former County employees to appear as witnesses, along with
21   requests to produce extensive documents at trial.  Just locating these witnesses and
22   documents may not be possible in the short time remaining for the current trial date, to say
23   nothing of preparing these witnesses to testify and reviewing the requested documents to
24   determine if objections to their production should be made.

25       Finally, the nature and scope of the *Monell* claim has not been clarified as it normally
26   would have been through the course of litigation.  Resolving that issue will likely require
27   the intervention of the Court, and accordingly the County requests that the parties be allowed
28   to file up to five additional motions in limine addressing the *Monell* issue.

DATED:  July 14, 2022

Respectfully submitted,

**COUNTY OF SAN DIEGO**
**OFFICE OF COUNTY COUNSEL**

RONALD LENERT, Senior Deputy

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: _____*/s/ Mildred K. O'Linn*_____
        MILDRED K. O'LINN
        ANITA CLARKE

Attorneys for Defendants
COUNTY OF  SAN DIEGO and
DEPUTY J. BANKS