Browne Greene, SBN 38441
GREENE BROILLET & WHEELER, LLP
222 N. Pacific Coast Highway, Suite 2100
P.O. Box 955
El Segundo, California 90245
Telephone: (310) 576-1200
Facsimile: (310) 576-1220
Email:  bgreene@gbw.law

Daniel K. Balaban, SBN 243652
BALABAN & SPIELBERGER, LLP
11999 San Vicente Blvd., Suite 345
Los Angeles, California 90049
Telephone:  (424) 832-7677
Facsimile:  (424) 832-7702
Email:  daniel@dbaslaw.com

Joseph G. Dicks, SBN 127362
Linda G. Workman, SBN 128621
DICKS & WORKMAN ATTORNEYS AT LAW, APC
7825 Fay Avenue, Suite 120
La Jolla, California 92037
Telephone: (619) 685-6800
Facsimile: (619) 557-2735
Email:  jdicks@dicks-workmanlaw.com; lworkman@dicks-workmanlaw.com

Holly N. Boyer (SBN 221788)
Shea S. Murphy (SBN 255554)
ESNER, CHANG & BOYER
234 East Colorado Boulevard, Suite 750
Pasadena, California   91101
Telephone: (626) 535-9860
Facsimile: (626) 535-9859
Email:  hboyer@ecbappeal.com; smurphy@ecbappeal.com

Attorneys for MICKAIL MYLES, Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICKAIL MYLES, an individual,<br><br>       Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, by and through the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, a public entity; and DEPUTY J. BANKS, an individual,<br><br>       Defendants. | Case No.  15-cv-1985-JAH (BLM)<br><br>**DECLARATION OF JOSEPH G. DICKS RE ADDITIONAL BRIEFING ON CLARIFICATION OF JUDGE HOUSTON'S MINUTE ORDER [192] GRANTING PLAINTIFF'S MOTION FOR SANCTIONS FOR DISCOVERY ABUSES AGAINST DEFENDANTS COUNTY OF SAN DIEGO AND JEREMY BANKS**<br><br>Date:    July 5, 2022<br>Time:   10:00 a.m.<br>Judge:  Hon. John A. Houston<br>Crtrm:  13B<br><br>Complaint Filed:  September 4, 2015 |

I, Joseph G. Dicks, declare:

    1.    I am a member in good standing with the California Bar and an attorney licensed to practice law before the Courts in the State of California, as well as the United States District Court for the Southern District of California.  I am one of the attorneys of record for the Plaintiff, MICKAIL MYLES, in the herein case.

    2.    I have personal knowledge of the facts set forth herein, and if called upon to do so, I could and would competently testify thereto.  This declaration is offered by Plaintiff in support of his Motion for Sanctions for Discovery Abuses.

    3.    Attached to the Notice of Lodgment filed herewith are true and correct copies of the exhibits described therein.

    4.    Since the service of Defendants' initial responses to Plaintiff's discovery requests which are the subject of this motion, I have had numerous meet and confer discussions with opposing counsel, most of which were with County Counsel, George Brewster. Several of these meetings were in person, over coffee. Many of these meetings were telephonic. Many were in email communications, and some in more formal correspondence. Many of these meet

1  and confer efforts were prior to the motion to compel, and many more were after
2  the motion was decided. However, in nearly every one of these discussions,
3  Defense counsel was reminded of the following:

4      a. Plaintiff was relying on the accuracy and honesty of the privilege
5         log as the basis upon which a motion to compel would be brought
6         given the fact that even the responses to the interrogatories
7         (including supplemental responses) represented, under penalty of
8         perjury, that any responsive documents would be identified on the
9         privilege log. Exhibit WW, Defendants' recently served
10        supplemental responses to interrogatories. Defense counsel agreed,
11        on each occasion, that Plaintiff's reliance was justified;

