Browne Greene, SBN 38441
GREENE BROILLET & WHEELER, LLP
222 N. Pacific Coast Highway, Suite 2100
P.O. Box 955
El Segundo, California 90245
Telephone: (310) 576-1200
Facsimile: (310) 576-1220
Email:  bgreene@gbw.law

Daniel K. Balaban, SBN 243652
BALABAN & SPIELBERGER, LLP
11999 San Vicente Blvd., Suite 345
Los Angeles, California 90049
Telephone:  (424) 832-7677
Facsimile:  (424) 832-7702
Email:  daniel@dbaslaw.com

Joseph G. Dicks, SBN 127362
Linda G. Workman, SBN 128621
DICKS & WORKMAN ATTORNEYS AT LAW, APC
7825 Fay Avenue, Suite 120
La Jolla, California 92037
Telephone: (619) 685-6800
Facsimile: (619) 557-2735
Email:  jdicks@dicks-workmanlaw.com; lworkman@dicks-workmanlaw.com

Holly N. Boyer (SBN 221788)
Shea S. Murphy (SBN 255554)
ESNER, CHANG & BOYER
234 East Colorado Boulevard, Suite 750
Pasadena, California   91101
Telephone: (626) 535-9860
Facsimile: (626) 535-9859
Email:  hboyer@ecbappeal.com; smurphy@ecbappeal.com

Attorneys for MICKAIL MYLES, Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

MICKAIL MYLES, an individual,

             Plaintiff,

v.

COUNTY OF SAN DIEGO, by and through the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, a public entity; and DEPUTY J. BANKS, an individual,

             Defendants.

Case No.  15-cv-1985-JAH (BLM)

**DECLARATION OF JEFFREY NOBLE IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS FOR DISCOVERY ABUSES AGAINST DEFENDANTS COUNTY OF SAN DIEGO AND JEREMY BANKS**

Date:       July 5, 2022
Time:      10:00 a.m.
Judge:     Hon. John A. Houston
Crtrm:    13B

Complaint Filed:  September 4, 2015

I, Jeffrey J. Noble, declare:

1.     I am at least 18 years of age and I have personal knowledge of the facts set forth herein, and if called upon to do so, I could and would competently testify thereto. I have personal knowledge of the facts set forth herein, and if called upon to do so, I could and would competently testify thereto.  This declaration is offered by Plaintiff in support of his Motion for Sanctions for Discovery Abuses.

2.     Since preparing my original expert report dated May 27, 2016 and my first supplemental report dated August 23, 2016, and providing my deposition testimony in this case, I have reviewed additional materials that were recently produced by the County and offer the following observations to this Court based upon a preliminary review thereof.

3.     It appears that K-9 Bubo was initially assigned to Deputy Dozier sometime around November 2012.  It also appears that Deputy Dozier worked a jail facility the entire time he was Bubo's handler based on Bubo's deployment log. (Exhibit JJJ, at CSD 002787-001-032.)  The deployment log for Bubo shows deployments in jail facilities from November 2012 until February 2014. (Exhibit JJJ, at CSD 002787-001-025.)  It does not appear that Bubo had any patrol

deployments during his first two-years of service.  This raises serious concerns about the very different environments in which Bubo has been deployed, and his suitability for work both in the jail and for subsequent patrol deployments amongst the public. What was Bubo's training for and use during his jail deployment? Was it appropriate training? Was it appropriate use? Was Bubo retrained for patrol deployments? Was that retraining appropriate? Even with appropriate retraining, was Bubo suitable for patrol deployments after working in a jail environment?

4.    There are unexplained gaps in Bubo's service and training between handlers.

5.    There are no records of the status of Bubo for the five months between Deputy Dozier's last deployment of Bubo in February 2014 until Deputy Banks' first deployment of Bubo on July 27, 2014. (Exhibit JJJ, at CSD 002787-0025.) Similarly, there are no records of training for Deputy Banks with Bubo during that period.  The first training record for Bubo with Deputy Banks is listed as July 31, 2014 (Exhibit JJJ, at CSD 002788-015) four days *after* Deputy Banks reportedly deployed Bubo for the first time on July 27, 2014 as perimeter security for a warrant service. (Exhibit JJJ, at CSD 002787-025.)

6.    While it is likely that Deputy Banks trained with Bubo prior to his first deployment (initial training for a new handler is generally at least four weeks), there are no records to support that this training ever occurred and there are no records of Bubo's status, or if he received ongoing training during the five-month gap.

7.    The training listed for Deputy Banks includes a total of four sessions (July 31, 2014 – 9 hours; August 13, 2014 – 8 hours; August 14, 2014 – 4 hours; August 28, 2014 – 4 hours). (Exhibit JJJ, at CSD 002788-015.) These training sessions appear to be ongoing development of the handler and K-9 and not the initial handler training.

