Browne Greene, SBN 38441
GREENE BROILLET & WHEELER, LLP
222 N. Pacific Coast Highway, Suite 2100
P.O. Box 955
El Segundo, California 90245
Telephone: (310) 576-1200
Facsimile: (310) 576-1220
Email:  bgreene@gbw.law

Daniel K. Balaban, SBN 243652
BALABAN & SPIELBERGER, LLP
11999 San Vicente Blvd., Suite 345
Los Angeles, California 90049
Telephone:  (424) 832-7677
Facsimile:  (424) 832-7702
Email:  daniel@dbaslaw.com

Joseph G. Dicks, SBN 127362
Linda G. Workman, SBN 128621
DICKS & WORKMAN ATTORNEYS AT LAW, APC
7825 Fay Avenue, Suite 120
La Jolla, California 92037
Telephone: (619) 685-6800
Facsimile: (619) 557-2735
Email:  jdicks@dicks-workmanlaw.com; lworkman@dicks-workmanlaw.com

Holly N. Boyer (SBN 221788)
Shea S. Murphy (SBN 255554)
ESNER, CHANG & BOYER
234 East Colorado Boulevard, Suite 750
Pasadena, California   91101
Telephone: (626) 535-9860
Facsimile: (626) 535-9859
Email:  hboyer@ecbappeal.com; smurphy@ecbappeal.com

Attorneys for MICKAIL MYLES, Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| MEMORANDUM OF POINTS AND AUTHORITIES | *Myles v. County of San Diego, et al.* Case No. 15-cv-1985-JAH (BLM) |
|---|---|

| | |
|---|---|
| MICKAIL MYLES, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, by and through the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, a public entity; and DEPUTY J. BANKS, an individual,<br><br>        Defendants. | Case No. 15-cv-1985-JAH (BLM)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>**[REDACTED – PUBLIC VERSION]**<br><br>Judge: Hon. John A. Houston<br>Magistrate: Hon. Barbara Lynn Major<br><br>Complaint Filed: September 4, 2015 |

## I. INTRODUCTION

Since this Court entered sanctions against Defendants just over one month ago, Plaintiff has learned once again that more egregious discovery abuses by the County of San Diego and Deputy Banks have still been on ongoing. Despite the meet and confer efforts made by Plaintiff to curtail these practices, and despite this Court's recent sanctions order, Defendants continue to abuse the discovery process and suppress evidence, with the obvious goal of creating an incomplete factual record which Defendants can then exploit during trial, as they did with summary judgment. In response, Plaintiff reinstates his request to this Court to grant terminating sanctions in the form of a directed verdict on liability as to all claims and causes of action against Defendants, or, in the alternative, instruct the jury on Defendants' willful failure to disclose information during discovery.

## II. DEFENDANTS' PRIOR AND ONGIONG DISCOVERY ABUSES

As detailed in Plaintiff's first motion for sanctions, Defendants' efforts to conceal the wrongdoing of Deputy Banks, and the County of San Diego itself, has been considerable. To begin with, in 2016, Plaintiff learned through a series of internet searches that Defendants had withheld responsive evidence relating to a number of excessive force incidents involving Deputy Banks, including the 2013 homicide of Hugo Barragan (wherein Banks allowed his K9 to chew the ear off of Mr. Barragan while Barragan was hog-tied with the K9's leash), as well as Deputy Banks' 2015 chokehold and tasing of a 13 year old skateboarder (which a witness recorded and uploaded to YouTube, where it went viral). After meeting and conferring extensively with County Counsel, and moving to compel, Plaintiff was provided with previously undisclosed evidence of Banks' uses of force as to those incidents, as well as assurances from Defendants' counsel that such an omission would not occur again.

Based on these representations, Plaintiff was led to believe that Defendants' failure to disclose this evidence was the result of anomalous error,

MEMORANDUM OF POINTS AND AUTHORITIES    -1-    *Myles v. County of San Diego, et al.*  Case No. 15-cv-1985-JAH (BLM)

and that Defendants would thereafter take their Rule 26 discovery duties seriously. As such, Plaintiff did not elect to pursue sanctions at that time. Meanwhile, Defendants won their opposition to Plaintiff's motion to add head Sheriff William Gore as a defendant and won their motion for summary judgment on Plaintiff's *Monell* claim.

