Browne Greene, SBN 38441
GREENE BROILLET & WHEELER, LLP
222 N. Pacific Coast Highway, Suite 2100
P.O. Box 955
El Segundo, California 90245
Telephone: (310) 576-1200
Facsimile: (310) 576-1220
Email:  bgreene@gbw.law

Daniel K. Balaban, SBN 243652
BALABAN & SPIELBERGER, LLP
11999 San Vicente Blvd., Suite 345
Los Angeles, California 90049
Telephone:  (424) 832-7677
Facsimile:  (424) 832-7702
Email:  daniel@dbaslaw.com

Joseph G. Dicks, SBN 127362
Linda G. Workman, SBN 128621
DICKS & WORKMAN ATTORNEYS AT LAW, APC
7825 Fay Avenue, Suite 120
La Jolla, California 92037
Telephone: (619) 685-6800
Facsimile: (619) 557-2735
Email:  jdicks@dicks-workmanlaw.com; lworkman@dicks-workmanlaw.com

Holly N. Boyer (SBN 221788)
Shea S. Murphy (SBN 255554)
ESNER, CHANG & BOYER
234 East Colorado Boulevard, Suite 750
Pasadena, California   91101
Telephone: (626) 535-9860
Facsimile: (626) 535-9859
Email:  hboyer@ecbappeal.com; smurphy@ecbappeal.com

Attorneys for MICKAIL MYLES, Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHISN DISTRICT OF CALIFORNIA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MICKAIL MYLES, an individual,

                Plaintiff,

v.

COUNTY OF SAN DIEGO, by and through the SAN DIEGO COUNTY SHISIFF'S DEPARTMENT, a public entity; and DEPUTY J. BANKS, an individual,

                Defendants.

Case No.  15-cv-1985-JAH (BLM)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AND FOR FEES AND COSTS UNDER 42 U.S.C. §1988 AND CALIFORNIA CIVIL CODE §52.1(i)**

Judge:     Hon. John A. Houston
Crtrm:     13B

Complaint Filed:  September 4, 2015

# TABLE OF CONTENTS

I. INTRODUCTION.................................................................................................. 1

II. PLAINTIFF IS ENTITLED TO FEES AND COSTS UNDER

  42 U.S.C. § 1988 AND CAL. CIV. CODE §52.1 (i) AND RULE 37.............. 5

    A. PLAINTIFF IS, UNEQUIVOCALLY, THE PREVAILING

      PARTY ............................................................................................... 8

    B. LODESTAR CALCULATION – REASONABLE

      HOURLY RATE .................................................................................. 8

    C. LODESTAR CALCULATION – HOURS REASONABLY

      EXPENDED…………………………………………….…………..11

    D. LODESTAR MULTIPLIER…………………………….…………16

    E. PLAINTIFF IF FURTHER ENTITLED TO HIS REASONABLE

      OUT-OF-POCKET LITIGATION COSTS AS RECOVERABLE

      UNDER 42 U.S.C. §1988 AND CIVIL CODE SECTION 52.1(i)…….22

    F. PLAINTIFF IS ENTITLED TO SANCTIONS IN THE AMOUNT

      OF $9,512,765.15, REPRESENTING ALL FEES AND COSTS

      REQUESTED HEREIN…………………………………………......23

III. CONCLUSION…………………………………………………………..25

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Balia v. Idaho State Board of Correction*,
   2016 WL 6762651 (D. Idaho 2016)..................................................22

4

5

*Ballen v. City of Redmond,* 466 F.3d 736 (9th Cir.2006)...............................6, 17

6

*Barnard v. Theobald*, 721 F.3d 1069 (9th Cir.2013) ............................................5

7

*Blackwell v. Foley*, 724 F. Supp. 2d 1068 (N.D. Cal. 2010)...............................12

8

*Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) ....8, 9, 21

9

*Bouman v. Block*, 940 F.2d 1211 (9th Cir. 1991)...................................................6

10

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir.2008) ....................9, 16

11

*Cervantes v. Cnty of Los Angeles*,
   No. 12-09889 DDP (MRWx), 2016 WL 756456 (C.D. Cal. Feb. 24, 2016) ...11

12

*Chalmers v. City of Los Angeles,* 796 F.2d 1205 (9th Cir. 1986) .........................8

13

*Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991)......................................................25

14

*Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014).........................5

15

*Christian Research Institute v. Alnor*, 165 Cal.App.4th 1315(Cal.App.2008)......7

16

*City of Burlington v. Dague,* 505 U.S. 557 (1992)..............................................16

17

*City of Riverside v. Rivera,* 477 U.S. 561 (1986)..................................................6

18

*Clark v. City of Los Angeles*, 803 F.2d 987 (9th Cir. 1986)...............................15

19

*Cole v. City of Memphis*, Tenn., 2015 WL 5076974 (W.D. Tenn. 2015)............22

20

*Connecticut General v. New Images,* 482 F.3d 1091 (2007)...............................24

21

*Davis v. City and County of San Francisco,* 976 F.2d 1536 (9th Cir.1992)........10

22

*Dowd v. City of Los Angeles*,
   No. CV 09–06731 SS, 28 F.Supp.3d 1019 (C.D. Cal. 2014) ...........................11

23

24

*E-Pass Techs., Inc. v. 3Com Corp.*,
   Civ. No. 00-2255 DLJ, 2007 WL 4170514 (N.D. Cal. Nov. 14, 2007) ..........11

25

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir.2012)..............16

26

*Fischer v. SJB–P.D. Inc.,* 214 F.3d 1115 (9th Cir.2000) .....................................7

27

*Fox v. Vice*, 563 U.S. 826 (2011) ..........................................................................7

28

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) ...........................................9

*Glass v. Pfeffer*, 849 F.2d 1261 (10th Cir. 1988)..........................................15

*Gonzales v. City of San Jose*, 2016 WL 3011791 (N.D. Cal. 2016)....................21

*Gonzalez v. City of Maywood,* 729 F.3d 1196 (9th Cir.2013) ........................7, 16

*Goodyear Tire & Rubber Co. v Haeger*, 137 S. Ct. 1178 (2017) .......................25

*Guam Soc'y of Obstetricians and Gynecologists v. Ada,*
   100 F.3d 691 (9th Cir.1996) ........................................................9

*Hartsell v. County of San Diego/Stroh*, USDC Case No. 16-cv-1094-LAB-JMA 2

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)passim

*Hernandez v. George*, 793 F.2d 264 (10th Cir. 1986) ..................................16

*Hernandez v. Kalinowski,* 146 F.3d 196 (3rd Cir. 1998)................................15

*Hyde & Drath v. Baker,* 24 F.3d 1162 (9th Cir.1994) ..............................24, 25

*Jordan v. Mutnomah County,* 815 F.2d 1258 (9th Cir. 1987)..........................12

