**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICKAIL MYLES, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>COUNTY OF SAN DIEGO, by and through the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, a public entity; and DEPUTY J. BANKS, an individual,<br><br>  Defendants. | Case No. 3:15-cv-01985-JAH-BLM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>**[ECF No. 445]** |

**INTRODUCTION**

Pending before this Court is Plaintiff Mickail Myles' motion for attorney fees and costs. Defendants County of San Diego and Deputy J. Banks filed an opposition and Plaintiff filed a reply. After careful consideration of the parties' submissions and for the reasons set forth below, this Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion.

**BACKGROUND**

On October 11, 2022, a jury returned a verdict in favor of Plaintiff and against Defendants. The jury found Defendants liable for use of excessive force in violation

of 28 U.S.C. section 1983, an unlawful policy, practice or custom in violation of section 1983, interference with civil rights in violation of the Bane Act, California Civil Code section 52.1 and negligence. *See* ECF 440. The jury awarded $800,000 for past non-economic loss and $4,200,000 for future non-economic loss. *Id*. at 4.

On November 14, 2022, Plaintiff filed the instant motion for attorney fees and costs and Defendants filed a motion for new trial and motion for judgment as a matter of law. ECF Nos. 445, 447, 448. The Court granted Defendants' request to stay briefing on Plaintiff's motion for fees and costs until after their motions for a new trial and judgment as a matter of law were resolved. *See* ECF Nos. 456, 459.

On May 4, 2023, this Court denied Defendant's motion for new trial and motion for judgment as a matter of law. ECF No. 463. On May 22, 2023, Defendants filed a response in opposition to Plaintiff's motion for attorney fees and costs and Plaintiff file a reply. ECF No. 468, 469. On June 2, 2023, Defendants filed a notice of appeal of the judgment and the orders denying Defendant's motion for a new trial and motion for judgment as a matter of law.[1] ECF No. 473.

## LEGAL STANDARD

Plaintiff seeks attorneys' fees and costs pursuant to 42 U.S.C. section 1988, California Civil Code section 52.1(i). A court may award reasonable attorneys' fees to the prevailing party in an action brought under section 1983. 42 U.S.C. §1988(b). A civil rights plaintiff who obtains relief on the merits of his claim that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff" qualifies as a prevailing party. *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). The Bane Act, likewise, permits a court to award plaintiff reasonable attorneys' fees "in addition to any damages, injunction, or other equitable relief awarded." Cal. Civ. Code § 52.1(i).

---

[1] This Court retains jurisdiction over the instant motion to award attorneys' fees. *See Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983).

The lodestar method is the customary method for calculating reasonable attorneys' fees. *Ballen City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006); *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001). The lodestar method determines the amount by multiplying the "number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The court may then adjust the lodestar amount based on several factors, including the degree of success achieved by the prevailing party." *Id*.

## DISCUSSION

Plaintiff requests this Court award $9,320,480[2] in attorney's fees and $500,765.15[3] in expenses, for a total of $9,843,245.15. He submits declarations of counsel, invoices, transcripts of proceedings and declarations from attorneys opining on the reasonableness of the hourly rate and time spent litigating the case.

**I. Attorneys' Fees**

Counsels' declarations reflect 3,448 hours for Dicks & Workman, at an hourly rate of $1,000 for both attorneys Joseph Dicks and Linda Workman; 294.4 hours for Esner, Chang & Boyer, at hourly rates of $800 for Holly Boyer and $700 for Shea Murphy; 584 hours for Balaban & Spielberger, at an hourly rate of $900 for attorney Daniel Balaban; and 420 hours for Greene, Broillet & Wheeler, at an hourly rate of $1,150 for attorney Browne Greene. Based on the rates and hours and a 2.0 enhancement, Plaintiff seeks a total of $9,342,480 for attorneys' fees.