12     b. The discovery propounded on Defendants requested documents,
13        investigations, reports, files and correspondence concerning
14        incidents occurring both prior to the Myles incident and after the
15        Myles incident. This was not only acknowledged in the many meet
16        and confer efforts with opposing counsel, but was acknowledged by
17        the production of both pre and post Myles incident document
18        productions by Defendants both before the motion to compel was
19        ruled upon, and afterwards. In addition to the Magistrate's Order
20        (Exhibit Q, Doc. 24) spelling out this fact, Mr. Brewster and I had a
21        follow-up teleconference with the Magistrate on that very issue in
22        early June of 2016, about a month after the Magistrate's Order
23        (Doc. 24) was issued. In that call, the Magistrate made it clear that
24        both documents concerning incidents both pre and post Myles'
25        incident were ordered to be produced, resulting County Counsel
26        George Brewster's email to me of June 6, 2016, wherein Mr.
27        Brewster advised that the documents concerning the tasing/chocking
28        of the juvenile (occurring post Myles' incident) and the Barragan

incident (occurring pre-Myles' incident) would be produced. (<u>Exhibit TT</u>.)  I would note, again, that these incidents were identified and brought to the attention of defense counsel by Plaintiff's counsel, not the other way around. Defense counsel further acknowledged its obligation under the Magistrate's Order (Doc. 24) to produce documents concerning incidents post Myles' incident when Plaintiff again discovered yet another post Myles incident involving Banks and his K9 and brought it to Mr. Brewster's attention on July 22, 2016. (<u>Exhibit UU</u>.) The documents concerning that incident were produced on July 25, 2016. In yet another example, Defense counsel again further acknowledged its obligation under the Magistrate's Order (Doc. 24) to produce documents concerning incidents post Myles' incident when Mr. Brewster sent his August 24, 2016, email to me (<u>Exhibit FF</u>) volunteering that ". . . in doing a review of the files, *we did come across one other matter that falls within the discovery categories*, and I will be forwarding you that matter as soon as we are able to obtain an electronic copy and can do redactions . . . It was not investigated by IA, there were no complaints from the individuals involved, and I do not believe that CLERB was involved . . . .". (Emphasis added.) Mr. Brewster went on to explain that Deputy Allison (who initiated the stop in both the Myles incident and the incident he was addressing in his email), Deputy Banks, and his K9 were involved, and that *the incident occurred after the Myles incident*.

5. A summary of the documents concerning post Myles incidents, involving Banks and Bubo include the following productions, most of which were independently identified by Plaintiff and brought to Defendants' attention:

| Bates | Description | Date Produced |
|---|---|---|
| 1651 | UOF Supp re 6/13/15 juvenile skateboarder | 06/07/16 |
| 1653-1666 | Officer Reports re 6/13/15 juvenile skateboarder | 06/07/16 |
| 1671-1678 | Officer Reports re 6/13/15 juvenile skateboarder | 06/09/16 |
| 1989 | UOF Supp re 09/27/15 Felipe Cortez | 07/25/16 |
| 1989-2 | UOF Supp re 09/27/15 Felipe Cortez | 09/16/16 |
| 1990-1997 | Arrest Report re 09/27/15 Felipe Cortez | 07/25/16 |
| 1998-2001 | Follow up Report re 09/27/15 Felipe Cortez | 07/25/16 |
| 2002-2003 | Officer Reports re 09/27/15 Felipe Cortez | 07/25/16 |
| K9-139-141 | Banks' Canine Deployment Report of 9/13/14 | 04/26/16 |
| K9-142-144 | Stroh's Canine Deployment Report of 5/21/15 | 04/26/16 |
| K9-145-147 | Stroh's Canine Deployment Report of 6/24/15 | 04/26/16 |

See Exhibit PP.

6. Moreover, Defendants, when they did finally produce some of the previously withheld documents after the filing of the sanctions motion, continued to apply abusive redactions to them based on objections previously overruled by Magistrate Major in her order, Doc. 24 and Exhibit Q. See, for instance, Exhibit AAA, recently produced Hartsell investigative files and, in particular, CSD-002818-002820, where the entire text of the report was redacted, contrary to the findings in Doc. 24 and Exhibit Q, at 20:4-8.

7. On November 30, 2016, when County Counsel George Brewster became less involved in the case (and eventually retired), he turned matters over to the Manning Firm and, in particular, Mildred ("Missy") O'Linn (see Exhibit GG), cooperation regarding the production of responsive documents all but ceased. Despite assurances in Exhibit GG that "Our outside counsel will address your requests for documents related to this matter" [referring to the Valdez IA investigation or lack thereof], no privilege log was ever served identifying any withheld responsive documents like what was done with the pre- and post-

1  Myles' IA investigatory files identified in prior privilege logs. Further, no IA
2  files were ever produced, despite repeated requests. (*See* Exhibit BBB, recent
3  email exchange with Ron Lenert regarding the production of these records.)
4  Instead of responding to these inquiries, after I clarified exactly what Plaintiff
5  was looking for, Defendants completely ignored the request.