8.      According to Bubo's deployment data, the last deployment of Bubo by Deputy Banks was on August 29, 2014, and the first deployment by Deputy Stroh was on March 18, 2015. (Exhibit JJJ, at CSD 002788-015.) Yet, we know that Deputy Banks deployed Bubo on September 5, 2014, in his arrest of Mickail Myles, as there was a bite report and use of force supplement generated for the Myles incident (although there was no IA report generated for the Myles' incident). We also know from a bite report that Deputy Banks deployed Bubo on September 13, 2014. (Exhibit VV, at K9-139 – 141.) However, there is no information regarding the ongoing training or status of Bubo during that seven-month period.

9.      The last deployment of Bubo by Deputy Stroh was on July 3, 2015. As discussed below, Deputy Stroh was bitten by Bubo on July 22, 2015.  Again, there is a significant gap of ten-months in training or status records of Bubo from when Deputy Stroh was bitten by Bubo on July 22, 2015 and Bubo's next assignment to Deputy Balinger in May 2016.

10.     It is obvious that the deployment log for Bubo is inaccurate.  It is undisputed that Bubo bit Mr. Myles on September 5, 2014, yet this deployment is not listed on Bubo's log. (Exhibit JJJ, at CSD 002787-026.) There is a second incident where Bubo intentionally bit a subject at Deputy Banks' command on September 13, 2014 (Exhibit VV, at K9-139 – 141), and that bite is similarly missing from Bubo's deployment log.

11.     A quarantine log shows that Bubo bit Michael Hartsell on May 21, 2015, and while the deployment log shows that Bubo was deployed on that date and there was a "K9 Contact," but the notes state "see narrative" (Exhibit JJJ, at CSD 002787-027), preventing one from easily knowing that Bubo had bitten a subject.

12.     The deployment log shows that Bubo had a "K9 Contact" on June 24, 2015, but the notes state, "See case number for details." (Exhibit JJJ, at CSD

1    002787-030.) The quarantine log shows that was the date Bubo bit Jesus Estrada.

2         13.    No reasonable supervisor or manager could rely on records like

3    these that are obviously inaccurate and raise the possibility of other deployments

4    and K-9 bites by Bubo that were not reported.

5         14.    Bubo was assigned to Deputy Balinger around May 16, 2016

6    (Exhibit JJJ, at CSD 002758), and it appears that Deputy Balinger was in training

7    with Bubo as a new handler until June 28, 2016.  On June 28, 2016, Bubo was

8    taken out of service, as noted in the following June 28, 2016 training note: "We

9    then proceeded to meet in El Cajon at the Kadema aerospace facility where we

10   continued with building searches. Balinger was acting as an agitator, wearing a

11   full bite suit during one of the scenarios. K9 Hero bit Balinger on one of his

12   exposed hands. Deputy Balinger went to the US Healthworks for treatment and

13   was placed on Light Duty. Due to the needs of the Canine Unit, the training staff

14   along with Sergeant Pavlenko decided to remove Bubo from service with the

15   possibility of re-assigning him to another handler.  Balinger was issued K9 Edo,

16   who was previously assigned to Sergeant T. Nickerson. Due to Balinger's light

17   duty status, he was unable to train for the rest of the week." (Exhibit JJJ, at CSD

18   002762.)

19        15.    There was no explanation why Bubo was removed from service, but

20   on the same training report where Bubo was removed from service it is indicated

21   that "Bubo performed well." (Exhibit JJJ, at CSD 002762.)

22        16.    One month later, on July 28, 2016, the Sheriff's Department

23   relinquished ownership of Bubo and Deputy Banks became Bubo's legal owner.

24   (Exhibit JJJ, at CSD 002677.)

25        17.    There are no reports why a K-9 that according to the Sheriff's

26   department was performing well, was suddenly and without explanation removed

27   from service and less than a month later ownership of Bubo was transferred to

28   Deputy Banks.

---

18.    Noting that "Hero" is referenced in the June 28, 2016 training narrative about Bubo's removal from service, and in light of the previous identification of "Hero" as Deputy Banks' K9 who was involved in the 2013 Barragan homicide investigation (*See* Exhibit JJJ, January 21, 2014 Barragan Homicide Follow-up Investigative Report, at CSD 001745) – a homicide for which there was no bite report or IA investigation, the June 28, 2016 training narrative raises additional serious concerns about "Hero," Bubo, Deputy Banks' affiliation with "Hero"/Bubo, and the overall appropriateness of the Department's dog handling practices and reporting practices.

19.    The records regarding the training and dangers posed by K-9 Bubo appear to be incomplete, inaccurate, or simply false.

20.    On July 22, 2015, Bubo was assigned to Deputy Stroh.  During training, Deputy Stroh was conducting a building search in a dark abandoned building.  Bubo was sent into the building off leash to locate the agitator and Deputy Stroh followed Bubo into the building.  During the search, Bubo bit Deputy Stroh on his left forearm. (Exhibit JJJ, at CSD 002680.)

21.    Workers' Compensation forms were completed the same day and a supervisor completed a form that asked, "What actions has or will be taken to prevent reoccurrence?"  The supervisor wrote, "None.  Working and training with canines pose an inherent risk in and of itself.  There were no actions or failures to act that contributed to or could have prevented this condition." (Exhibit JJJ, at CSD 002680.)