Nevertheless, in early June 2022, Plaintiff discovered by yet another internet search that Defendants were again withholding evidence regarding the aggressive tendencies and general unfitness of the K-9 "Bubo," based in part on Bubo's July 2015 bite of K9 handler Deputy Trent Stroh and failure to document same, which was required to be disclosed pursuant to FRCP Rule 26.

After learning of Defendants' ongoing willful refusal to turn over required discovery, Plaintiff sought and was given leave from this Court to file a motion for sanctions. Remarkably, however, during the meet and confer process for that first sanctions motion, it became clear that Defendants had been withholding evidence of complaints made to the Sheriff's Department Internal Affairs Unit by Erin Valdez regarding excessive use of force by Deputy Banks. Despite pending discovery requests, and their duty to disclose under Rule 26, the County had categorically denied receiving the Valdez complaints (let alone that they prompted an IA investigation).

After hearing Plaintiff's first sanctions motion in July 2022, this Court entered sanctions against Defendants, which included the reinstatement of Plaintiff's *Monell* claim against the County. But Defendants' abusive conduct did not end with these sanctions; far from it. Defendants have again been revealed to be willfully refusing to turn over highly relevant and damning discovery that they were required to turn over under Rule 26. Specifically, the following has been revealed:

**On July 19, 2022**, the parties exchanged trial exhibits as ordered by this Court in advance of trial which, at that time, was scheduled to begin on July 25,

2022. While Defendants have not yet produced a complete set of trial exhibits, a number of the trial exhibits that Defendants did produce contained evidence which had not been previously identified or produced by Defendants in response to Plaintiff's discovery requests, were not previously produced by Defendants in supplemental disclosures under Rule 26, and were not disclosed in any of the four privilege logs previously served by Defendants.

While Plaintiff and his police practices expert have not had sufficient time to conduct a complete review of Defendants' July 19, 2022 exhibit production, of immediate concern are three private investigator reports that were included:

1. A report to the County dated April 7, 2016, by private investigator Robert Abel and marked as Defendants' Exhibit 1066, summarizing his in-person taking of a follow-up recorded statement of Stephne Sales on March 18, 2016, wherein – per PI Abel -- Mrs. Sales "denied the key point attributed to her in the Sheriffs' reports: that *she* identified – to the on-scene deputies" the Myles' vehicle as being the one involved in the doorbell ditch activity that neighbors had complained about;

2. A seven-page report to the County dated October 21, 2016, by private investigator Mark Horne marked as Defendants' Exhibit 1058, summarizing over twelve hours of surveillance by a four investigator team assigned to monitor Plaintiff and his attorneys on October 19, 2016, the date of the Mandatory Settlement Conference in this case;

3. A follow up report by PI Horne dated October 28, 2016, marked as Defendants' Exhibit 1021, containing surveillance photos and a link to over an hour of video recording of Plaintiff and his attorneys from 8:36 a.m. to 9:16 pm on the date of the MSC.

Two of these reports (Defendants' Exhibits 1021 and 1066) were forwarded by the County in January 2017 to Defendants' outside counsel at the Manning law firm, including lead trial counsel Mildred O'Linn. And Defendants

listed PI Horne as a percipient witness on all iterations of their witness lists. Nevertheless, these reports were not disclosed to Plaintiff prior to July 19, 2022, despite the fact that Plaintiff's Request for Production No. 4 had specifically requested during discovery: "Any and all DOCUMENTS pertaining to the surveillance of PLAINTIFF, DEPUTY BANKS, the investigating officers, or any other involved parties or witnesses…." In fact, Defendants responded to this request by stating there were "none," did not update this response, and did not list the three reports in their previous four privilege logs.[1]

    Other reports disclosed by Defendants for the very first time during the July 19, 2022 exchange of trial exhibits included two reports by the Critical Incident Review Board (CIRB) addressing two use of force incidents involving Deputy Banks:

1. A CIRB report marked as Defendants' Exhibit 1054, addressing a September 13, 2014 use of force by Deputy Banks and canine deployment of "Bubo" against a 15-year-old Hispanic minor stopped by Banks and six other deputies for suspected vehicle theft.
2. A CIRB report marked as Defendants' Exhibit 1055, addressing Deputy Banks' March 6, 2015 use of force against a Hispanic son caught in an apparently heated family disturbance involving his father.