*K.J.P., et al. v. County of San Diego/Fischer*,
   USDC Case No. 15-cv-02692-H-MDD.....................................................2

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016)...........................................passim

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir.1975)..........................16

*Lund v. Affleck*, 587 F.2d 75 (1st Cir.1978)...............................................16

*Monell v. Dep't of Soc. Servs. of City of N.Y*, 436 U.S. 658 (1978)............passim

*Moore v. Brunner,* 2010 WL 317017 (S.D. Ohio 2010) ....................................21

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir.1996) ...........................7, 17

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ....................11, 12

*Odima v. Westin Tucson Hotel*, 53 F.3d 1484 (9th Cir. 1995)..............................6

*Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542 (2010)..............................5, 7, 17

*Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010)................9

*Rodriguez v. County of Los Angeles*, No. 10–6342–CBM (AJWx)....................10

*Sanchez v. Rodriguez* (C.D. Cal. 2014) 298 F.R.D. 460 ..............................24, 25

*Serrano v. Unruh,* 32 Cal.3d 621 (1982).....................................................6

*Thomas v. City of Tacoma,* 410 F.3d 644 (9th Cir. 2005)................................5

*Trustees of Const Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006) ........................................23

*United States ex rel. Wiltec Guam. Inc. v. Kahaluu Const. Co.*, 857 F.2d 600 (9th Cir. 1988.) ................................................................25

*United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100 (9th Cir. 2015) .....9

*Valley Eng'rs, Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051 (9th Cir.1998)................25

*Van Skike v. Director, Office of Workers' Compensation Programs*, 557 F.3d 1041 (9th Cir.2009) ........................................................6, 9

*Welch v. Metro. Life Ins. Co.*, 480 F.3d 942 (9th Cir.2007) ................................9

**Statutes**

28 U.S.C. § 1920 ...........................................................................23

42 U.S.C. §1983 .....................................................................passim

42 U.S.C. § 1985 ...............................................................................1

42 U.S.C. §1988 .....................................................................passim

California Civil Code §52.1(i)..................................................passim

**Other Authorities**

Civil Rights Attorney's Fees Awards Act of 1976 .................................1

**Rules**

Federal Rules of Civil Procedure, Rule 11................................................24

Federal Rules of Civil Procedure, Rule 37.................................1, 5, 23

Plaintiff MICKAIL MYLES submits the following Points and Authorities in support of his Motion for Fees and Costs.

## I.  INTRODUCTION

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988, as well as California Civil Code §52.1(i) authorizes an award of reasonable attorney's fees and costs in civil rights litigation. Specifically, section1988(b) authorizes the Court to award the prevailing party a reasonable attorney's fee in any suit to enforce the provisions of 42 U.S.C. §1983, while section 52.1(i) provides the same to enforce the provisions of section 51.2. As the prevailing party on all claims brought under these statutes, Mr. Myles brings the instant motion to recover his attorney's fees and costs pursuant thereto. Plaintiff separately seeks his entitlement to all his fees and costs reasonably incurred in the prosecution of his claims submitted to the jury, all of which he prevailed upon, as sanctions under FRCP 37.

The purpose of §§1988 and 52.1(i) is to ensure effective access to the judicial process for persons with civil rights grievances. The provision and award of reasonable and compensatory fees encourages the vindication of constitutional (here, both Federal and State Constitutional rights) and statutory rights. This purpose is particularly applicable in the case at bar.

The incident giving rise to this action occurred on September 5, 2014. Plaintiff timely filed his government claim on February 26, 2015. Plaintiff timely filed this civil action on September 4, 2015, just shy of the one-year anniversary of his abuse at the hands of Defendant Banks and his K-9 partner.

Within a month of filing his complaint, Mr. Myles served his discovery requests, which were appropriately tailored to the claims and causes of action presented in his complaint. From that date on, as is well documented in Mr.

/ / /

/ / /

Myles' two motions for sanctions filed on June 16, 2022, and August 15, 2022,[1] Defendants, County Counsel, and outside counsel separately retained by Defendant County of San Diego (hereinafter "County") engaged in a willful, bad faith pattern of obfuscation, deception, suppression, manipulation and evasion[2], costing Mr. Myles precious time, money, effort, physical and emotional hardship in the form of continuing depression, anxiety, degradation, exhaustion and humiliation, and causing him to question the very justice system he counted on as the only acceptable forum to seek to right the wrongs he had suffered.

So severe were the discovery abuses inflicted on Mr. Myles that his counsel were forced to re-take many depositions, file otherwise unnecessary motions, oppose Defendants' motions without the information and documents Defendants had in their possession that would assist in Mr. Myles' opposition efforts, attempts to locate (on the eve of and during trial) witnesses and documents that should have been disclosed six years earlier, and review "on the fly" (on the eve of and during trial) a plethora of documents Defendants produced only because Mr. Myles learned of them (despite Defendants' efforts to conceal them) through his own counsel's internet searches or belatedly from Defendants only as a result of pressure brought by Plaintiff's two sanctions motions. The very last of these newly produced documents were turned over to Mr. Myles on September 12, 2022, the first day of trial, but others remain unproduced.

This case has been an extraordinary one since the night Mr. Myles was brutally beaten and bitten by Defendant Jeremy Banks and his K-9, all while in custody, under control, bent over the back of a patrol car, held down by two

---

[1] Plaintiff incorporates herein by this reference all documents, filings, exhibits and declarations filed in support of these motions.

[2] This pattern and practice is not limited to this case. *See* cases before The Honorable Marilyn Huff, in *K.J.P., et al. v. County of San Diego/Fischer*, 15-cv-02692-H-MDD, and The Honorable Larry Burns, in *Hartsell v. County of San Diego/Stroh*, 16-cv-1094-LAB-JMA.

sheriff's deputies, and handcuffed.[3]  Banks' abuse resulted in Myles' physical scarring, traumatic brain injury, and PTSD. Moreover, while not a race-based discrimination case by the time of trial, both Plaintiff's and Defendants' experts agreed that the psychological impact Mr. Myles suffered that night, and will suffer for the rest of his life, is compounded by the fact that the four deputies involved in the incident were white and Mr. Myles is black, with trauma triggered, for example, every time Mr. Myles hears news of racially biased policing practices.

This case is also extraordinary because of the evidence introduced at trial that proved Mr. Myles was only one of many other victims of Defendant Banks' uncontrolled outbursts of excessive and unreasonable force, as summarized in Plaintiff's Demonstrative Exhibit P464. One of Banks' outbursts even involved the in-custody death of hog-tied detainee, Hugo Barragan, whose ear was chewed by Banks' K-9.