**A. Hourly Rate**

Plaintiff requests the following hourly rate(s):

---

[2] This total includes the $8,992,000 originally sought in Plaintiff's motion and an additional $350,480 requested in the reply for additional time spent by counsel after the filing of the original motion. *See* Dicks Decl. ¶¶ 5-7.

[3] In his reply, Plaintiff deducts $20,000 from his requests for costs for a loan to Plaintiff by Plaintiff's counsel that was mistakenly included in his requests for costs.

        $1,150 for Browne Greene
        $1000 for Joseph Dicks and Linda workman
        $900 for Balaban
        $800 for Holly Boyer
        $700 for Shea Murphy

        Counsels' declarations demonstrate Mr. Greene has over 61 years of practice, during which he tried over 200 civil cases to verdict and obtained multimillion dollar awards in many cases and has received numerous awards for his work as a consumer rights attorney. Greene Decl. ¶¶ 4, 5, 7, 8, 9, 10 (ECF No. 445-1). Mr. Dicks has been a practicing attorney for over 35 years during which he tried numerous cases to conclusion and received various awards. Dicks Decl. ¶¶ 7, 9, 10, 11, 12 (ECF No. 445-2). Ms. Workman obtained her JD in 1986, began her legal career at a litigation firm that earned numerous multimillion dollar verdicts and settlements, engaged in appellate practice before returning to litigation in 2006 and her litigation experience includes work on cases involving police misconduct. *Id*. ¶¶ 7, 13, 14, 15, 18. Mr. Balaban has taken 25 cases to verdict during his over 15 years of practice including multiple multimillion dollar verdicts, received numerous awards and specializes in cases suing public entities. Balaban Decl. ¶¶ 4, 5, 6, 7, 8, 9 (ECF No. 445-3). Ms. Boyer, an appellate specialist, has been practicing law for 20 years during which she worked on numerous cases involving noteworthy legal issues, including discrimination and liability of an employer for wrongful acts of an employee and has worked with Dicks, Workman, Balaban and Greene on other cases involving *Monell* liability. Boyer Decl. ¶¶ 2, 3, 4, 7 (ECF No. 445-4). Mr. Murphy received his JD in 2006 and was admitted to the California Bar and Hawaii Bar in 2008. *Id*. ¶ 10. Following his work as a deputy prosecutor, he began working at a civil litigation firm in 2010 and focused on complex civil litigation and later focused on civil appellate actions. *Id*. ¶¶ 10, 11, 12.

        In support of their rates, Plaintiff also submits the declaration of Eugene Iredale who has extensive experience in criminal defense and civil rights practice with a focus

1  on police misconduct litigation and regularly reviews material addressing rates
2  charged and fee awards for civil rights litigation in Southern California.  Iredale Decl.
3  ¶¶ 5, 6, 7, 8, 18 (ECF No. 445-5).  Mr. Iredale attests that he was awarded an hourly
4  rate of $850 in 2015, $995 in 2019 and his rate for 2022 was $1100.  Upon review of
5  information on the case and counsels' experience and work on the case, Mr. Iredale
6  opines the rates sought by counsel are within the range of rates charged by attorneys
7  with comparable experience in San Diego for complex federal and civil rights work.
8  *Id*. ¶¶ 20-26.

9        Carol A. Sobel, an attorney with extensive practice in complex civil rights
10 litigation also provides an opinion on counsel's rates.  She explains that during her
11 time as an ACLU lawyer, she regularly obtained current billing rates for attorneys
12 when preparing fee requests because the ACLU does not bill clients on an hourly
13 basis.  Sobel Decl. ¶¶, 2, 3, 4 (ECF No. 445-6).  As a sole practitioner, she continues
14 to assess reasonable market rates by regularly reviewing fee applications and resulting
15 awards, more than 100 annually, for the last 30 years and explains her process for
16 determining reasonable rates.  *Id*. ¶¶ 5-7, 13-19.  Ms. Sobel opines that the requested
17 rates are supported by rates for similarly skilled counsel in the geographic area.  *Id*.
18 ¶¶ 25 – 35.