6      8.      The importance of these Valdez IA files, or absence thereof, is
7  probative to the *Monell,* Bane Act, ratification, training, supervision and
8  motive/intent issues raised in Plaintiff's pleadings. If they exist, Plaintiff should
9  have had them years ago so his expert could analyze and opine on their content
10 or lack of content. If they do not exist, as represented in Exhibit GG, that fact
11 alone adds to the already identified numerous failures by the County to address
12 allegations of officer misconduct.

13     9.      At the July 5, 2022, hearing before this Court, Your Honor inquired
14 as to the standard for accepting even verbal complaints to IA investigators about
15 alleged officer misconduct during the period concerning the several Valdez
16 complaints (2013-2016). Exhibits LLL, MMM, and NNN, provided by
17 Plaintiff's police procedures expert, Jeffrey Noble, answers that inquiry. The
18 Department of Justice, relying on Mr. Noble's textbook, makes it clear that the
19 investigation of verbal complaints, even anonymous ones, was the standard, at
20 least since 2009.

21     10.     As for the recent production of approximately 1,000 pages of
22 documents by the Defense, Plaintiff's counsel and Mr. Noble have attempted to
23 analyze many of them and make sense of them in light of the prior productions.
24 As set forth in the Noble declaration, they evidence a still growing and consistent
25 pattern of failing to document key encounters, uses of force (including K9), K9-
26 related injuries to both members of the public and sheriff deputies, and lack of
27 training, lack of K9 deployment documentation, and confusion regarding which
28 K9 was involved in which encounters.

11. Plaintiff's document requests 7, 46a and 46b, combined with interrogatories 8 and 9 (Exhibits CC and DD) imposed reasonable, clear, unambiguous discovery obligations on Defendants. Any arguments during the discovery process regarding what needed to be produced in response to these discovery requests were resolved in Plaintiff's favor, not only by the discovery order of May 4, 2016, Doc. 24, but in the follow-up teleconference with Magistrate Major in early June, 2016 as set forth in Exhibit TT, George Brewster's email to me of June 6, 2016.

12. Defendants have clearly willfully withheld evidence in discovery probative on the issues of *Monell* liability, Bane Act liability, ratification, failure to train and supervise, motive, intent, lack of mistake, as well as negligence. That willful failure itself is part of the County's pattern and practice of denying Plaintiff his civil rights under §1983, as well as proof of the Defendants' "consciousness of guilt."

13. Defendants' willful failure to produce documents and supplement its interrogatory responses is probative of their attempts to cover-up and conceal their wrongdoing. The Court may remember the blatant falsehoods set forth by the County's high-ranking law enforcement personnel exposed in their depositions as set forth in Exhibit M that were employed as a tactic to attempt to mislead the Magistrate when deciding on the all-important motion to compel. For instance, then Captain Anthony Ray, who has since been appointed as the Interim Sheriff after William Gore resigned, falsely declared, under penalty of perjury in opposition to Plaintiff's motion to compel the production of police records, that he had personally "read and reviewed documents in this log, identified as CSD000430 through CSD001623." He thereafter admitted during my deposition of him that he had only "flipped through" less than 100 pages of documents. Exhibit M at Bates pp. 72-75. Had that deceptive tactic succeeded, Plaintiff would have been denied any fair opportunity to prove most, if not all of

his claims, and Plaintiff would have been blocked from accessing any of the relevant records in the Defendants' possession. This is not a matter of simply opposing a motion to compel based upon a good faith, honest opposition. The jury cannot be shielded from the deceptive tactics of these senior officers, and others, in abusing the discovery process, as these acts, which continue even to this date, go to the core of Plaintiff's claims and causes of action.

14.   Plaintiff wants to emphasize that he has waited over seven years to have his opportunity to seek justice from a jury of his peers, and in no manner of speaking wants any further delay of these proceedings, as a continuance will only assist the Defendants and provide them the delay they sought in their Motion in Limine No. 11. Instead, Plaintiff seeks sanctions commensurate with the damage that has been done to his case by the willful failures and discovery abuses perpetuated by the Defendants.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.   Executed this 14th day of July 2022, at San Diego, California.

　　　　　　　　　　　　　　　　　　　　　*/s/ Joseph G. Dicks*
　　　　　　　　　　　　　　　　　　　　　Joseph G. Dicks