22.    While Deputy Stroh was bitten by Bubo and the injuries from the bite caused Deputy Stroh to medically retire from the Sheriff's department (Exhibit D, at 15-16), Bubo's training records from July 22, 2015 – the day Bubo bit Deputy Stroh, do not indicate that he bit Deputy Stroh. (Exhibit V.) Indeed, if one were to merely review the training records for July 22, 2015, there would be no evidence that Bubo was performing other than at an acceptable level to be

1    deployed in the field.

2         23.    As discussed above, the Bubo deployment log does not include two

3    bites by Bubo.

4         24.    The policy of the San Diego Sheriff's Department is to report all K-

5    9 bites to the Department of Animal Control in a timely manner and in

6    compliance with local county ordinances. (Exhibit W at K9-014.)

7         25.    There are quarantine reports for two of Bubo's bites (Exhibit JJJ, at

8    CSD 002828-2829), yet Bubo had at least five bites.  Moreover, the quarantine

9    reports are inaccurate and misleading.

10        26.    The first was for a bite on May 21, 2015 of Michael Hartsell.

11   (Exhibit JJJ, at CSD 002829.)

12        27.    Two days later, Bubo was placed in quarantine from May 23, 2015

13   to June 1, 2015.  Bubo was described as a black Belgian Malinois and the report

14   states that he did not have any prior bites although it is uncontested that he bit

15   Mr. Myles on September 5, 2014, and according to one of the Department's bite

16   records, Bubo also had a bite incident on September 13, 2014. (Exhibit VV, at

17   K9-139 – 141.)

18        28.    The second was for a bite on June 24, 2015 for biting Jesus Estrada.

19   (Exhibit JJJ, at CSD 002828.) Two days later, Bubo was held in quarantine from

20   June 26, 2015 until July 5, 2015.  In that report, Bubo was described as a tan

21   male German Shepherd with a different animal ID number. That report also

22   states that Bubo had no prior bites although Bubo was quarantined just one

23   month prior for the Hartsell bite, and he had bitten Mr. Myles on September 5,

24   2014 and another individual on September 13, 2014.

25        29.    Bubo bit Mr. Myles and another individual in September 2014, and

26   Deputy Stroh in July 2015, yet there is no evidence that Bubo was quarantined

27   after any of those bites.

28        30.    The quarantine reports are concerning not only because Bubo was

apparently not quarantined for at least three of his bites, but also because the dog's description is so inconsistent it leads one to believe that different dogs may have been quarantined (black Belgian Malinois versus a tan male German Shepherd). Additionally, the reports alleged there were no prior bites when there were at least two prior bites before May 21st and at least three prior bites before June 24th.

31.    The records for Bubo raise a number of questions: Why are there such serious gaps, omissions, inconsistencies and errors in the documentation about Bubo? What was the full extent of Bubo's background, training, and deployment? How was Bubo deployed in the San Diego Jail? Was he properly retrained for patrol duty before being sent out into the public? Why were at least two bites by Bubo not listed on his deployment log?  What was Bubo's status between handlers?  Why wasn't Bubo quarantined after the bite to Myles, the bite on September 13, 2014, and the July 22, 2015 bite to Stroh?  Why did the Animal Services quarantine reports indicate no prior bites for Bubo?  Why did the Animal Services quarantine log describe Bubo so differently particularly when the reports are completed by animal services professionals who should be able to accurately describe an animal in their care? Why did Deputy Stroh's training report for the day he was bitten omit that information?  Why was Bubo suddenly retired and given to Deputy Banks when it was reported that Bubo was performing well on the same day? Was Deputy Banks an appropriate K9 handler for Bubo/"Hero"?

32.    The information provided through the additional discovery listed above serves to support my opinions as listed in my original reports and deposition testimony.

33.    I reserve the right to further supplement my opinions if additional materials or information become available. I also reserve the right to further supplement my opinions as time allows given the Department's late production

1   of materials so close to trial. For instance, I have yet to complete my review of
2   the Erin/Ryan Valdez materials, as it is my understanding that there is some
3   question regarding whether an IA investigation of the Valdez complaints was
4   actually done, and if it was, it is my understanding that those IA materials have
5   yet to be produced by the County. However, my initial input relating to the
6   Valdez complaints timeline is that the standard for IA investigations since at
7   least 2009 would have required the Department's IA to investigate even oral and
8   anonymous complaints against deputies such as Deputy Banks. *See* Exhibit LLL,
9   excerpts from a true and correct copy of US Department of Justice, Office of
10  Community Oriented Policing Services Guide entitled *An Internal Affairs*
11  *Promising Practices Guide for Local Law Enforcement;* Exhibit MMM, excerpts
12  from a true and correct copy of *Managing Accountability Systems for Police*
13  *Conduct*, by Jeffrey J. Noble and Geoffrey P. Alpert; and Exhibit NNN, excerpts
14  from a true and correct copy of *Law Enforcement Administrative Investigations*,
15  Third Edition, by Lou Reiter.

16      I declare under penalty of perjury under the laws of the State of California
17  and the United States that the foregoing is true and correct. Executed this 14th day
18  of July 2022, at Rancho Santa Margarita, California.

Jeffrey Noble