    Despite the fact that Plaintiff's Request for Production Number 29, asked

---

[1] Beyond failing to disclose these materials, the nature of the surveillance itself raises serious concerns about possible improprieties related to Defendants' surveillance of Plaintiff's communications with his attorneys about this case (including the events of the MSC), as well as Plaintiff's communications without his attorneys being present. [remainder redacted]

MEMORANDUM OF POINTS AND AUTHORITIES     -4-     Myles v. County of San Diego, et al. Case No. 15-cv-1985-JAH (BLM)

for "[a]ny and all DOCUMENTS that refer, relate to or otherwise evidence any and all investigations into alleged on the job wrongdoings by DEPUTY BANKS or any of the other deputies or supervisors responding to the INCIDENT, from the date of his initial hire to the present, including all internal e-mail, memorandum or other internal communications relating thereto", these reports were not previously produced in discovery, not listed on any of Defendants' privilege logs[2], and were not disclosed under Rule 26 even during meet and confer efforts during the pendency of Plaintiff's June 2022 sanctions motion.

Furthermore, the very existence of the March 6, 2015 incident (alternately cited as March 17, 2015, elsewhere in the CIRB report) had never been disclosed to Plaintiff before, and illustrates a pattern of force used by Deputy Banks against young males of color. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

This was not the only additional use of force incident that Defendants hid from Plaintiff during discovery and throughout the pendency of Plaintiff's first sanctions motion.

**On August 6, 2022**, County Counsel Ronald Lenert emailed Plaintiff's counsel late that Saturday afternoon to disclose for the very first time that "an additional confirmation search was made within the Sheriff's Department" such that attorney Lenert was informed the day before about an additional IA

---

[2] Defendants' August 12, 2022 claims of privilege and work product as to the CIRB reports are unfounded. *See Estate of Silva by and through Allen v. City of San Diego*, 2020 WL 6741680; *see also Medina v. County of San Diego*, 2014 WL 4793026. In fact, to the extent that any such claim of privilege existed, it was waived by Defendants' failure to identify any such reports in its five privilege logs. *See Medina, supra* at pp. 11-12. Similarly, Defendants' August 3-4, 2022 claims of privilege and work product as to its private investigator reports are also waived for the same reason.

1  investigation relating to Defendant Banks. Though no signed verification was
2  provided, attached to attorney Lenert's email were 110 pages of IA investigation
3  materials initiated by a February 18, 2017 citizen email regarding a use of force
4  by Defendant Banks on a 21-year-old Hispanic pedestrian named Amadeus
5  Lopez.

6  The February 18, 2017 citizen complaint was made by a motorist-witness
7  who emailed the San Diego Sheriff Department within an hour of witnessing the
8  use of excessive force by Deputy Banks. ███████████████████████
9  ████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████
11 ████████████████████████████████████████████████
12 ████████████████████████████████████████████████
13 ████████████████████████████████████████████████
14 ████████████████████████████████████████████████████
15 ██████████████████████████████████████████
16 ████████████████████████████████████████████
17 ████████████████████████████████████████████████
18 ██████

19 Clearly, both the February 18, 2017 Lopez use of force incident, and the
20 March 16, 2015 use of force incident, should have been disclosed to Plaintiff
21 under Rule 26 many years earlier. Defendants' failure to disclose these incidents,
22 even throughout the pendency of Plaintiff's June 2022 sanctions motion, further
23 proves the willfulness of the Defendants' abusive conduct in this litigation.

24 **III.   DEFENDANTS' REPEATED ABUSES JUSTIFY**
25 **TERMINATING SANCTIONS**

26 Despite the fact that this case has now been pending for seven years, and
27 that Defendants have been under an ongoing obligation to respond to and update
28 discovery requests propounded by Plaintiff, there is little about the evidentiary

record that can be said with any measure of confidence. In fact, the only thing that can be said with certainty is that Defendants have proven themselves to be willfully (and even recklessly) duplicitous throughout the pendency of the lawsuit, thus denying Plaintiff timely access to the relevant evidence which he needs, and to which he is lawfully entitled, in order to prove up his claims. As recently as last week, Defendants' pattern of willfully concealing evidence from Plaintiff was once again revealed, which begs the question: given the number of times Defendants have been caught concealing evidence, what other evidence of Defendants' wrongdoing exists that Defendants are still suppressing?

But, beyond the very real possibility of an incomplete evidentiary record, even assuming hypothetically that last week's big Lopez reveal constitutes a complete disclosure of all discoverable evidence, how is Plaintiff to be expected to review this evidence and conduct any additional discovery or investigation before trial is set to begin? And more fundamentally, to what extent has this case already been indelibly shaped by the clear duplicity of Defendants and their counsel?