Further evidence of the extraordinary nature of this case is the overwhelming evidence introduced at trial of the County's failure to investigate[4], failure to train, and failure to discipline, as well as the County's repeated

---

[3] Mr. Myles' deposition and trial testimony that he was hit over the head with what he believed was a metal object while handcuffed, is similar to Deputy Banks' documented use of force on Jessie Alvarez six months later on March 6, 2015, wherein Banks struck Alvarez on the head with his mace canister while handcuffed. The existence of the Alvarez incident and evidence relating to the similarity of force used, was hidden from Plaintiff until July 19, 2022. *See* Trial Exhibit 440-4.

[4] Ironically, Defendants contended, in its opening statement and closing argument, that the County *had* investigated all of Banks' uses of force, pointing to the signatures on the UOF Supplements of a sergeant, lieutenant and captain, the Barragan homicide investigation, the two CIRB reports re the minor and Alvarez incidents that Defendants allegedly "inadvertently" disclosed, and the IA investigations in Valdez and Lopez, wrongfully withheld until trial. The ironic and disingenuous nature of these arguments is remarkable given that the ***Defendants never even acknowledged the existence of these CIRBs or IA investigations*** and, further, argued against producing all of Banks' UOF supplements, even the 17 identified in the Eglin cross-exam and trial Exhibit 439, claiming that they were not responsive to Plaintiff's discovery requests for "investigations into Bank's conduct". *See* Exhibit A to Dicks Decl., Trial Transcript October 4, 2022, 4720:19 – 4721:9.

1    ratification of Defendant Banks' criminal misconduct, at every level, from

2    supervising sergeants to Head Sheriff William Gore himself.

3         The extraordinary nature of this case is further evidenced by the Court's

4    findings, after Plaintiff's two separate sanctions motions, that the County of San

5    Diego (including through both the County Counsel's office and its retained

6    outside counsel) willfully and in bad faith suppressed evidence relating to

7    Defendant Banks' uses of force and failures to investigate said uses of force. The

8    County and its counsel further willfully withheld, in bad faith, the County's

9    efforts to surveil Mr. Myles, his father, and his counsel, without ever identifying

10   any of these documents in any of its five separate privilege logs, all signed by

11   County Counsel Ron Lenert. These unprecedented instances of willful evidence

12   suppression spanned a period of seven years – with some of the documents only

13   being turned over during trial in this matter, and others which were revealed at

14   trial, yet still never produced despite being extremely probative to Plaintiff's

15   claims and causes of action against both Defendant Banks and Defendant

16   County. *See* Trial Transcript October 4, 2022 (Exhibit A to Declaration of Joseph

17   G. Dicks ("Dicks Decl.") filed herewith), at 4650:17-24 and 4720:19 – 4721:6,

18   wherein the Court expressed that it was "appalled" to hear that after two

19   sanctions motions against Defendants for suppressing evidence, Plaintiff learned,

20   on the cross-examination of former I.A. Lt. Eglin, that she had identified and

21   looked into **17 uses of force by Banks in a one-year period**, none of which were

22   ever disclosed to Plaintiffs.

23        During trial, the extraordinary nature of this case was further demonstrated

24   by Defendants' unconscionable violation of the Court's order, **on Defendants'**

25   **own motion**, to exclude **all** witnesses from the courtroom prior to testifying

26   (including experts), by providing many of its witnesses with daily trial transcripts

27   in advance of their scheduled trial testimony, in a clear attempt to taint that

28   testimony to gain a strategic and unfair advantage over Plaintiff at trial.

---

1    Finally, the extraordinary nature of this case was highlighted by the

2    equally unprecedented, outrageous and obvious display by Defendants' trial

3    counsel of her disdain, frustration and disgust of Plaintiff's cross-examination of

4    Defendant Banks, all in full view of the jury, after the Court had previously

5    admonished all parties, their counsel and spectators in the courtroom, not to

6    engage in conduct which the Court described as "a heckler's veto." <u>Exhibit A</u> to

7    Dicks Decl., Trial Transcript, September 21, 2022, 1828:9 – 1832:17.

8    It is against this backdrop that Plaintiff prays for sanctions in the form of

9    payment of all of his attorney's fees with a 2x multiplier, as well as all expert

10   fees and costs reasonably incurred in the prosecution of his case – a case that was

11   made far more difficult, time-consuming, expensive and risky because of the

12   above abuses.

13   **II.    PLAINTIFF IS ENTITLED TO FEES AND COSTS UNDER 42**

14   **U.S.C. §1988 AND CAL. CIV. CODE §52.1(i) AND RULE 37**

15   "A party who prevails on a claim under § 1983 is entitled to reasonable

16   attorneys' fees unless special circumstances would render such an award unjust."

17   *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014), citing 42

18   U.S.C. § 1988(b); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76

19   L.Ed.2d 40 (1983). A plaintiff prevailing on his or her Section 1983 claim

20   "'should ordinarily recover an attorney's fee unless special circumstances would

21   render such an award unjust.'" *Thomas v. City of Tacoma,* 410 F.3d 644, 647

22   (9th Cir. 2005) (quoting *Hensley*, supra, at 429); *see also*, *Barnard v. Theobald*,

23   721 F.3d 1069,1077 (9th Cir.2013) ("'a court's discretion to deny fees under §

24   1988 is very narrow and ... ***fee awards should be the rule rather than the***

25   ***exception***.'"). (Emphasis added.)

26   As repeatedly held by the Supreme Court, the purpose of §1988 is "to

27   ensure that federal rights are adequately enforced." *See Perdue v. Kenny A. ex*

28   *rel. Winn,* 559 U.S. 542, 550 (2010); *Hensley v. Eckerhart*, 461 U.S. 424, 429

(1983) (the purpose of 42 U.S.C. §1988 is to ensure effective access to the judicial process for persons with civil rights grievances). In light of such public policy, courts have consistently held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party. *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991); *Hensley*, 461 U.S. at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."). If the rule were otherwise, attorneys would be discouraged from taking on high risk cases such as this one. *Id*.; *see also*, *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal.3d 621 (1982).

A fully compensatory fee is one that encourages the vindication of constitutional and statutory rights through recovery of ***all costs and time spent on this case***, calculated at private market rates.[5] *See City of Riverside v. Rivera*, 477 U.S. 561, 581 (1986). "The Supreme Court has stated that the lodestar is the 'guiding light' of its fee-shifting jurisprudence, a standard that is the fundamental starting point in determining a reasonable attorney's fee." *Van Skike v. Director, Office of Workers' Compensation Programs*, 557 F.3d 1041, 1048 (9th Cir.2009); *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir.2006) ("In the Ninth Circuit, the customary method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method"); *see also, Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (the Ninth Circuit employs the "lodestar" method to determine a reasonable attorney's fees award under § 1988).