19       Attorney David S. Casey, Jr., an attorney with extensive experience and
20 knowledge of salary levels and billing rates provides an opinion on the reasonableness
21 of the rates.  Casey Decl. ¶¶ 3-6 (ECF No. 445-7).  In determining the appropriate
22 market rates for fees, he attests that he contacts firms, speaks with attorneys familiar
23 with complex litigation rates, and reviews court filings and cases regarding fee
24 awards.  *Id*. ¶ 8.  In finding the requested rates reasonable, he opines that Mr. Greene
25 has few peers with his experience and sets the standard nationally for advocacy, given
26 his experience, awards and recognition of his peers, Mr. Balaban's requested rate is
27 on the high end but within the spectrum, Ms. Boyer's appellate perspective on
28 complex legal issues concerning immunities, municipal liability, jury instructions and

damages have and will continue to prove invaluable in the likely event of an appeal her rate of $800 is appropriate and given the complexity of legal issues Mr. Murphy addressed and his 15 years of experience, the requested rate of $700 is justified. *Id*. ¶¶ 11, 12, 13. He also opines that $1,000 is a reasonable rate for Mr. Dicks and Ms. Workman for the San Diego market, given the complexities of the case and the likelihood they would have had to forgo other work in order to provide the high level of service required of this case, the unique perspective Mr. Dicks provided as a former deputy sheriff, and his trial experience. *Id*. ¶ 14.

Defendants argue the hourly rates requested are excessive and the declarations fail to demonstrate the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Specifically, they argue Mr. Iredale's declaration is devoid of information regarding the prevailing market rates in the Southern District, Ms. Sobel's opinion is based upon firms in the Los Angeles area which is not the relevant community for determining the applicable prevailing market rates and Mr. Casey's declaration is devoid of information regarding the prevailing market rates in the Southern District for the types of services provided by Plaintiff's attorneys in this case.

In support of their opposition, Defendants provide the declaration of James P. Schratz, the principal of Jim Schratz and Associates, a firm that conducts legal fee audits of various law firms through the country, who attests he has conducted or supervised approximately 3,600 legal fee audits, approximately 200-300 involving cases in San Diego, has published numerous articles on legal fees and abuses in billing practices and has provided expert opinions in multiple courts. Schratz Decl. ¶¶ 5 – 11, 19-38.

He opines the rates Plaintiffs' counsel seek are not the market rates for similarly sized civil rights law firms prevailing in the San Diego legal community for similar work performed by attorneys of comparable skill, experience, and reputation. *Id*. ¶

150. Based on his experience as well as the fee survey conducted by Judge Anello in *Soler v. Cnty of San Diego*, Mr. Schratz concludes that the hourly rates requested by Plaintiff in his motion are unreasonable. He opines the hourly rates should be adjusted to provide Mr. Greene $1,150, Mr. Dicks $745, Ms. Workman $745, Mr. Boyer $560, Mr. Balaban $510, Ms. Murphy $485.

Reasonable rates are those of "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Plaintiff has the burden of demonstrating the requested fees are comparable to "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Chaudhry*, 751 F.3d at 1110 (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)). He can meet this burden through affidavits from his attorneys and "other attorneys regarding prevailing fees in the community, and rate determinations in other cases. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "District courts may also use their 'own knowledge of customary rates and their experience concerning reasonable and proper fees.'" *Sam K. ex rel. Diane C. v. Hawaii Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015) (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

Plaintiff's declarations provide significant information regarding counsels' considerable experience. Additionally, Mr. Casey supplies the Court with valuable information on the attorneys' reputation within the relevant community. Mr. Iredale, an attorney whose practice is located in the relevant market, discusses his method for determining prevailing rates and notes rates he has been awarded in this market. Ms. Sobel explains she searched various legal databases for fees awarded in San Diego in similarly complex cases and her opinion on prevailing rates, contrary to Defendant's contention, is based on awards in the Southern District. Sobel Decl. ¶19, 25-27. The Court is not persuaded by Mr. Schratz's opinion which is based on criteria the Court finds irrelevant, namely the size of the firm.