In light of these issues, Plaintiff now requests sanctions in the following form. First, Plaintiff requests an order entering judgment on liability against Defendants on Plaintiff's claims. This is an especially appropriate sanction for the County for liability under Plaintiff's recently reinstated *Monell* claim given that the County's continued unwillingness to produce discovery responses confirms the existence of misconduct substantiating liability under *Monell*. Alternatively, Plaintiff seeks sanction in the form of a jury instruction on the County's willful failure to disclose information during discovery, as was done in *K.J.P., et al. v. County of San Diego/Fischer* 15-cv-02692-H-MDD.

Under Federal Rule of Civil Procedure Rule 37, a failure to propound responses to discovery requests may warrant the imposition of a wide range of sanctions. The court may even impose terminating sanctions where the failure to

respond to discovery requests is willful or bad faith unwillingness. *See Sanchez v. Rodriguez* (C.D. Cal. 2014) 298 F.R.D. 460, 463. Willfulness and bad faith "does not require wrongful intent; rather, disobedient conduct not shown to be outside the party's control is by itself sufficient to establish willfulness, bad faith, or fault. … (quoting *Jorgensen,* 320 F.3d at 912, and citing *Henry,* 983 F.2d at 948); *see also Hyde & Drath v. Baker,* 24 F.3d 1162, 1167 (9th Cir.1994) (citing *Henry,* 983 F.2d at 948)." *Id.* at 463.

Here, given that Defendants were subject to sanction by this Court for their failure to complete and update their discovery responses just one month ago, the fact that Defendants have again been found not to be disclosing highly relevant materials regarding not only Deputy Banks' misconduct, but the County's pattern of sweeping Banks' acts of misconduct under the rug, demonstrates willfulness. *See Sanchez*, 298 F.R.D. at 470-71. Indeed, the fact that the County has refused to turn over evidence of Banks' misconduct only serves as compelling evidence that the County is engaged in conduct sufficient to support *Monell* liability.

In addition to finding willfulness, bad faith, or fault, before case-dispositive sanctions may be ordered per Rule 37, "a court must consider and weigh the following five factors: (1) the public interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on the merits; and (5) the availability of less drastic sanctions. *See, e.g., Connecticut General,* 482 F.3d at 1096; *Henry,* 983 F.2d at 948." *Sanchez*, 298 F.R.D. at 469–470; *see Valley Eng'rs, Inc. v. Elec. Eng'g Co.,* 158 F.3d 1051, 1057 (9th Cir.1998).

Here, all the factors weigh heavily in favor of a sanctions order entering liability against Defendants on Plaintiff's claims. *See Sanchez*, 298 F.R.D. at 472-473. Broadly speaking, Defendants' ongoing unwillingness to meet its

discovery requirements has now, after seven years, immutably compromised Plaintiff's ability to avail himself of the rights he has been granted under law. Indeed, beyond the copious resources that have been squandered on Defendants' cover-up practices, it is now no longer possible for Plaintiff to have a fair opportunity to fully present his case at trial. The net effect on Plaintiff of having been denied the discovery and additional discovery opportunities that resulted from Defendants' repeated and willful suppression of evidence is so prejudicial that a fair trial is impossible. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1166-1167 (9th Cir. 1994), *citing United States ex rel. Wiltec Guam. Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 604 (9th Cir. 1988.) Thus, Plaintiff reinstates his request to this Court to grant terminating sanctions in the form of a directed verdict on liability as to all claims and causes of action.

Alternatively, Plaintiff also requests that if this Court decides not to impose terminating sanctions, a jury admonition be given on Defendants' willful failure to disclose information in discovery.

## IV.  CONCLUSION

In light of the facts and for the reasons set forth above, the Court should issue the following sanctions:

1. A directed verdict for Plaintiff as against Defendants as to liability on all claims and causes of action;
2. A strike of the answer and all affirmative defenses of Defendants; and
3. Instructions to the Jury on Defendants' willful failure to disclose information in discovery, as was done in *K.J.P., et al. v. County of San Diego/Fischer* 15-cv-02692-H-MDD.

Dated: August 15, 2022

DICKS & WORKMAN ATTORNEYS AT LAW, APC

By: /s/ Joseph G. Dicks
Joseph G. Dicks
Attorneys for Mickail Myles, Plaintiff