Under the lodestar calculation, a reasonable fee is the product of "the

---

[5] Plaintiff's cost bill identifies only taxable costs. This motion, as well as the declarations and exhibits thereto, identify, itemize and request payment of ***all*** costs reasonably incurred in the prosecution of Plaintiff's claims.

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. The prevailing party bears the burden of establishing the reasonableness of the attorney's hourly rates. The court has broad discretion in evaluating a fee award because trial judges "are in the best position to assess the value of the professional services rendered in their courts." *Christian Research Institute v. Alnor*, 165 Cal.App.4th 1315, 1321 (Cal.App.2008). As recently explained by the Ninth Circuit in *Kelly*: "The lodestar method is a two-step process." *Fischer v. SJB–P.D. Inc.,* 214 F.3d 1115, 1119 (9th Cir.2000).

First, a court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *Id*. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.' [Citation]. The lodestar figure 'roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case,' [citation], and is therefore a presumptively reasonable fee. *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1202 (9th Cir.2013). Second, the court determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure. *See Perdue, 559* U.S. at 553–54, 130 S.Ct. 1662; *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 & n. 8 (9th Cir.1996), as amended on denial of reh'g, 108 F.3d 981(9t h Cir.1997)." *Kelly*, at 1099.

In determining the size of an appropriate fee award, the Supreme Court has emphasized that courts need not "achieve auditing perfection" or "become green eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("We emphasize, as we have before, that the determination of fees 'should not result in a second major litigation.'"). Rather, because the "essential goal of shifting fees . . . is to do rough justice," the court may "use estimates" or "take into account [its] overall sense of a suit" to determine a reasonable attorney's fee. *Id.*

### A. PLAINTIFF IS, UNEQUIVOCALLY, THE PREVAILING PARTY.

There can be no legitimate dispute that Plaintiff MICKAIL MYLES was the prevailing party in this litigation. As to each and every one of his claims as against Defendant Banks and Defendant County submitted to the jury, Plaintiff secured judgment by a unanimous verdict, including under 42 U.S.C. §1983 and California Civil Code §52.1 against Defendant Banks for violation of his federal and state constitutional rights when Mr. Myles was beaten and bitten while handcuffed, under control and not in any way resisting arrest. Liability as against Defendant County was also unanimously established under 42 U.S.C. §1983 as applied under *Monell v. Dep't of Soc. Servs. of City of N.Y*, 436 U.S. 658 (1978), for the deliberately indifferent policies and practices it had in place that acted as a moving force in the violation of Mr. Myles' Federal constitutional rights by Defendant Banks. Liability under §52.1 was similarly established by unanimous verdict against Defendant County. Based on the jury's unanimous verdict awarding $5 million, this Court entered an enforceable judgment against Defendants and in favor of Plaintiff on October 14, 2022. (Doc. No. 440.) As the prevailing party ***on every claim and theory of relief submitted to the jury***, Plaintiff is entitled to recover attorney's fees and costs.[6]

### B. LODESTAR CALCULATION – REASONABLE HOURLY RATE.

Reasonable attorney's fees are assessed at the prevailing market rates in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). A reasonable hourly rate is not defined "by reference to the rates actually charged by the prevailing party." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986). Rather, reasonable fees must be calculated based on the prevailing market rates charged by "attorneys in the relevant community engaged in 'equally complex Federal litigation.'" *Prison*

---

[6] While an extraordinary result, prevailing on every claim and cause of action is not necessary in order to recover all fees and costs. *See*, *supra,* 5:21 – 6:3.

*Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984)); *see also, Van Skike v. Dir., Off. of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009) ("The Supreme Court has consistently held that reasonable fees 'are to be calculated according to the prevailing market rates in the relevant community.'"). [A]ffidavits of the [applicant's] attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases ... are satisfactory evidence of the prevailing market rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir.2008); *see also, Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir.2007) ("[B]illing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.") The relevant community includes "attorneys practicing in the forum district." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Further, "the Court must base its determination on the *current* market rate." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015), citing *Camacho*, 523 F.3d at 981 ("[A] district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services."); *Bell*, 341 F.3d at 861 ("We hold ... that it was an abuse of discretion in this case to apply market rates in effect more than two years before the work was performed.")

Here, Plaintiff has submitted declarations not only from his attorneys attesting to the reasonableness of the rates sought, but also declarations from two prominent, practicing civil rights attorneys, Carol Sobel and Eugene Iredale, as well as from a renowned local attorney with extraordinary experience and expertise in prevailing attorney's fees in the San Diego area, David Casey, Jr. All three establish that the requested rates match the prevailing market rates for private attorneys with similar levels of experience. *See Guam Soc'y of Obstetricians and Gynecologists v. Ada,* 100 F.3d 691, 696 (9th Cir.1996)

("declarations of the 'prevailing market rate in the relevant community ... [are] sufficient to establish the appropriate [billing] rate for lodestar purposes.'") (quoting *Davis v. City and County of San Francisco,* 976 F.2d 1536, 1547 (9th Cir.1992))).

The declarations by Ms. Sobel, Mr. Iredale and Mr. Casey each establish that the prevailing hourly community rate for Browne Greene is between $1,000 and $1,200, for Mr. Dicks and Ms. Workman, $1,000, for Mr. Balaban $900, for Ms. Boyer $800 and for Mr. Murphy $700. *See* Declarations of Carol Sobel ("Sobel Decl." at ¶¶24-35"); Eugene Iredale ("Iredale Decl." at ¶¶21-24) and David S. Casey, Jr. ("Casey Decl." at ¶¶11-14).

The rates requested are further supported by the declarations which explain that the relevant community rates here are for plaintiff's lawyers in *complex civil rights cases* in San Diego. *See* Sobel Decl. ¶¶15-18, Iredale Decl. ¶¶20, 25-26 and Casey Decl. ¶8. Both Ms. Sobel and Mr. Iredale highlighted that in analyzing rates recovered by lawyers of similar experience in complex civil rights cases such as this one, the requested rates are in accord with the current prevailing rates. *See* Sobel Decl. ¶¶20-34 and Iredale Decl. ¶¶18, 20.