Based upon the opinions of Mr. Iredale, Ms. Sobel, and Mr. Casey, this Court's

own knowledge of reasonable rates, fee awards from other cases in this district, and counsels' demonstrated skill in obtaining the relief awarded to Plaintiff, the Court finds the rates requested for counsel are in line with rates in San Diego for lawyers of reasonably comparable skill, experience and reputation.

**B. Reasonableness of Hours Expended**

Plaintiff maintains Mr. Greene expended 420 hours, Mr. Balaban 584 hours, Mr. Dicks 2,114.5 hours, Ms. Workman 1,333.5 hours, Ms. Boyer 91.6 hours and Mr. Murphy 202.8 hours. He contends the hours are supported by counsels' declarations. Defendants contends the hours claimed includes multiple incidences of duplicate billing and inadequate documentation.

**1. Duplicate Billing**

Defendants contend Dicks & Workman's time records reflect that in the period from April 13, 2022 to July 14, 2022, 31 days of identical entries for the time worked by Mr. Dicks and Ms. Workman, totaling 510 hours, 255 hours each. They maintain the amount claimed should be reduced by a total of 255 hours, 127.5 hours for each of them. During the period from July 19, 2022 to September 11, 2022, Defendants contend there are 15 days with identical entries for the time worked by Mr. Dicks and Ms. Workman, totaling 267 hours, 133.5 hours each. They ask the Court to reduce the amount claimed by a total of 133.5 hours, 66.75 hours apiece. For the period from September 12, 2022 through October 11, 2022, Defendants maintain there are 21days with identical entries for the time worked by Mr. Dicks and Ms. Workman, totaling 277 hours, 138.5 hours each. While 144 of those hours reflect the eight hours per day the two attorneys were in court for trial, Defendants argue there is no explanation for both attorneys to engage in identical tasks on the same day for 133 of the hours reported. Therefore, Defendant argues, the Court should reduce the amount claimed by a total of 133 hours, 66.5 hours apiece.

In reply, Plaintiff argues it is not unusual for more than one attorney to work together on a specific issue, motion, or assignment. He maintains there is no

duplication of effort.

Several entries in Dicks & Workman's time records indicate both Mr. Dicks and Ms. Workman worked on the same task. The "[p]articipation of more than one attorney does not necessarily amount to unnecessary duplication of effort." *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286-87 (9th Cir. 2004); *see also Chaudry*, 751 F.3d at 1112 ("[D]uplicative work is not inherently inappropriate."). However, unnecessarily duplicative work will result in a reduction of hours. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "Courts must exercise judgment and discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication." *Democratic Party of Washington State*, 388 F.3d at 1286-87.

Upon review of Dicks & Workman's time records, the Court finds most of the tasks described would take a significant amount of effort, including opposing Defendant's *in limine* motions, preparing experts, addressing jury instructions, preparing for mediation, analyzing documents produced by Defendants, drafting various substantive motions, and preparing for and participating in each day of trial. It is not unreasonable for two or more attorneys to divide the work without duplicating efforts. The Court also accepts Plaintiff's contention that there was no duplication of effort in performing the tasks given Plaintiff's counsels' conduct during the pendency of the proceedings. The Court is also mindful "that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees [because] [t]he payoff is too uncertain, as to both the result and the amount of the fee." *Id*. Accordingly, the Court finds no unnecessary duplication of efforts and declines Defendants' request to reduce the hours on that basis.