As outlined in the declarations of Ms. Sobel and Mr. Iredale, the requested rates for Plaintiff's counsel echo those awarded in similar complex civil rights actions. *See* Sobel Decl. ¶¶15-18 and Iredale Decl. ¶¶20, 25-26.; *see also,* *Rodriguez v. County of Los Angeles,* No. 10–6342–CBM (AJWx), 96 F.Supp.3d 1012 (C.D. Cal. 2014) (§1983 action where plaintiff's counsel was awarded a rate of $975 an hour; the lead attorney, who had been practicing civil rights law for 10 years and who had extensive criminal trial experience, a rate of $775 an hour; another attorney who had been practicing law for over 20 years with a focus in the area of police misconduct an award of $700 an hour; an attorney with 10 years of experience practicing law a rate of $600 an hour; an attorney with six years of experience $500 an hour; and paralegal rates of $295 an hour

and law clerk rates of $175 an hour); *Dowd v. City of Los Angeles*, No. CV 09–06731 SS, 28 F.Supp.3d 1019 (C.D. Cal. 2014) (court awarded an attorney with a 43-year career $775 an hour; an attorney with over 35 years practicing law and limited civil rights case experience $675 an hour; an attorney with seven years practicing law and limited civil rights and complex litigation experience $375 an hour; and an attorney with one year of legal experience and no experience litigating civil rights or other complex federal cases $200 an hour); *Cervantes v. Cnty of Los Angeles*, No. 12-09889 DDP (MRWx), 2016 WL 756456, at *3-4 (C.D. Cal. Feb. 24, 2016), (court awarded $700 an hour for lead counsel with over 35 years of experience practicing law; $400 an hour was appropriate for an attorney litigating his first federal jury trial and who had limited civil rights experience; and $275 an hour for an attorney approximately two years out of law school who was participating in his first federal trial).[7]

The evidence therefore supports the rates requested by Plaintiff's counsel.

### C. LODESTAR CALCULATION – HOURS REASONABLY EXPENDED.

Under the lodestar method, "a district court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). As noted by the Ninth Circuit in *Moreno*, as a general rule, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno,* 534 F.3d at 1112; *see also*, *E-Pass Techs., Inc. v. 3Com Corp.,* Civ. No. 00-2255 DLJ, 2007 WL 4170514, at *6 (N.D. Cal. Nov. 14, 2007) ("[T]he court will not second-guess reasonable attorney conduct of a litigation strategy for the case."). Such deference is

---

[7] *See also,* two recent 42 U.S.C. §1983 cases from the Central District, where lead counsel with an outstanding track record, but with far less time at the bar than Mr. Greene, was awarded, on multiple occasions, $1,100/hour. <u>Exhibit D</u> to Dicks Decl.

particularly appropriate in civil rights cases where plaintiffs' attorneys often work on a contingency basis and thus have little incentive to expend unnecessary hours. *See, e.g.*, *Moreno*, 534 F.3d at 1112 ("It would be the highly unusual civil rights case where [a] plaintiff's lawyer engages in churning."); *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1080 (N.D. Cal. 2010) ("[I]f anything, an attorney working on contingency is less likely to expend unnecessary hours because the payoff is too uncertain.").

The chart below on page 15 references the hours spent by each attorney. Considering these hours in the context of the three phases of how the case proceeded, as described in Mr. Dicks' and Mr. Balaban's declarations (*see* Dicks Decl. at ¶¶17-37; Balaban Decl. ¶¶ 10-27), i.e. (1) pretrial discovery and initial litigation, (2) law and motion, and (3) trial, the hours reflect 3,338 hours for Dicks & Workman, 202 hours for Esner, Chang & Boyer, 584 hours for Balaban & Spielberger and 420 hours for Greene, Broillet & Wheeler, totaling 4,550 hours. The hours requested are supported by the submitted billing statements and/or, and as detailed in the declarations of Plaintiff's counsel.

The analysis of the reasonableness of the hours requested requires the Court to determine that the "time spent was reasonably necessary and that its counsel made 'a good faith effort to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Jordan v. Mutnomah County,* 815 F.2d 1258, 1263 n.8 (9th Cir. 1987) (quoting *Hensley v. Eckerhart,* 461 U.S. 433, 434 (1983)). As explained in *Hensely*, "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

1   *Hensley*, 461 U.S. at 434 (internal citations and quotations omitted).

2       The time records and declarations submitted reflect such billing

3   judgment. As noted in the declarations of Messrs. Iredale and Casey, the case

4   was handled by Dicks & Workman, alone, throughout the entirety of the

5   discovery process and most of the law and motion process. They were joined in

6   the case by Ms. Boyer and Mr. Murphy to assist in opposing summary

7   judgment motions after County Counsel retained not one, but two outside law

8   firms. They were later joined by others, including the very well-known and

9   esteemed Mr. Greene and the well respected and very talented trial lawyer, Mr.

10  Balaban for the trial. "The time by all the lawyers of over 4,550 hours over an

11  eight-year period of time and in the face of the extraordinary abuses perpetuated

12  by the Defendants and their counsel, represents a very reasonable time for

13  taking a case such as this from inception to trial to a jury, in my opinion."

14  Iredale Decl. ¶27; *see also* Casey Decl. at ¶9.

15      As to Ms. Boyer and Mr. Murphy's time, there was extensive legal

16  briefing in this case concerning Defendants' attempts to have most, if not all, of

17  the claims and causes of action dismissed, even while they willfully suppressed a

18  treasure trove of incriminating material. While the legal issues raised in these

19  motions for summary judgment were significantly complex and required

20  extensive research, the preparation of the motions were particularly onerous

21  given the County's multiple discovery abuses which were most thoroughly

22  briefed in the closing days before trial by Mr. Dicks and Ms. Workman.

23      Separate from the motions for summary judgment and multiple sanctions

24  motions, there were numerous motions in limine and abusively repetitive "pocket

25  briefs" filed by the County of San Diego which required opposition. In addition,

26  Plaintiff filed a single motion in limine dealing with the pre and prior acts issues

27  which Defendants repeatedly, consistently and erroneously attempted to

28  convince this Court that Magistrate Major had either gotten wrong, or

alternatively, had ruled on in the Defendants' favor. Research and preparation of trial briefs, jury instructions, the special verdict form and other such trial documents further make up the hours expended by Mr. Dicks, Ms. Workman, Ms. Boyer, and Mr. Murphy, as well as Mr. Balaban (discussed below).

Mr. Balaban and Mr. Greene were co-lead trial counsel for this case, with Mr. Dicks and Ms. Workman actively involved in every phase of the trial, as they were with every aspect of the case since its inception. In addition to his trial duties, Mr. Balaban handled most trial-related communications with defense counsel, and took a leadership role in managing the case, strategy development, and preparing the case for trial. At trial, Mr. Balaban handled most of the liability witnesses, along with Mr. Dicks and Ms. Workman, and was responsible for opening statement and closing argument, along with Mr. Greene, who handled the bulk of the damage witnesses and part of the damage issues in closing argument. Both Mr. Balaban and Mr. Greene spent significant hours preparing for trial and displayed extraordinarily impressive skills in executing their individual functions at trial.

Plaintiff's claims for violation of §1983 against Defendants Banks and the County of San Diego under M*onell* liability, as well as under the Bane Act, false imprisonment and negligence, required substantial work and pulled on the vast experience of the trial team, experience which, in the case of Mr. Greene, is arguably unparalleled and unavailable from any other source.