**2. Inadequate Documentation**

Defendants argue Mr. Greene's and Mr. Balaban's description of the work performed for the period prior to the commencement of the trial is essentially non-existent. They maintain both Mr. Greene and Mr. Balaban simply described their

work as "preparing for the trial" and Plaintiff provides no explanation why it was necessary that both of the attorneys engage in identical work. Defendants argue the Court should reduce the hours sought by 260, 130 apiece, based on the duplication of effort.

In reply, Plaintiff argues both Mr. Greene and Mr. Balaban spent significant hours preparing for trial that spanned a month and fairly evenly split examination of witnesses. Given the workload and complexity of the issues in this case, Plaintiff argues the 584 hours requested by Mr. Balaban and the 420 hours requested by Mr. Greene are reasonable and were necessary. Additionally, Plaintiff contends Mr. Greene and Mr. Balaban requested hours include a 20% reduction in that they "do not include significant time reading and reviewing e-mails, making phone calls, discussing pre-trial and trial strategy with co-counsel, internal meetings, and various administrative tasks." Pla's Reply at 10, n. 4 (Doc. No. 469).

Plaintiff's counsel can meet his or her burden of providing evidence to support the requested hours by listing the hours and "identifying the general subject matter of his [or her] time expenditures." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). In support of his hours, Mr. Greene states the following:

> In this matter, I have spent at least 420 hours of my own time in working towards this verdict. My requested 420 hours of work on this case breakdown as follows: For the six weeks preceding the trial date I spent, on average, over 40 hours a week preparing for the trial, totaling over 260 hours in trial preparation. Once the trial began, I spent over 40 hours per week conducting the trial in this case for the four weeks of trial, totaling 160 hours of trial work. Therefore, combining my preparation hours with hours spent in trial, I am requesting 420 hours in the instant motion.

Greene Decl. ¶ 14. He provides no time or other records to support his request.

Mr. Balaban makes the following similar statements in support of his requested hours:

> My requested hours of work on this case breakdown as follows: For the eight weeks preceding the trial date I spent an average of well over 40 hours a week preparing for the trial, totaling at least 320 hours in trial preparation. Once the

> trial began, I spent over 12 hours per day, six days per week, for a total of 22 days (subtracting out the two days I was absent with the Court's gracious leave to do so) for a total of 264 hours of trial work. Therefore, combining my preparation hours with hours spent in trial, I am requesting 584 hours in the instant motion.
>
> The work performed by each attorney in furtherance of this action was reasonable and necessary. All of the time spent was for legitimate, necessary activities such as (1) meetings with the client; (2) drafting pleadings; (3) preparing for, taking and defending numerous depositions and conducting written discovery; (4) attending court proceedings; (6) reviewing extensive documentation and evidence; (7) preparing for trial; and (8) trial.

Balaban Decl. ¶¶ 20, 21. He provides no time records in support.

The Court finds its firsthand observations of counsels' preparedness relating to their in-depth mastery of the facts and anticipation of a host of legal issues during the trial in conjunction with counsels' declarations provides sufficient evidence to support the hours reported for their time during the trial. The Court, however, finds the documentation in support of counsels' time prior to trial for "trial preparation" inadequate. A reduction is appropriate due to the inadequate documentation and the Court will reduce the hours to reflect 30 hours per week for each week up until two weeks prior to trial. As such, Mr. Greene's hours are reduced to 360 and Mr. Balaban's hours are reduced to 524.

**C. Lodestar Multiplier**

Plaintiff seeks a 2.0 multiplier. He argues the lodestar figure does not adequately reflect the true market value of the services rendered by counsel in this case. In support, Plaintiff maintains Mr. Dicks and Ms. Workman bore the brunt of the discovery battles and sanctions briefing under time pressures, litigated issues raised by the Defendants' discovery abuses and prepared their witnesses and other materials for trial and responded to Defendants' repetitive "pocket briefs" during trial. Plaintiff also maintains Defendants' conduct of turning over hundreds of pages of new material right before the start of trial and bringing two Rule 50 motions, claiming Plaintiff was attempting to inject new theories of liability into the case, demonstrates

the added stress and frustration Plaintiff's attorneys endured. In further support, Plaintiff argues his team of lawyers' performance was extraordinary as evidenced by the unanimous verdict with findings against the County under *Monell*. Plaintiff also contends counsel's significant out-of-pocket expenses into the case supports an enhancement. In further support, Plaintiff contends this Court also found this to be an extraordinary case when Defendants' misconduct came to light.