In addition, throughout this case, Plaintiff's counsel attempted to make sincere efforts to settle this case short of trial. Prior to associating in co-counsel, Mr. Dicks and Ms. Workman handled preparation for and negotiations at a private, third mediation and at the Mandatory Settlement Conference in 2016, with Mr. Balaban handling preparation for and negotiations at a private mediation in June 2022 which all Plaintiff's counsel attended. However, efforts to settle the case short of trial were unsuccessful.

All of the attorneys have exercised billing judgment in the hours submitted, while dedicating themselves to obtaining the best possible result for Mr. Myles. Applying the reasonable prevailing rate to each attorney's reasonable hours expended provides a total lodestar amount of $4,496,000 as depicted in the chart below. *See also* Iredale and Casey Decls. at ¶¶ 17, and 7, respectively, ["Because counsel for Mr. Myles incurred a reasonable amount of time litigating this case at reasonable hourly rates, in my opinion Plaintiff's requested lodestar of attorneys' fees of $4,496,000 is reasonable and necessary."]

| ATTORNEY | RATE | HOURS SPENT | TOTAL |
|---|---|---|---|
| Browne Greene | $1,150 | 420 | $483,000 |
| Daniel Balaban | $900 | 584 | $525,600 |
| Joseph Dicks | $1,000 | 2,050 | $2,050,000 |
| Linda Workman | $1,000 | 1,288 | $1,288,000 |
| Holly Boyer | $800 | 86 | $68.800 |
| Shea Murphy | $700 | 116 | $81,200 |
| **LODESTAR TOTAL:** | | **4,550 hrs.** | **$4,496,000** |

Lastly, Plaintiff notes that in addition to the attorney's fees derived from legal work performed in preparing and litigating this case to trial, Plaintiff is entitled to attorney's fees for their time spent establishing their right to attorneys' fees in the amount requested. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."); *see also, Hernandez v. Kalinowski,* 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir. 1988); *Hernandez v. George*, 793

F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978)
("It would be inconsistent with the purpose of the Fees Act to dilute a fees
award by refusing to compensate the attorney for the time reasonably spent in
establishing and negotiating his rightful claim to the fee."). Plaintiff is also
entitled to fees for time spent opposing any post-trial motions by Defendants.

### D.   LODESTAR MULTIPLIER.

As noted above, the lodestar figure is *presumptively reasonable. See
City of Burlington v. Dague,* 505 U.S. 557, 562 (1992) ("We have established
a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]");
*Gonzalez,* 729 F.3d at 1202 ("The product of this computation—the
"lodestar figure"—is a "presumptively reasonable" fee under 42 U.S.C. §
1988."). However, "in rare cases, a district court may make upward or
downward adjustments to the presumptively reasonable lodestar on the basis
of those factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–
70 (9th Cir.1975), that have not been subsumed in the lodestar calculation."
*Camacho,* 523 F.3d at 982. Those factors to be considered in making any
adjustment to the presumptively reasonable lodestar include:

> (1) the time and labor required, (2) the novelty and difficulty
> of the questions involved, (3) the skill requisite to perform
> the legal service properly, (4) the preclusion of other
> employment by the attorney due to acceptance of the case,
> (5) the customary fee, (6) whether the fee is fixed or
> contingent, (7) time limitations imposed by the client or
> the circumstances, (8) the amount involved and the results
> obtained, (9) the experience, reputation, and ability of
> the attorneys, (10) the 'undesirability' of the case,
> (11) the nature and length of the professional
> relationship with the client, and (12) awards in similar
> cases.

*Kerr*, 526 F.2d at 70. *See also*, *Evon v. Law Offices of Sidney Mickell*, 688
F.3d 1015, 1033 n. 11 (9th Cir.2012) (quoting *Morales v. City of San Rafael,*
96 F.3d 359, 363–64 n. 8 (9th Cir.1996); *Ballen,* 466 F.3d at 746 ("After

1    making that computation, courts then assess whether it is necessary to adjust

2    the presumptively reasonable lodestar figure on the basis of twelve factors.").

3         As recognized by the Supreme Court, while the justification for a

4    multiplier cannot include the same factors considered in the initial

5    determination of the lodestar figure, an award of fees may be adjusted upward

6    by a multiplier where, for example, the lodestar figure does not "adequately

7    measure the attorney's true market value, as demonstrated in part during the

8    litigation." *Perdue v. Kenny A. ex rel Winn,* 559 U.S. 542, 554-555 (2010)

9    ("[T]here is strong presumption that the lodestar is sufficient; factors subsumed

10   in the lodestar calculation cannot be used as a ground for increasing an award

11   above the lodestar; and a party seeking fees has the burden of identifying a

12   factor that the lodestar does not adequately take into account and proving

13   with specificity that an enhanced fee is justified."); *see also, Kelly v. Wengler,*

14   822 F.3d 1085, 1093, 1102-1105 (9th Cir. 2016) (citing *Perdue* and the

15   superior attorney performance justification for a fee enhancement, the Ninth

16   Circuit affirmed a multiplier of 2.0 and 1.3 to the fees requested by the two

17   attorneys respectively that successfully litigated the action).

18        *Kelly* is instructive. There, the Ninth Circuit, affirmed a multiplier of 2.0

19   and 1.3 to the fees requested on the grounds that the "superior performance"

20   of the attorneys and the "need to attract competent counsel," factors not

21   subsumed in the lodestar figure, justified the enhancement of fees. *Kelly,* 822

22   F.3d 1102-1105. With respect to the superior performance, the Ninth Circuit

23   explained: "In *Perdue,* the Supreme Court held, although the lodestar figure

24   typically subsumes 'the novelty and complexity of a case' and 'the quality of

25   an attorney's performance,' a court may enhance the lodestar in 'rare' and

26   'exceptional' circumstances when the lodestar figure does not adequately

27   represent counsel's ***'superior performance and commitment of resources.'*** 559

28   U.S. at 553-54, 130 S.Ct. 1662 (citation omitted)." *Id.* at 1102 (emphasis added).

---

The Ninth Circuit explained that in "civil rights cases, a court may enhance the lodestar figure if plaintiff's counsel demonstrates **the value of her services exceeds what the court determines to be the prevailing market rate for otherwise comparable attorneys.**" *Id.* (emphasis added).

Highlighting the district court's finding that the plaintiff's counsel provided "'extraordinary performance yielding extraordinary results," and that "the quality of the work that produced these results [was] underrepresented in the hourly fee," the Ninth Circuit held 'The district court's justification for enhancing the lodestar figure was supported by specific evidence in the record. The court's statement that Plaintiffs' counsel labored 'under extreme time pressure and with very limited resources' was, if anything, an "understatement," noting that counsel had less than a month to conduct discovery, review thousands of pages of documents, and engaged in "extensive motions practice, writing numerous pre-trial briefs" and yet despite such time constrains, "Plaintiffs' counsel uncovered substantial evidence of noncompliance with the settlement agreement" supporting a verdict in favor of their clients. *Id*. at 1102-1104.