In opposition, Defendants argue there are no rare and exceptional circumstances here sufficient to justify a multiplier and all Plaintiff asserts in support of an enhancement is included in the lodestar calculation. Defendants also argue verdicts on *Monell* claims are not so rare as to be described as extraordinary. Additionally, they maintain it is now standard practice in personal injury and civil rights actions for attorneys to incur out-of-pocket expenses when they take on a case.

"Because of a strong presumption that the lodestar is sufficient, a multiplier is warranted only in rare and exceptional circumstances." *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546-52 (2010) (internal quotation marks omitted)). Any adjustment to the lodestar must be supported by specific evidence in the record. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). The fee applicant has the burden of proving an enhancement is warranted. *Blum*, 465 U.S. at 898.

Plaintiff relies on this Court's discussions and orders regarding Defendant's discovery abuses for which the Court issued sanctions. The Court found Defendant's abuse "extraordinary" and, accordingly, issued a substantial sanction. According to Plaintiff, the Court's finding demonstrates Plaintiff's counsel provided superior representation under challenging conditions. In calculating the lodestar amount, this Court found the requested rates, which are at the high end of the range of prevailing rates, are supported by counsels' experience and skillful performance witnessed by

1 this Court during these proceedings.  Plaintiff's attorneys included the additional
2 hours and costs involved in challenging Defendant's eleventh-hour, extraordinarily
3 tardy pre-trial disclosures of additional discovery within days of both trial dates, in
4 responding to objections to his motions, conducting follow-up investigations on
5 material received, determining admissibility of evidence and twice incorporating the
6 additional evidence into Plaintiff's previously set trial plan.  However, the Court finds
7 the lodestar does not adequately represent counsel's superior performance in light of
8 the extraordinary circumstances presented in this case.

9 　　Defendants' suggestion that counsel was experienced enough to handle these
10 discovery violations in stride, as if to do so was part and parcel to routine trial
11 preparation, practice and advocacy, sorely misses the mark.  The argument implies
12 that the issues confronted by Plaintiff were part of the normal throws of litigation
13 practice for experienced counsel.  To the contrary, the Federal Rules of Civil
14 Procedure and ethical considerations employed by experienced counsel and expected
15 from all counsel do not support Defendants' position.

16 　　Defendants' attempt to spin Plaintiff's request for an enhancement as an
17 additional sanction by the Court due to Defendant's contemptuous conduct also
18 misses the mark.  The Court finds defense counsels' actions were last-minute
19 disruptions in Plaintiff's trial plan that caused a substantial distraction in Plaintiff's
20 trial focus that cannot be adequately measured by the payment of additional hours
21 exended to recover.  Every experienced trial lawyer knows that last-minute pre-trial
22 distraction in preparation for a complex trial creates unwarranted stress, and
23 heightened anxiety in challenging the late disclosure and thereafter, when successful
24 in doing so, regrouping to absorb, alter or modify pre-established trial strategy after
25 months of disciplined trial preparation throws off the most able of counsel, regardless
26 of how favorable the additional evidence may be.  The behavior of Defendants'
27 counsel effectively tossed a wrench in the spokes of Plaintiff's disciplined trial
28 preparation plan causing significant distraction from anticipating trial issues and focus

on other aspects of the trial.