Similar to *Kelly*, the lodestar figure arrived at here does not adequately reflect the true market value of the services rendered in this case. Indeed, the attorneys with the most hours in this case, Mr. Dicks and Ms. Workman, are experienced civil rights attorneys with over 35 years each of litigation and trial experience. They bore the brunt of the intense discovery battles and sanctions briefing, all under tremendous time pressures due to the impending trial, having to litigate both the pre-trial issues raised by the Defendants' discovery abuses and prepare their witnesses and other materials for trial.

To top it off, the Defendants' abuses continued during trial with numerous and repetitive "pocket briefs" which attempted to "work around" this Court's prior rulings. Indeed, after bringing the Defendants' abuses to light, and

after the Court's several sanctions orders, the County of San Diego dumped hundreds of pages of new and critically important material on Plaintiff's counsel from just over a week before the then trial date in July 2022, through the first week of trial in September 2022, while the parties were in the jury selection mode. Add to that the temerity of bringing two Rule 50 motions claiming that Plaintiff was attempting to inject new theories of liability into the case (*see, for instance,* <u>Exhibit A</u> to Dicks Decl., Trial Transcript, September 15, 2022, 617:20 – 619:3), and one can get a close approximation of the added stress, pressure and frustration every one of Plaintiff's attorneys endured, in having to modify and change direction for the examination of every liability witness due to the new documents being uncovered almost daily. *See* Dicks and Balaban Decls. at ¶¶24, 40 and 16, respectively.

Further, the extraordinary performance by Plaintiff's team of trial lawyers, lead by Browne Greene and Daniel Balaban, resulted in a truly extraordinary unanimous verdict rarely obtained; that is, findings against the County under *Monell* that:

1. An unlawful official policy, practice or custom of the County was a cause of Myles' injuries;
2. The County's failure to train was a cause of Myles' injuries; and,
3. The County ratified the conduct of Banks, causing Myles' injuries.

*See* Verdict, Doc. No. 439 at **II A, B and C.**

That the *Monell* claims rarely survive dispositive pre-trial motions to dismiss is indisputable. That they end up resulting in unanimous findings ***on every theory submitted to the jury*** is practically unheard of. Notwithstanding any "respectful disagreement" by the defense of the jury's findings, this rare result should ultimately have a long-term, deeply intense and resounding effect on how the County does business, conferring an invaluable and immeasurable community benefit, supporting a significant enhancement of the basic lodestar

in this case.

Further supporting the lodestar enhancement is the fact that Plaintiff's trial counsel all put significant out-of-pocket expenses into the case, totaling over $520,000, as follows:

1. Greene, Broillet & Wheeler:    $126,480.66
2. Balaban & Spielberger:    $206,815.12
3. Dicks & Workman:    $187,469.37
   **TOTAL:    $520,765.15**

Thus, the dedication to seeking justice was not just demonstrated by the devotion of time and effort, but was demonstrated, in addition, by the enormous capital investment these attorneys made to a cause in which the outcome was anything but certain, particularly in light of the unscrupulous tactics in which the County engaged.

Thus, just as in *Kelly*, the prevailing market rate for Mr. Greene, Mr. Balaban, Mr. Dicks, Ms. Workman, Ms. Boyer and Mr. Murphy, given their respective years of experience, fails to fully appreciate the superior experience, skill and devotion to the cause applied by these attorneys in this litigation and the meaningful and beneficial result obtained ***for the client and the community*** as a result of their success. On this latter point, the Ninth Circuit's position in *Kelly* that the 2.0 and 1.3 enhancement was further justified in light of the court's finding that "the limited fees available in prisoner civil rights cases, without enhancement, are insufficient to induce private attorneys in Idaho to accept cases, such as this one, seeking declaratory and injunctive relief" is also relevant to the applicability of a multiplier here as, given the difficulty of proving *Monell* claims, "an award of fees that does meaningfully compensate the attorneys will fail to attract the most competent of counsel." *See Kelly*, at 1104-1105.

While public entities such as sheriff's departments (which, unlike local

municipal police departments, are the top law enforcement agencies in each county) provide tremendous benefit to the community, such powerful institutions can also wield extraordinary abuse and harm if that power goes unchecked by those with the rare skills and resources necessary to do so. Verdicts such as the instant one hold public entities accountable for their unlawful policies. Section 1988, section 52.1(i) and the lodestar multipliers they authorize, ensure that competent counsel of the highest quality will chose to fight these critically important cases. In a county of approximately 3.3 million residents (second only to LA county in population), the potential positive impact on the citizenry is incalculable.

In light of such considerations not already considered in the lodestar figure of $4,496,000, Plaintiff requests a multiplier of 2.0, bringing the total fees award to $8,992,000.  In the two recent cases from the Central District which are attached as Exhibit D to the Dicks Decl., the courts therein granted a multiplier of 1.5 on each occasion, where the cases did not even involve *Monell* claims, did not result in the kinds of findings likely to produce systemic change (i.e. pattern and practice, failure to train, ratification) and the plaintiff's counsel did not have to deal with the multitude of evils perpetuated by the Defendants and their counsel in the present case.  *See also*, *Moore v. Brunner,* 2010 WL 317017, at *3 (S.D. Ohio 2010) ("Due to the exceptional results obtained in these cases, the Court finds that a multiplier of 1.25 is appropriate. *See Blum v. Stenson*, 465 U.S. 886, 901, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) ("in some cases of exceptional success an enhanced award may be justified") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983))."); *Gonzales v. City of San Jose*, 2016 WL 3011791, at *8-9 (N.D. Cal. 2016) ("The Court agrees with Plaintiff that the case was factually complex. Plaintiff asserted constitutional violations in the context of an extensive police operation to investigate an alleged gang murder in which Plaintiffs son was the chief suspect. The number of

officers on the scene when the alleged misconduct occurred was extraordinary, necessitating complicated discovery that was only made more difficult by the obstacles City threw in Plaintiffs way. The Court also agrees with Plaintiff that the contingency-fee arrangement justifies a multiplier, as does the fact that this was not an attractive case for attorneys to take. At the same time, the legal issues involved should have been relatively standard for lawyers of Plaintiffs counsel's experience and expertise. . . . Having granted Plaintiffs counsel's requested fees and hours nearly in full, the Court finds that a multiplier of 1.1 is appropriate on balance."); *Balia v. Idaho State Board of Correction*, 2016 WL 6762651 (D. Idaho 2016) (awarding multipliers similar to those in Kelly due to the attorneys' superior performance and the need to attract competent counsel); *Cole v. City of Memphis*, Tenn., 2015 WL 5076974, at *9 (W.D. Tenn. 2015) (In a civil rights class action where fees were requested under Section 1988, the court held that in light of the results obtained, a 1.15 multiplier was warranted; "In light of the injunctive relief prohibiting the Beale Street Sweep and requiring additional training of police officers to be more aware of an individual's constitutional rights, the results achieved by Plaintiffs' counsel go beyond the interests of the parties in the instant case. For these reasons, the Court finds it appropriate to award Plaintiffs' counsel a 15% enhancement (1.15 multiplier).").

Therefore, a 2.0 enhancement is justified in this case, where the legal and factual issues, time and capital invested, as well as the result, were anything but standard, particularly given Defendants' documented abuses, discovery and otherwise.

### E. PLAINTIFF IS FURTHER ENTITLED TO HIS REASONABLE OUT-OF-POCKET LITIGATION COSTS AS RECOVERABLE UNDER 42 U.S.C. § 1988 AND CIVIL CODE SECTION 52.1(I).

Further, it is well established that attorney's fees under 42 U.S.C. §1988 and §52.1(i) include reasonable out-of-pocket litigation expenses that

would normally be charged to a fee-paying client, even if the court cannot tax these expenses as "costs" under 28 U.S.C. § 1920. *Trustees of Const Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006). Therefore, Plaintiff is entitled to recover for reasonable out-pocket-expenses incurred in this litigation. These are expenses that a client would normally pay but which were not taxed as costs; they are, therefore, compensable under 42 U.S.C. §1988.

Plaintiff's out-of-pocket expenses included the cost of retaining expert witnesses, Jeffrey Noble, Dr. Monte Buchsbaum, Dr. Clark Clipson, Dr. Robert Hall, Gregory Kaseno, and Dr. Scott Matthews. Plaintiff incurred total expert witness expenses as set forth in the Declarations of Messrs. Dicks and Balaban and the exhibits thereto. In addition, Plaintiff incurred travel, hotel and meal expenses due to the fact that Plaintiff and his family had to travel from Washington D.C. (where they moved after the incident), and because Mr. Balaban and Mr. Greene both reside in Los Angeles,[8] as well as other reasonable and necessary costs as set forth more specifically in said declarations and their exhibits. Accordingly, Plaintiff respectfully requests an award of expenses in the total amount of $520,765.15, as set forth above.

### F. Plaintiff is Entitled to Sanctions in the Amount of $9,512,765.15, Representing All Fees and Costs Requested Herein.

Under Federal Rule of Civil Procedure Rule 37, a failure to propound responses to discovery requests may warrant the imposition of a wide range of

/ / /

/ / /

---

[8] Two of the four counsel for Plaintiff reside outside San Diego County, while three of the four counsel for the Defendants reside outside San Diego County, one traveling from New York to attend trial.

sanctions.[9] The court may even impose terminating sanctions where the failure to respond to discovery requests is willful or bad faith unwillingness. *See Sanchez v. Rodriguez* (C.D. Cal. 2014) 298 F.R.D. 460, 463. Willfulness and bad faith "does not require wrongful intent; rather, disobedient conduct not shown to be outside the party's control is by itself sufficient to establish willfulness, bad faith, or fault. …(quoting *Jorgensen,* 320 F.3d at 912, and citing *Henry,* 983 F.2d at 948); *see also, Hyde & Drath v. Baker,* 24 F.3d 1162, 1167 (9th Cir.1994) (citing *Henry,* 983 F.2d at 948)." *Id.* at 463.

Here, the Court, exercising tremendous patience and judicial restraint, opted for sanctions less severe than terminating sanctions, while reserving the imposition of additional sanctions depending on the presentation of the evidence. Given the nature of the evidence adduced, the additional documents that the Court and Plaintiff learned were continuing to be withheld wrongfully and willfully by the Defendants, and given that Plaintiff will therefore never know the nature and extent of the deceit perpetuated against him by the County or the effect that deceit had on his verdict, the Court should award Plaintiff all of his attorney's fees, the requested 2.0 multiplier, plus all costs.

Finally, and as noted in prior briefings by Plaintiff, in addition to finding willfulness, bad faith, or fault, before more severe sanctions may be ordered per Rule 37, "a court must consider and weigh the following five factors: (1) the public interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on the merits; and (5) the availability of less drastic sanctions. *See, e.g., Connecticut General v. New Images,* 482 F.3d 1091, 1096 (2007); *Henry,* 983 F.2d at 948." *Sanchez,*

---

[9] This Court may also issue sanctions under FRCP 11, given the misrepresentations in Doc. Nos. 72-3 and 193, regarding the authenticity objections to the Valdez IA material and refusal to acknowledge and defense of same in the course of the sanctions motion.

298 F.R.D. at 469–470; *see Valley Eng'rs, Inc. v. Elec. Eng'g Co.,* 158 F.3d 1051, 1057 (9th Cir.1998).

Here, all the factors weigh heavily in favor of the additional sanctions Plaintiff prays for herein. *See Sanchez*, 298 F.R.D. at 472-473. Broadly speaking, Defendants' ongoing unwillingness to meet its discovery requirements has immutably compromised Plaintiff's ability to fully avail himself of the rights he has been granted under law. Indeed, beyond the copious resources (including judicial resources) that have been squandered as a result of Defendants' cover-up practices, it is now no longer possible for Plaintiff to know the full extent of the prejudice he has suffered. The net effect on Plaintiff of having been denied the discovery and additional discovery opportunities that resulted from Defendant County's repeated and willful suppression of evidence justifies the relief herein sought. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1166- 1167 (9th Cir. 1994), *citing United States ex rel. Wiltec Guam. Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 604 (9th Cir. 1988.) In addition, Plaintiff refers this Court to *Chambers v. Nasco, Inc*., 501 U.S. 32 (1991) and *Goodyear Tire & Rubber Co. v Haeger*, 137 S. Ct. 1178 (2017) authorizing payment of all attorney's fees as a sanction when the discovery abuses ***taint the entire litigation***, exactly what has happened in the present case, especially given their spanning a period of over six years.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court award attorney's fees in the amount of $8,992,000 (lodestar figure of $4,496,000, with a 2.0x multiplier added to that sum). Plaintiff also requests that the Court award expenses in the amount of $520,765.15 for a total of $9,512,765.15. Finally, Plaintiff requests that the Court award him attorney's fees for work performed in the preparation and litigation of the instant motion for attorney's fees, including all time not accounted for in these papers and for the time after these papers are filed, as will be stated in the reply papers.

1

2   Dated: November 14, 2022            DICKS & WORKMAN
                                        ATTORNEYS AT LAW, APC
3

4                                   By: _____*/s/ Joseph G. Dicks*_____
                                        Joseph G. Dicks
5                                       Attorneys for Mickail Myles, Plaintiff
                                        Email: jdicks@dicks-workmanlaw.com
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28