Moreover, the discovery violations did not originate in a vacuum just days before both scheduled trial dates. They began during the established discovery window when Defendants responded to very specific, written discovery designed to support Plaintiff's Monell and other claims. The record shows that Defendants denied knowledge of information responsive to very clear, properly propounded discovery requests. Defendants conduct of putting their heads in the sand following the magistrate's ruling granting Plaintiff's motion to compel, which occurred relatively early in the proceedings, undermined Plaintiff's counsels' ability to effectively litigate this action. The Court agrees with Plaintiff that it was "abundantly clear that Defendants sought to and were indeed successful in making this litigation far more time consuming, convoluted, stressful, expensive, high risk and contentious than it had to be in order to attempt to gain a tactical and unfair advantage over [Plaintiff.]" Dicks Decl. ¶ 32 (ECF No. 445-2).

This case presented rare and exceptional circumstances to justify a multiplier The Court finds the unusual circumstances of this action supports an enhancement and applies a 1.3 multiplier.[4]

**II. Costs**

Plaintiff seeks $5,00,765.15 for out-of-pocket expenses reasonably incurred in this litigation, including the cost of retaining expert witnesses travel, hotel and meal expenses for Plaintiff and his family and, for counsel, and other necessary costs set forth in declarations and exhibits.

---

[4] Because the circumstances justifying the enhancement no longer existed after the trial, the multiplier will not apply to fees for work counsel performed following the day of the verdict including responding to the Rule 50 motions. *See Clark v. city of Los Angeles*, 803 F.2d 987, 992 (Finding "[u]se of the multiplier to increase the fees for the fee-petition work was an abuse of discretion" when the record did not indicate the factors justifying the upward adjustment existed at that stage of the litigation).

Defendants argue Plaintiff fails to show that all of the expenses for which he is seeking recovery were reasonable expenditures in litigating this case. They further argue Plaintiff fails to provide any discussion of the reasonableness of the costs and instead, simply itemizes the expenditures.

A prevailing party may recover "out-of-pocket expenses that would normally be charged to a fee paying client" under section 1988. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n. 7 (9th Cir.1986).

Mr. Greene seeks reimbursement for costs for reporter fees, expert fees, investigative services, messenger services, parking, postage, research costs, copies, focus groups and printing. Exh. A, Greene Decl. (Doc. No. 445-1). Dicks & Workman seeks reimbursement of filing fees, messenger fees, service fees, deposition services, transcript fees, copy fees, expert fees, expert evaluations, mediation fees, travel expenses for Plaintiff and family, attorney travel fees, copy fees, scan fees, postal charges, telephone charges and fax charges. Exh. C. Dicks Decl. (Doc. No. 445-2). Mr. Balaban seeks reimbursement of expert fees, deposition fees, investigative costs, postage fees, mediation fees, focus group fees, meals, office supplies, research fees, travel expenses for plaintiff and family, attorney travel fees, audio/visual fees and copy fees. Exh. A, Balaban Decl. (Doc. No. 445-3). With the exception of the travel fees for Plaintiff and his family members who were not witnesses at trial, the Court finds they are recoverable costs. However, travel expenses for clients and his family members are not normally charged to a fee paying client. *See Hess v. Ramona Unified Sch. Dist.*, 2008 WL 5381243 (S.D.Cal. December 19, 2008). Accordingly, the Court deducts the amounts for Plaintiff's travel and other family members' travel ($17,573.01) and awards costs in the amount of $483,192.14.

### III. Sanctions

Plaintiff contends the Court should award Plaintiff all of his attorneys' fees, the

requested 2.0 multiplier, plus all costs as sanctions for Defendants' ongoing unwillingness to meet its discovery requirements. He maintains the net effect of having been denied the discovery and additional discovery opportunities justifies the relief herein sought.

This Court already sanctioned Defendants for their discovery abuses and declines Plaintiff's invitation to issue additional sanctions.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED Plaintiff's motion for fees and costs is **GRANTED IN PART AND DENIED IN PART**. The Court awards Plaintiff $5,837,820 in attorneys' fees and $483,192.14 in costs.

DATED: September 29, 2023

_____
THE HON. JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE